JEANETTE E. MCPHERSON, ESQ.
Nevada Bar No. 5423
**FOX ROTHSCHILD LLP**
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
Telephone: (702) 262-6899
Facsimile: (702) 597-5503
Email: jmcpherson@foxrothschild.com
*Counsel for Shelley D. Krohn, Trustee*

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| In re<br><br>BRIAN SEBASTIAN SCIARA,<br><br>Debtor. | Case No. BK-S-23-13265-ABL<br><br>Chapter 7<br><br>Adv. Case No. 24-01121-ABL |
| SHELLEY D. KROHN, TRUSTEE,<br><br>Plaintiff,<br><br>v.<br><br>BRIAN SEBASTIAN SCIARA; and GLENN H. TRUITT, TRUSTEE OF THE B.S.A.P. IRREVOCABLE TRUST DATED SEPTEMBER 16, 2022,<br><br>Defendants | **AMENDED COMPLAINT FOR: 1) AVOIDANCE OF TRANSFER UNDER 11 U.S.C. §§ 548 AND 550, 2) AVOIDANCE OF TRANSFER UNDER 11 U.S.C. §§ 544 AND 550 AND NRS 112.180, 112.190, 166.170, AND 112.210, 3) DENIAL OF EXEMPTION, 4) UNJUST ENRICHMENT, AND 5) DENIAL OF DISCHARGE UNDER 11 U.S.C. § 727(a)(2)(A) AND (4)** |

Shelley D. Krohn ("Plaintiff" or "Trustee"), by her undersigned counsel of record, Fox Rothschild LLP, hereby files this Amended Complaint For: 1) Avoidance Of Transfer Under 11 U.S.C. §§ 548 and 550, 2) Avoidance Of Transfer Under 11 U.S.C. §§ 544 and 550 And NRS 112.180, 112.190, And NRS 112.210, 3) Denial of Exemption, 4) Unjust Enrichment, And 5) Denial of Discharge Under 11 U.S.C. § 727(a)(2)(A) and (4) and alleges as follows:

**JURISDICTION AND VENUE**

1. Brian Sebastian Sciara (the "Debtor") filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code ("Petition") on August 4, 2023 (the "Petition Date").

2. On July 15, 2024, the Court entered an Order Granting Motion For Conversion of Small Business Case To Chapter 7 [ECF 96] ("Conversion Order").

3. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.

4. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (H), (J), and (O).

5. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

6. The procedural grounds for the relief requested herein is Fed. R. Bankr. P. 7001.

7. Pursuant to Fed. R. Bankr. 7008 and Local Rule 7008, the Trustee consents to the entry of final orders or judgment by the bankruptcy judge if it is determined that the bankruptcy judge, absent consent of the parties, cannot enter final orders or judgment consistent with Article III of the United States Constitution.

8. The Plaintiff reserves her rights to amend this Complaint as additional facts may be discovered.

**PARTIES**

9. Shelley D. Krohn, Trustee, is the duly appointed and acting Chapter 7 Trustee in the bankruptcy case of Brian Sciara, BK-S-23-13265-ABL.

10. Defendant Brian Sciara is the Debtor in this case who resides in Clark County, Nevada.

11. Upon information and belief, Defendant Glenn H. Truitt, Trustee of the B.S.A.P. Irrevocable Trust dated September 16, 2022 ("Defendant") is a person residing in Clark County, Nevada.

**GENERAL ALLEGATIONS**

**Prepetition Transfer**

12. On or around September 16, 2022, the Debtor created the B.S.A.P. Irrevocable Trust dated September 16, 2022 (the "Irrevocable Trust").

13. The Irrevocable Trust provides that it is irrevocable as follows:

> **Section 1.03 An Irrevocable Trust**
> Except as otherwise specifically provided in this instrument, this agreement and the trust or trusts established under it are irrevocable. I have no right to alter, amend, revoke, or terminate this trust, in whole or in part. I have no right, acting alone or in conjunction with any person or persons, to consent to, participate in, or be consulted in connection with any alteration, amendment, revocation, or termination.

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

14. The Irrevocable Trust provides that one of its objectives is that the assets of the Irrevocable Trust will not be subject to the claims of Debtor's creditors and any creditors of the beneficiaries of the Irrevocable Trust.

15. The Debtor is the settlor of the Irrevocable Trust.

16. The Debtor is the Investment Trustee of the Irrevocable Trust.

17. Glenn H. Truitt is the Trustee of the Irrevocable Trust.

18. The beneficiaries of the Irrevocable Trust are the Debtor, his wife, and his children.

19. A true and correct copy of the Irrevocable Trust is attached hereto as Exhibit 1.

20. The Debtor was the owner of real property located at 712 Pont Chartrain Drive, Las Vegas, Nevada 89145 ("Property").

21. On October 13, 2022, a Quitclaim Deed ("Quitclaim") was recorded transferring the Property from the Debtor to the Irrevocable Trust.

22. A true and correct copy of the Quitclaim Deed is attached hereto as Exhibit 2.

23. The Property was transferred to the Irrevocable Trust (the "Transfer") without consideration.

24. At the time of the Transfer of the Property to the Irrevocable Trust, the Debtor was a party in pending litigation.

25. At the time of the Transfer of the Property to the Irrevocable Trust, the Debtor was insolvent or was rendered insolvent as a result of the Transfer.

26. At the time of the Transfer of the Property to the Irrevocable Trust, the Debtor was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the Debtor was an unreasonably small capital.

27. At the time of the Transfer of the Property to the Irrevocable Trust, the Debtor intended to incur, or believed that the Debtor would incur, debts that would be beyond the Debtor's ability to pay as such debts matured.

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

**Bankruptcy Filing**

28. On August 4, 2023, upon the filing of the Petition and commencement of the case, a bankruptcy estate was created (the "Bankruptcy Estate").

29. The Property is listed as an asset of the Debtor on Schedule A/B of his Petition although the Property was transferred to the Irrevocable Trust.

30. The Debtor declared a homestead exemption in the Property.

31. There is no reference in Debtor's schedules or statement of financial affairs of an interest in the Irrevocable Trust.

32. On his Petition, the Debtor stated that he did not have any trusts.

**FIRST CLAIM FOR RELIEF**
**(11 U.S.C. § 548(a)(1)(A) and § 550)**
**[Irrevocable Trust]**

33. Plaintiff repeats and alleges every allegation contained in the paragraphs above and incorporates the same by reference as though fully set forth herein.

34. The Property was of an interest of the Debtor in property.

35. The Debtor transferred the Property to the Irrevocable Trust.

36. The Debtor had at least one creditor as of the date of the Transfer.

37. The Transfer of the Property to the Irrevocable Trust was within two years of the date of the filing of the Petition.

38. The Transfer of the Property to the Irrevocable Trust was made voluntarily by the Debtor.

39. The Irrevocable Trust is the initial transferee of the Transfer or for whose benefit the Transfer was made.

40. At the time of the Transfer of the Property to the Irrevocable Trust, the Debtor was a party, a defendant, in pending litigation.

41. The Transfer was made with actual intent to hinder, delay, or defraud an entity to which the Debtor was or became, on or after the date that the Transfer was made, indebted, given that Debtor was involved in litigation and was intending to shield the Property from claims against him or his assets.

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

42. The Transfer was made with actual intent to hinder, delay, or defraud an entity to which the Debtor was or became, on or after the date that the Transfer was made, indebted, given that the Debtor stated that an objective of the Irrevocable Trust was to protect his assets from creditors.

43. The Plaintiff is entitled to a money judgment against the Irrevocable Trust in the amount of the fair market value of the Property, or avoidance of the Transfer and recovery of the Property, in accordance with 11 U.S.C. § 548 and § 550.

44. Plaintiff has been required to expend time and incur expenses in order to prosecute this action, and therefore is entitled to reasonable attorney's fees plus costs of the suit.

**SECOND CLAIM FOR RELIEF**
**(11 U.S.C. § 544 and § 550; NRS 112.180(1)(a), 112.210, and 166.170(1)(a))**
**[Irrevocable Trust]**

45. Plaintiff repeats and alleges every allegation contained in the paragraphs above and incorporates the same by reference as though fully set forth herein.

46. The Property was of an interest of the Debtor in property.

47. The Debtor transferred the Property to the Irrevocable Trust.

48. The Debtor had at least one creditor as of the date of the Transfer.

49. The Transfer of the Property to the Irrevocable Trust was made within two years of the filing of this action.

50. The Transfer of the Property to the Irrevocable Trust was made voluntarily by the Debtor.

51. The Debtor made the Transfer with actual intent to hinder, delay, or defraud an entity to which the Debtor was or became, on or after the date that the Transfer was made, indebted, given that Debtor was involved in litigation and was intending to shield the Property from claims against him or his assets.

52. The Irrevocable Trust is the initial transferee of the Transfer or for whose benefit the Transfer was made.

53. The Transfer was made to or for the benefit of the Irrevocable Trust and the Irrevocable Trust has benefited from such Transfer as the intent was for the Debtor to receive the

protection and beneficial attributes of the Property being in the Irrevocable Trust.

54. The Transfer was made to or for the benefit of the Irrevocable Trust and the Irrevocable Trust has benefited from such Transfer because the Transfer was made to avoid the Debtor's financial obligations for which Debtor thought he might be liable and/or to thwart or end litigation or creditor's claims.

55. The Plaintiff is entitled to a money judgment against the Irrevocable Trust in the amount of the fair market value of the Property, or avoidance of the Transfer and recovery of the Property, in accordance with 11 U.S.C. §§ 544 and 550 and NRS 112.210.

56. Plaintiff has been required to expend time and incur expenses in order to prosecute this action, and therefore is entitled to reasonable attorney's fees plus costs of the suit.

**THIRD CLAIM FOR RELIEF**
**(11 U.S.C. § 548(e) and § 550)**
**[Irrevocable Trust]**

57. The Trustee repeats and realleges every allegation contained in the foregoing paragraphs of this Complaint as if fully set forth herein.

58. The Property was of an interest of the Debtor in property.

59. The Debtor transferred the Property to the Irrevocable Trust.

60. The Transfer of the Property to the Irrevocable Trust was within ten years of the date of the filing of the Petition.

61. The Transfer of the Property to the Irrevocable Trust was made voluntarily by the Debtor.

62. The Debtor is a beneficiary of the Irrevocable Trust.

63. The Transfer was made with actual intent to hinder, delay, or defraud an entity to which the Debtor was or became, on or after the date that the Transfer was made, indebted, given that Debtor was involved in litigation and was intending to shield the Property from claims against him or his assets.

64. The Transfer was made with actual intent to hinder, delay, or defraud an entity to which the Debtor was or became, on or after the date that the Transfer was made, indebted, given that Debtor stated that an objective of the Irrevocable Trust was to protect his assets from creditors.

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

65. The Irrevocable Trust is the initial transferee of the Transfer or for whose benefit the Transfer was made.

66. The Plaintiff is entitled to a money judgment against the Irrevocable Trust in the amount of the fair market value of the Property, or avoidance of the Transfer and recovery of the Property, in accordance with 11 U.S.C. §§ 548 and 550.

67. Plaintiff has been required to expend time and incur expenses in order to prosecute this action, and therefore is entitled to reasonable attorney's fees plus costs of the suit.

**FOURTH CLAIM FOR RELIEF**
**(11 U.S.C. § 548(a)(1)(B) and § 550)**
**[Irrevocable Trust]**

68. The Trustee repeats and realleges every allegation contained in the foregoing paragraphs of this Complaint as if fully set forth herein.

69. The Property was of an interest of the Debtor in property.

70. The Debtor transferred the Property to the Irrevocable Trust.

71. The Debtor had at least one creditor as of the date of the Transfer.

72. The Transfer of the Property to the Irrevocable Trust was within two years of the date of the filing of the Petition.

73. The Transfer of the Property to the Irrevocable Trust was made voluntarily by the Debtor.

74. The Transfer was made to the Irrevocable Trust without the Debtor receiving reasonably equivalent value in exchange because the Transfer exceeded the value provided by the Trust to the Debtor.

75. At the time of the Transfer of the Property to the Irrevocable Trust, the Debtor was insolvent or became insolvent as a result of the Transfer of the Property to the Irrevocable Trust.

76. At the time of the Transfer of the Property to the Irrevocable Trust, the Debtor was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the Debtor was an unreasonably small capital.

77. At the time of the Transfer of the Property to the Irrevocable Trust, the Debtor intended to incur, or believed that the Debtor would incur, debts that would be beyond the Debtor's

ability to pay as such debts matured.

78. The Irrevocable Trust is the initial transferee of the Transfer or for whose benefit the Transfer was made.

79. The Plaintiff is entitled to a money judgment against the Irrevocable Trust in the amount of the fair market value of the Property, or avoidance of the Transfer and recovery of the Property, in accordance with 11 U.S.C. §§ 548 and 550.

80. Plaintiff has been required to expend time and incur expenses in order to prosecute this action, and therefore is entitled to reasonable attorney's fees plus costs of the suit.

**FIFTH CLAIM FOR RELIEF**
**(11 U.S.C. § 544 and § 550; NRS 112.180(1)(b), NRS 112.190, 112.210, and 166.170(1)(a))**
**[Irrevocable Trust]**

81. Plaintiff repeats and realleges every allegation contained in the foregoing paragraphs of this Complaint as if fully set forth herein.

82. The Property was an interest of the Debtor in property.

83. The Debtor transferred the Property to the Irrevocable Trust.

84. The Debtor had at least one creditor as of the date of the Transfer.

85. The Transfer of the Property to the Irrevocable Trust was made within two years of the filing of this action.

86. The Transfer of the Property to the Irrevocable Trust was made voluntarily by the Debtor.

87. The Transfer was made to the Irrevocable Trust without the Debtor receiving reasonably equivalent value in exchange because the Transfer exceeded the value provided by the Irrevocable Trust to the Debtor.

88. At the time of the Transfer, the Debtor was insolvent, or became insolvent, because his debts exceeded the value of his assets.

89. At the time of the Transfer, the Debtor was engaged in business or a transaction, or was about to engage in a business or a transaction, for which any remaining assets of the Debtor were unreasonably small in relation to the business or transaction at or around the time the Transfer was made.

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

90. At the time of the Transfer, the Debtor intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due.

91. The Irrevocable Trust is the initial transferee of the Transfer or for whose benefit the Transfer was made.

92. The Plaintiff is entitled to a money judgment against the Irrevocable Trust in the amount of the fair market value of the Property, or avoidance of the Transfer and recovery of the Property, in accordance with 11 U.S.C. §§ 544 and 550 and NRS 112.210.

93. Plaintiff has been required to expend time and incur expenses in order to prosecute this action, and therefore is entitled to reasonable attorney's fees plus costs of the suit.

**SIXTH CLAIM FOR RELIEF**
**(11 U.S.C. § 522(g) and (p)**
**[Sciara]**

94. Plaintiff repeats and realleges every allegation contained in the foregoing paragraphs of this Complaint as if fully set forth herein.

95. The Transfer of the Property to the Irrevocable Trust is avoidable pursuant to 11 U.S.C. § 548, § 544, and § 550.

96. The Transfer of the Property to the Irrevocable Trust was made voluntarily by the Debtor.

97. The Debtor may not claim an exemption for the Property pursuant to § 522(g). In the alternative, any exemption should be limited pursuant to § 522(p).

**SEVENTH CLAIM FOR RELIEF**
**(Unjust Enrichment)**
**[Irrevocable Trust]**

98. Plaintiff repeats and realleges every allegation contained in the foregoing paragraphs of this Complaint as if fully set forth herein.

99. The Debtor conferred benefits upon the Irrevocable Trust by transferring the Property to the Irrevocable Trust.

100. The Irrevocable Trust knowingly and voluntarily accepted and retained the benefits of the Transfer.

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

101. The circumstances are such that it would be inequitable and unjust for the Irrevocable Trust to retain the Transfer.

102. As a result of the foregoing, the Irrevocable Trust has been unjustly enriched at the expense of the Debtor's creditors.

103. The Plaintiff is entitled to the return of the Transfer.

104. Plaintiff has been required to expend time and incur expenses in order to prosecute this action, and therefore is entitled to reasonable attorney's fees plus costs of the suit.

**EIGHTH CLAIM FOR RELIEF**
**(11 U.S.C. § 727(a)(2)(A))**
**[Sciara]**

105. Plaintiff repeats and alleges every allegation contained in the paragraphs above and incorporates the same by reference as though fully set forth herein.

106. The Property was an interest of the Debtor in property.

107. The Debtor created the Irrevocable Trust.

108. The Debtor transferred the Property to the Irrevocable Trust.

109. The Transfer of the Property to the Irrevocable Trust was made within one year of the Petition Date.

110. The Debtor made the Transfer with actual intent to hinder, delay, or defraud an entity to which the Debtor was or became, on or after the date that the Transfer was made, indebted, given that Debtor was involved in litigation and intended to shield the Property from claims against him or his assets by creating the Irrevocable Trust.

111. The Court should not grant the Debtor a discharge under 11 U.S.C. § 727.

112. Plaintiff has been required to expend time and incur expenses in order to prosecute this action, and therefore is entitled to reasonable attorney's fees plus costs of the suit.

**NINTH CLAIM FOR RELIEF**
**(11 U.S.C. § 727(a)(4))**
**[Sciara]**

113. Plaintiff repeats and alleges every allegation contained in the paragraphs above and incorporates the same by reference as though fully set forth herein.

114. The Property was of an interest of the Debtor in property.

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

115. The Debtor created the Irrevocable Trust.

116. The Debtor transferred the Property to the Irrevocable Trust.

117. The Transfer of the Property to the Irrevocable Trust was made within one year of the Petition Date.

118. The Debtor knowingly and fraudulently in connection with this Bankruptcy Case made a false oath in that he stated in his Petition that he did not have any trusts.

119. The Debtor knowingly and fraudulently in connection with this Bankruptcy Case made a false oath in that he stated in his Petition that he was the owner of the Property.

120. The Court should not grant the Debtor a discharge under 11 U.S.C. § 727.

121. Plaintiff has been required to expend time and incur expenses in order to prosecute this action, and therefore is entitled to reasonable attorney's fees plus costs of the suit.

**REQUESTED RELIEF**

WHEREFORE, the Plaintiff prays for judgment against Defendant as follows:

a) For avoidance of the Transfer of the Property;

b) Recovery of the Property or the value of the Property;

c) Denial of the Debtor's exemption pursuant to 11 U.S.C. § 522(g); or if not denied, limitation of any exemption pursuant to § 522(p);

d) For denial of the Debtor's discharge pursuant to 11 U.S.C. § 727(a)(2)(A) and/or (4);

e) For damages to the bankruptcy estate arising from and in connection with the Transfer of the Property to Defendant;

f) For equitable/injunctive relief as appropriate;

g) For reasonable attorney's fees and costs; and

h) For any other relief this Court finds just and proper.

Dated October 25, 2024.

FOX ROTHSCHILD LLP

/s/ Jeanette E. McPherson

Jeanette E. McPherson, Esq.
1980 Festival Plaza Dr., Suite 700
Las Vegas, Nevada 89135
Counsel for Shelley D. Krohn, Chapter 7 Trustee

**EXHIBIT 1**

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

# THE B.S.A.P. IRREVOCABLE TRUST

LAW OFFICES

PRIVATE WEALTH LAW INC.

400 S. 4TH STREET, SUITE 540
LAS VEGAS, NEVADA 89101

# INTRODUCTION

Your Irrevocable Trust Portfolio is designed to organize the documents related to the B.S.A.P. Irrevocable Trust. It is designed to provide your Trustee with a resource center to make administration and record keeping easier.

We encourage you to call us if either you or your Trustee has questions regarding your irrevocable trust documents or the administration of the B.S.A.P. Irrevocable Trust. We are here to ensure that your irrevocable trust is administered in a way that meets your planning expectations and needs.

# TRUST AGREEMENT

This section contains a signed original of your irrevocable trust agreement or a copy should your Trustee prefer to remove the original for safekeeping.

**Storing Your Originals and Sharing Copies with Others.** We retain copies of your documents, but your Trustee is responsible for your originals. Your Trustee may want to substitute photocopies for the originals in this portfolio to keep the originals in a safe place. Your Trustee may also want to give copies of these documents to the people you have appointed as your successor Trustees. If your Trustee stores your originals outside this portfolio or shares copies with others, your Trustee should list the location of the originals and the persons who have copies below.

**Location of Originals** ____________________

**People Who Have Copies** Glenn H. Truitt, Esq. - Drafting Counsel/Trustee

# OVERVIEW

As we have discussed the primary objective of your irrevocable trust is to hold, acquire and invest in assets for the trust beneficiaries, in such a manner that the assets will not be included in your estate for estate tax purposes. Generally, this requires that once the trust is created you retain no control over the trust. This is why your trust cannot be modified once it has been signed and why your Trustee should be the person administering your trust.

The trust assets as well as the trust income are for the benefit of the beneficiaries of the trust. But during your lifetime you will be considered the owner of the trust for income tax purposes. This feature provides certain benefits for estate tax planning purposes. First it allows your Irrevocable Trust to purchase assets from you without triggering a capital gains taxable event. Second it allows income to accumulate in the trust without having to be exposed to the usually higher tax brackets for trusts. Additionally, income taxes paid by you are not considered to be gifts to your beneficiaries and therefore in effect increases the annual gift tax exclusion.

Another objective of your irrevocable trust is to qualify transfers (or gifts) to the trust for the annual federal gift tax exclusion. To qualify transfers to the trust for the annual federal gift tax exclusion the gifts must be gifts of a *present interest*. This is the reason the lifetime beneficiaries of the trust are given a demand right in transfers to the irrevocable trust. In the absence of a demand right, gifts that you make to the irrevocable trust will not qualify for the annual federal gift tax exclusion because they would be classified as a gift of a *future interest*.

Many estate-planning professionals refer to this type of irrevocable trust as a "Crummey" trust. The Crummey trust nickname comes from a famous court case. In this case, Mr. Crummey's advisers took an old-fashioned irrevocable trust that did not qualify for the annual gift tax exclusion and, by adding demand rights giving its beneficiaries the right to demand their share of the trust contributions they attempted to qualify those gifts to the trust as present interest gifts. Predictably, the IRS disagreed with Mr. Crummey and his advisers. The courts subsequently decided in Mr. Crummey's favor, thereby giving the rest of us the demand right irrevocable trust or Crummey trust.

If you and your Trustee diligently follow the guidelines we have set forth, your irrevocable trust should accomplish its planning goals and objectives.

# INSTRUCTIONS TO TRUSTEE

As Trustee of the B.S.A.P. Irrevocable Trust dated September 16, 2022 you are required to take several administrative steps, and also maintain adequate records. These include the following:

1. You may have a duty to file a federal income tax return for this trust during each calendar year, if trust income is sufficient to cause the filing of a return. You must obtain a taxpayer identification number for the trust. If you desire we can apply for the tax ID number for you.

2. You should open a bank account for this trust. Use the tax ID number for the trust when opening the account.

3. When any transfer or gift is received by the trust, you as Trustee must deposit the money in the trust's bank account. If the transfer or gift is the first one received for the calendar year, you must notify the lifetime beneficiaries of the trust of the right to demand their portion of the gift. The names of the beneficiaries are in the trust document. I suggest that the notice provided to the lifetime beneficiaries be similar in form and content to the samples contained in the Irrevocable Trust Portfolio. You should make an effort to have each lifetime beneficiary sign and return the acknowledgment at the bottom of the notification.

4. You must maintain proper records for the trust, including:

   - A record of all gifts received.
   - A record of all notices sent to trust the beneficiaries (in a file with copies of what was sent, to prove the same were sent).
   - A record of Acknowledgment of Notices that the beneficiaries sign (in a file to prove the Notices were received).

Should you have any question regarding the matters set forth in this letter or any other questions concerning the administration of the B.S.A.P. Irrevocable Trust feel free to call our office at anytime.

# THE B.S.A.P. IRREVOCABLE TRUST

September 16, 2022

LAW OFFICES

PRIVATE WEALTH LAW INC.

400 S. 4TH STREET, SUITE 540

LAS VEGAS, NEVADA 89101

# The B.S.A.P. Irrevocable Trust
# Table of Contents


| | | |
|---|---|---|
| **Article One** | **Establishing the Trust** | **1** |
| Section 1.01 | Identifying the Trust | 1 |
| Section 1.02 | Reliance by Third Parties | 1 |
| Section 1.03 | An Irrevocable Trust | 2 |
| Section 1.04 | Transfers to the Trust | 2 |
| Section 1.05 | Reservation of Testamentary Limited Power of Appointment | 2 |
| Section 1.06 | Reservation of Right to Veto Distributions | 3 |
| Section 1.07 | Reservation of Investment Authority | 3 |
| Section 1.08 | Statement of My Intent | 3 |
| Section 1.09 | Grantor Trust Provisions | 4 |
| Section 1.10 | Authorization to Reimburse Me for Income Tax Liability | 5 |
| **Article Two** | **My Beneficiaries** | **6** |
| **Article Three** | **Trustee Succession Provisions** | **6** |
| Section 3.01 | Trustee Requirements | 6 |
| Section 3.02 | Resignation of a Trustee | 6 |
| Section 3.03 | Trustee Removal by Trust Protector | 7 |
| Section 3.04 | Trustee Succession | 7 |
| Section 3.05 | Notice of Removal and Appointment | 9 |
| Section 3.06 | Appointment of a Co-Trustee | 9 |
| Section 3.07 | Corporate Fiduciaries | 9 |
| Section 3.08 | Incapacity of a Trustee | 10 |
| Section 3.09 | Appointment of Independent Special Trustee | 10 |
| Section 3.10 | Rights and Obligations of Successor Trustees | 10 |
| **Article Four** | **Trust Protector Provisions** | **11** |
| Section 4.01 | Provisions for Trust Protector | 11 |
| Section 4.02 | Designation of Trust Protector | 11 |
| Section 4.03 | Nomination of Successor Trust Protectors | 11 |
| Section 4.04 | Removal and Replacement of a Trust Protector | 11 |
| Section 4.05 | Resignation of a Trust Protector | 12 |
| Section 4.06 | Incapacity of a Trust Protector | 12 |
| Section 4.07 | Vacancy in the Office of Trust Protector | 12 |
| Section 4.08 | Authority of Successor Trust Protectors | 12 |



PRIVATE WEALTH LAW INC., 400 S. 4TH STREET, SUITE 540, LAS VEGAS, NEVADA 89101 | (702) 852-6601

| | | |
|---|---|---|
| Section 4.09 | Trust Protector Standard of Conduct | 13 |
| Section 4.10 | Indemnification of Trust Protector | 13 |
| Section 4.11 | Trust Protector Powers | 13 |
| Section 4.12 | Limitation on Trust Protector Powers | 25 |
| Section 4.13 | Trust Protector May Release Powers | 25 |
| Section 4.14 | Trust Protector Considered to Have Consented | 25 |
| Section 4.15 | Trust Protector Compensation | 26 |
| Section 4.16 | Right to Examine Trust Records | 26 |
| Section 4.17 | Employment of Professionals | 26 |
| **Article Five** | **Administration During My Lifetime** | **27** |
| Section 5.01 | My Wife's Right to Withdraw Contributions | 27 |
| Section 5.02 | Non-spouse Beneficiaries' Right to Withdraw Contributions | 27 |
| Section 5.03 | Power to Limit or Exclude Beneficiaries' Withdrawal Rights | 28 |
| Section 5.04 | Exercise of Right to Withdraw by Lifetime Beneficiaries | 28 |
| Section 5.05 | Notice by the Trustee of the Right to Withdraw | 28 |
| Section 5.06 | Lapse of Right to Withdraw | 28 |
| Section 5.07 | Satisfaction of Demand Right by the Trustee | 29 |
| Section 5.08 | Definition of Contribution | 29 |
| Section 5.09 | Discharge of the Trustee Upon a Distribution | 30 |
| Section 5.10 | Distribution of Income and Principal | 30 |
| Section 5.11 | Provisions as to Excluded Persons | 32 |
| Section 5.12 | Administration Upon My Death | 33 |
| **Article Six** | **The Bypass Trust** | **33** |
| Section 6.01 | Bypass Trust Beneficiaries | 33 |
| Section 6.02 | Distributions of Income and Principal | 33 |
| Section 6.03 | Guidelines for Discretionary Distributions to Jennifer Sciara | 33 |
| Section 6.04 | My Wife's Right to Withdraw Principal | 34 |
| Section 6.05 | Guidelines to the Trustee | 34 |
| Section 6.06 | Lifetime Limited Power of Appointment | 34 |
| Section 6.07 | Effect of My wife's Remarriage on Bypass Trust Distributions | 35 |
| Section 6.08 | Termination of the Bypass Trust | 35 |
| **Article Seven** | **Administration of Remaining Trust Property** | **35** |
| Section 7.01 | Division of Remaining Trust Property | 35 |
| Section 7.02 | Administration of the Separate Trusts | 36 |

Section 7.03 General Power of Appointment Over Property Subject to Taxable Generation-Skipping Transfers .....37

**Article Eight** **Remote Contingent Distribution .....37**

**Article Nine** **Distributions to Underage and Incapacitated Beneficiaries .....38**

Section 9.01 Methods of Distribution .....38
Section 9.02 Retention in Trust .....38
Section 9.03 Application of Article .....40

**Article Ten** **Trust Administration .....40**

Section 10.01 Distributions to Beneficiaries .....40
Section 10.02 Trust Decanting; Power to Appoint in Further Trust .....40
Section 10.03 Beneficiary's Status .....41
Section 10.04 No Court Proceedings .....41
Section 10.05 No Bond .....41
Section 10.06 Exoneration of the Trustee .....42
Section 10.07 Limitations on Trustee Liability .....42
Section 10.08 Trustee Compensation .....43
Section 10.09 Employment of Professionals .....43
Section 10.10 Collection of Proceeds after the Death of an Insured .....44
Section 10.11 Insurance Carrier Protected in Dealing With The Trustee .....44
Section 10.12 Exercise of Testamentary Power of Appointment .....44
Section 10.13 Determination of Principal and Income .....45
Section 10.14 Trust Accounting .....45
Section 10.15 Action of Trustees and Delegation of Trustee Authority .....45
Section 10.16 Trustee May Disclaim or Release Any Power .....46
Section 10.17 Trustee May Execute a Power of Attorney .....46
Section 10.18 Additions to Separate Trusts .....47
Section 10.19 Authority to Merge or Sever Trusts .....47
Section 10.20 Authority to Terminate Trusts .....47
Section 10.21 Merger of Corporate Fiduciary .....48
Section 10.22 Funeral and Other Expenses of Beneficiary .....48
Section 10.23 Generation-Skipping Transfer Tax Provisions .....48
Section 10.24 Independent Trustee May Confer Testamentary Power of Appointment .....50

**Article Eleven** **The Trustee's Powers .....50**

Section 11.01 Introduction to Trustee's Powers .....50
Section 11.02 Execution of Documents by the Trustee .....50




PRIVATE WEALTH LAW INC., 400 S. 4TH STREET, SUITE 540, LAS VEGAS, NEVADA 89101 | (702) 852-6601

| | | |
|---|---|---|
| Section 11.03 | Investment Powers in General | 50 |
| Section 11.04 | Banking Powers | 51 |
| Section 11.05 | Business Powers | 52 |
| Section 11.06 | Contract Powers | 54 |
| Section 11.07 | Common Investments | 54 |
| Section 11.08 | Digital Assets | 55 |
| Section 11.09 | Environmental Powers | 55 |
| Section 11.10 | Farm, Ranch, and Other Agricultural Powers | 56 |
| Section 11.11 | Insurance Powers | 56 |
| Section 11.12 | Loans and Borrowing Powers | 59 |
| Section 11.13 | Nominee Powers | 60 |
| Section 11.14 | Oil, Gas and Mineral Interests | 60 |
| Section 11.15 | Payment of Property Taxes and Expenses | 60 |
| Section 11.16 | Purchase of Assets from and Loans to My Probate Estate | 61 |
| Section 11.17 | Qualified Tuition Programs | 61 |
| Section 11.18 | Real Estate Powers | 61 |
| Section 11.19 | Residences and Tangible Personal Property | 62 |
| Section 11.20 | Retention and Abandonment of Trust Property | 62 |
| Section 11.21 | Securities, Brokerage and Margin Powers | 63 |
| Section 11.22 | Settlement Powers | 63 |
| Section 11.23 | Subchapter S Corporation Stock Provisions | 64 |
| Section 11.24 | Limitation on the Trustee's Powers | 66 |
| **Article Twelve** | **General Provisions** | **68** |
| Section 12.01 | Spendthrift Provision | 68 |
| Section 12.02 | Contest Provision | 68 |
| Section 12.03 | Effect of Legal Separation or Dissolution of Marriage | 69 |
| Section 12.04 | Changing the Governing Law and Situs of Administration | 70 |
| Section 12.05 | Definitions | 70 |
| Section 12.06 | General Provisions and Rules of Construction | 78 |




PRIVATE WEALTH LAW INC., 400 S. 4TH STREET, SUITE 540, LAS VEGAS, NEVADA 89101 | (702) 852-6601

# The B.S.A.P. Irrevocable Trust

## Article One
## Establishing the Trust

The date of this Irrevocable Trust Agreement is September 16, 2022. The parties to the agreement are Brian Sciara (the "Settlor"), and Glenn H. Truitt (the "Trustee").

Brian Sciara is Investment Trustee while I am alive.

I intend that this agreement create a valid trust under the laws of Nevada and under the laws of any state in which any trust created under this agreement is administered. The terms of this trust agreement prevail over any provision of Nevada law, except those provisions that are mandatory and may not be waived.

I may not serve as Trustee of this trust or any trust created under this instrument during any period Nevada law governs this trust.

### Section 1.01 Identifying the Trust

The trust may be referred to as "Glenn H. Truitt, Trustee of the B.S.A.P. Irrevocable Trust dated September 16, 2022."

For the purpose of transferring property to the trust, or identifying the trust in any beneficiary or pay-on-death designation, any description referring to the trust will be effective if it reasonably identifies the trust. Any description that contains the date of the trust, the name of at least one initial or successor Trustee and an indication that the Trustee is holding the trust property in a fiduciary capacity will be sufficient to reasonably identify the trust.

### Section 1.02 Reliance by Third Parties

From time to time, third parties may require documentation to verify the existence of this agreement, or particular provisions of it, such as the name or names of the Trustee or the powers held by the Trustee. To protect the confidentiality of this agreement, the Trustee may use an affidavit or a certification of trust that identifies the Trustee and sets forth the authority of the Trustee to transact business on behalf of the trust in lieu of providing a copy of this agreement. The affidavit or certification may include pertinent pages from this agreement, such as title or signature pages.

A third party may rely upon an affidavit or certification of trust that is signed by the Trustee with respect to the representations contained in the affidavit or certification of trust. A third party relying upon an affidavit or certification of trust shall be exonerated from any liability for actions

the third party takes or fails to take in reliance upon the representations contained in the affidavit or certification of trust.

A third party dealing with the Trustee shall not be required to inquire into the terms of this agreement or the authority of the Trustee, or to see to the application of funds or other property received by the Trustee. The receipt from the Trustee for any money or property paid, transferred or delivered to the Trustee will be a sufficient discharge to the person or persons paying, transferring or delivering the money or property from all liability in connection with its application. A written statement by the Trustee is conclusive evidence of the Trustee's authority. Third parties are not liable for any loss resulting from their reliance on a written statement by the Trustee asserting the Trustee's authority or seeking to effectuate a transfer of property to or from the trust.

### Section 1.03 An Irrevocable Trust

Except as otherwise specifically provided in this instrument, this agreement and the trust or trusts established under it are irrevocable. I have no right to alter, amend, revoke, or terminate this trust, in whole or in part. I have no right, acting alone or in conjunction with any person or persons, to consent to, participate in, or be consulted in connection with any alteration, amendment, revocation, or termination.

### Section 1.04 Transfers to the Trust

I transfer to the Trustee the property listed in Schedule A, attached to this agreement, to be held on the terms and conditions set forth in this instrument. I retain no right, title or interest in the income or principal of this trust or any other incident of ownership in any trust property.

By execution of this agreement, the Trustee accepts and agrees to hold the trust property described on Schedule A. All property, including life insurance policies, transferred to the trust after the date of this agreement must be acceptable to the Trustee. The Trustee may refuse to accept any property. The Trustee shall hold, administer and dispose of all trust property accepted by the Trustee for the benefit of the beneficiaries in accordance with the terms of this agreement.

### Section 1.05 Reservation of Testamentary Limited Power of Appointment

I may appoint any property contributed to this trust to any one or more of my descendants, their spouses and charities qualified under Section 2055 of the Internal Revenue Code in equal or unequal proportions and on any terms or conditions as I may designate. I may exercise this power by valid will, valid revocable living trust or by any other written instrument, and the power will be effective immediately after my death. I may not exercise this power for the purpose of discharging my legal obligations or otherwise for my pecuniary benefit.

I may suspend or irrevocably release this power of appointment in whole or in part. I may not exercise this power to appoint any interest in this trust to myself, my estate, my creditors, or the creditors of my estate. I may not exercise this power of appointment to create another power of


PRIVATE WEALTH LAW INC., 400 S. 4TH STREET, SUITE 540, LAS VEGAS, NEVADA 89101 | (702) 852-6601

appointment that, under any applicable law, can be validly exercised in a way that would postpone the vesting of any estate or interest in the property subject to the power, for a period ascertainable without reference to the first power of appointment. And I may not exercise the power reserved in this section to suspend the absolute ownership or any power of alienation over the property subject to this power for a period ascertainable without regard to the date of creation of the first power.

By limiting the power as provided in this section, I intend that this power be a limited power of appointment and not a general power of appointment as defined by Sections 2041 or 2514 of the Internal Revenue Code.

### Section 1.06 Reservation of Right to Veto Distributions

I reserve the power to veto any intended payment or application of trust income or principal or both to or for any lifetime beneficiary or beneficiaries by directing the Trustee in writing not to make the payment or application. If I exercise this veto, the Trustee may not make the intended payment or application to or for the beneficiary or beneficiaries.

### Section 1.07 Reservation of Investment Authority

Under Nev. Rev. Stat. § 166.040.3, I reserve to myself and retain as Settlor the power and authority to make all "investment decisions" (set forth in Nev. Rev. Stat. § 163.5557) for trust assets, including, but not limited to, the power to direct the Trustee to purchase, sell, and retain all of the trust assets, and the power to direct the Trustee in the exercise of voting, subscription, conversion, option, and similar rights with respect to this property and to direct the Trustee's participation in and consent to any voting trust, reorganization, merger, dissolution, or other action affecting any trust property. I will exercise my powers by a written direction to the Trustee. The Trustee shall follow my direction with respect to all matters relating to the management and investment of Trust assets.

If any investment matter requires my consent or approval before the Trustee can act and I do not affirmatively deny consent to the proposed action in writing within 20 days of being notified in writing that approval or consent is sought for the particular act, I will be considered to have given consent or approval for the Trustee's proposed action.

### Section 1.08 Statement of My Intent

I am creating this trust with the intent that assets transferred to the trust be held for the benefit of the trust beneficiaries on the terms and conditions set forth in this agreement. In order to maximize the benefit to the trust beneficiaries, I give the Trustee broad discretion with respect to the management, distribution and investment of assets in the trust. My specific objectives in creating this trust include, but are not limited to:

Any contributions made to this trust be treated as incomplete gifts for gift tax purposes to the extent I have not fully relinquished dominion and control over the property contributed to the trust. But because I do not have the ability to demand or vest any trust assets in myself or my estate, I intend that the trust and all trust property be protected from attachment by my creditors. I may suspend, further limit, or irrevocably release this power of appointment in whole or in part at any time;

Any property contributed to the trust and any property subject to the release of a power of appointment be treated as a gift of a present interest, if the property is subject to a beneficiary's right to withdraw as set forth in this agreement. During any period of time I hold a power of appointment over any property contributed to the trust, then the property over which that power of appointment is held will be deemed to be an incomplete gift for gift tax purposes;

The assets of the trust estate, including life insurance proceeds, be excluded for federal estate tax purposes from the gross estates of the trust beneficiaries except to the extent that the grant or exercise of a power of appointment is treated as a general power of appointment;

This trust be a qualified disposition under the Spendthrift Trust Act of Nevada, Nev. Rev. Stat. §§ 166.010 *et seq*., as it may be subsequently amended or codified;

The assets in this trust not be subject to the claims of my creditors and any beneficiary's creditors including spouses, ex-spouses, governmental agencies, third-party creditors, judgment creditors, claimants relating to professional liability, others with as yet undefined claims, and all other claimants whose claims are not enforceable under the Spendthrift Trust Act of Nevada, Nev. Rev. Stat. §§ 166.010 *et seq*., or similar law of any applicable jurisdiction; and

Any interest under this trust, until its distribution, be free of my debts, contracts, claims, pledges, assignments, alienation, and anticipations as grantor, and those of the Trust Protector, any beneficiary, the Trustee, and any person contributing to this trust, and not be subject to any levy, attachment, execution, sequestration, or other process of law.

All provisions of this agreement are to be construed to accomplish these objectives. Any beneficiary has the right at any time to release, renounce or disclaim any right, power or interest that might be construed or deemed to defeat these objectives.

### Section 1.09 Grantor Trust Provisions

I intend that I be taxed as owner of this trust for federal income tax purposes for those periods during which I or any other person holds one or more of the powers described in Sections 671-678 of the Internal Revenue Code. All provisions of this trust will be construed to carry out this intent.

Notwithstanding any provision of this trust that may seem to be to the contrary, the following provisions apply in the administration of the trust.

### (a) Power to Add Charities as Beneficiaries

During my lifetime, the Trust Protector, named or appointed as provided in Article Four, may add beneficiaries to this trust by designating one or more charitable organizations described in Section 170(c) of the Internal Revenue Code as an additional beneficiary or beneficiaries of the net income or principal of the trust. After designating one or more additional charitable beneficiaries, the Trustee may distribute net income or principal or both to the additional charitable beneficiary or beneficiaries, in amounts and proportions determined by the Trustee or as directed by the Trust Protector.

### (b) Nonfiduciary Capacity

Except as otherwise specifically provided to the contrary in this Section, the powers described in this Section are exercisable solely in a nonfiduciary capacity without approval or consent of any person acting in a fiduciary capacity. No one may impose a claim for breach of fiduciary duty upon the Trust Protector as a result of the exercise or nonexercise of the powers granted under this Section.

### (c) Release and Restoration of Powers

The Trust Protector may release any or all of the powers described in this Section at any time by delivering written instruction to the Trustee. The release will be effective upon its receipt by the Trustee, unless the release instructs that it is to be effective upon a later date.

The Trust Protector may restore any power released at any time by delivering written instruction to the Trustee.

## Section 1.10 Authorization to Reimburse Me for Income Tax Liability

Notwithstanding the provision of any state law to the contrary, I have no right to be reimbursed for any income tax paid by me on all or any part of the trust's income. The Independent Trustee may from time to time, however, distribute to me or my Legal Representative, or elect to pay directly to the taxing authorities, so much of the income or principal of the trust as may be sufficient to satisfy all or part of my personal income tax liability attributable to the inclusion of all or part of the trust's income in my taxable income. In exercising its absolute discretion with respect to such distributions, the Independent Trustee may consult with my tax or other advisors and the Trust Protector but is not bound to follow any recommendation made by them.

# Article Two
# My Beneficiaries

I have two children. They are:

Cipriani Brinn Sciara, born on November 14, 2012 and

Sebastian Ford Sciara, born on April 11, 2014.

All references in this agreement to "my children" are references to these children, as well as to any children subsequently born to me or adopted by me in a legal proceeding valid in the jurisdiction (domestic or foreign) in which it occurred.

References in this agreement to "my descendants" refer to my children and their descendants.

The "lifetime beneficiaries" of the trust are my wife, me, and my children.

# Article Three
# Trustee Succession Provisions

## Section 3.01 Trustee Requirements

During any period in which this trust is sitused in Nevada, the office of Trustee must be filled by at least one individual or corporate fiduciary that satisfies all the requirements of Nev. Rev. Stat. §166.015(2), and, notwithstanding anything in this agreement that may seem to the contrary, that Trustee has the power to maintain records and prepare income tax returns for the trust, and must perform all or part of the administration in the State of Nevada. Furthermore, no person or entity named in this instrument or appointed to serve under the provisions of this instrument will qualify to serve as a Trustee if that person or entity is an *excluded person*. If a person or entity becomes an excluded person after its service as Trustee has commenced, that person or entity will immediately cease to serve as Trustee, and the vacancy will be filled as otherwise provided in this Article.

## Section 3.02 Resignation of a Trustee

A Trustee may resign by giving written notice to me. If I am incapacitated or deceased, a resigning Trustee shall give written notice to the Trust Protector.

Upon the resignation of Glenn H. Truitt as Trustee, the resigning Trustee may, concurrent with the written notice described above, appoint the resigning Trustee's successor as Trustee in the manner set forth in Section 3.05. If the resigning Trustee fails to make the appointment, the other provisions of this Article regarding Trustee succession upon incapacity or death (as the case may


PRIVATE WEALTH LAW INC., 400 S. 4TH STREET, SUITE 540, LAS VEGAS, NEVADA 89101 | (702) 852-6601

be) shall govern, and the next named successor or successors to the resigning Trustee will serve in the order listed. Likewise, if no named successors to the resigning Trustees are available to serve and the resigning Trustee fails to designate a successor, the other provisions of this Article regarding the filling of a vacant Trustee office shall govern. But the resigning Trustee may not appoint an excluded person as successor Trustee.

### Section 3.03 Trustee Removal by Trust Protector

At any time during my life or after my death, the Trust Protector may remove and appoint any Trustee as provided in Section 4.11(e) of this agreement.

### Section 3.04 Trustee Succession

This Section governs the removal and replacement of the Trustees.

#### (a) Removal and Replacement by Me

I may remove any Trustee, with or without cause, provided I appoint an individual or corporate successor Trustee that simultaneously commences service as Trustee and that is not related or subordinate to me within the meaning of Section 672(c) of the Internal Revenue Code.

#### (b) Appointment of Successor Trustees

If Glenn H. Truitt ceases to serve, he may appoint a successor trustee to serve as successor Trustee.

#### (c) Appointment of Successor Investment Trustees During My Lifetime

If Brian Sciara ceases to serve while I am alive, I name Glenn H. Truitt to serve as successor Investment Trustee while I am alive.

#### (d) Successor Investment Trustee after My Death

I name Glenn H. Truitt to serve as the Investment Trustee of all trusts created under this agreement upon my death, replacing any then-serving Investment Trustee.

#### (e) Trustees of the Separate Trusts

Upon the creation of a separate trust for a beneficiary as provided in Article Seven, the Primary Beneficiary of the separate trust, at any time after attaining the age of 30, may appoint himself or herself as a Co-Trustee of his or her separate trust to serve with the then-serving Trustee. At any time the beneficiary is serving as Co-

Trustee of his or her trust, there must be at least one other Trustee serving with the beneficiary.

### (f) Removal by Beneficiaries

If I am incapacitated and following my death, a Trustee may be removed only for cause, which removal must be approved by a court of competent jurisdiction upon the petition of any beneficiary. This does not limit the authority of a Trust Protector to remove a Trustee under the provisions of Section 4.11(e).

In no event is the court petitioned to approve the removal of a Trustee to acquire any jurisdiction over the trust except to the extent necessary to approve or disapprove removal of a Trustee.

If a beneficiary is a minor or is incapacitated, the beneficiary's parent or Legal Representative, other than me, may act on behalf of the beneficiary.

### (g) Default of Designation

If the office of Trustee of a trust created under this agreement is vacant and no designated Trustee is able and willing to act, I may appoint an individual or corporate successor Trustee that is not related or subordinate to me within the meaning of Section 672(c) of the Internal Revenue Code. If I am incapacitated or deceased, the Trust Protector (if any) may appoint an individual or corporate fiduciary to serve as the successor Trustee. If the Trust Protector is unable or unwilling to act, the Primary Beneficiary may appoint an individual or corporate fiduciary that is not related or subordinate to the person or persons making the appointment within the meaning of Section 672(c) of the Internal Revenue Code to serve as successor Trustee. In the case of a minor or incapacitated beneficiary, the beneficiary's parent or Legal Representative, other than me, may act on behalf of the beneficiary. No excluded person may serve as a Trustee under any circumstances.

If the office of Investment Trustee of a trust created under this agreement is vacant and no designated successor Investment Trustee is able and willing to act as Trustee, a majority of the Income Beneficiaries of the trust may appoint an individual or corporate fiduciary that is not related or subordinate to any beneficiary of the trust within the meaning of Section 672(c) of the Internal Revenue Code as successor Investment Trustee. No excluded person may serve as an Investment Trustee under any circumstances.

Any beneficiary or the beneficiary's Legal Representative may petition a court of competent jurisdiction to appoint a successor Trustee to fill any vacancy remaining unfilled after a period of 30 days. By making the appointment, the court does not thereby acquire any jurisdiction over the trust, except to the extent necessary for

making the appointment. The beneficiary or Legal Representative's initiation of the petition must be a free and voluntary act of the beneficiary or Legal Representative, and not made under an act of duress exerted by any person or entity.

I may not serve as Trustee of any trust created under this agreement at any time this trust is governed by Nevada law.

In the event of a Trustee vacancy due to resignation, however, and where the Trustee is one of the Trustees identified in Section 3.02, the foregoing provisions apply only if the resigning Trustee fails to appoint a successor Trustee in the manner more fully set forth in Section 3.02.

### Section 3.05 Notice of Removal and Appointment

Notice of removal must be in writing and delivered to the Trustee being removed, along with any other then-serving Trustees. The notice of removal will be effective in accordance with its provisions.

Notice of appointment must also be in writing and delivered to the successor Trustee and any other then-serving Trustees. The appointment will become effective at the time of acceptance by the successor Trustee. A copy of the notice should be attached to this agreement.

### Section 3.06 Appointment of a Co-Trustee

Any individual Trustee may appoint an individual or a corporate fiduciary as a Co-Trustee. That Co-Trustee will serve only as long as the Trustee who appointed the Co-Trustee (or, if the Co-Trustee was named by more than one Trustee acting together, by the last to serve of those Trustees) serves, and the Co-Trustee will not become a successor Trustee upon the death, resignation, or incapacity of the Trustee who appointed the Co-Trustee, unless so appointed under the terms of this agreement. Although the Co-Trustee may exercise all the powers of the appointing Trustee, the combined powers of the Co-Trustee and the appointing Trustee cannot exceed the powers of the appointing Trustee alone. The Trustee appointing a Co-Trustee may revoke the appointment at any time with or without cause. No excluded person may serve as a Co-Trustee under any circumstances.

### Section 3.07 Corporate Fiduciaries

Any corporate fiduciary serving under this agreement as a Trustee must be a bank, trust company, or public charity that is qualified to act as a fiduciary under applicable federal and state law and that is not related or subordinate to any beneficiary within the meaning of Section 672(c) of the Internal Revenue Code. No corporate fiduciary meeting the definition of an excluded person may serve as a Trustee under any circumstances.

### Section 3.08 Incapacity of a Trustee

If any individual Trustee becomes incapacitated, it will not be necessary for the incapacitated Trustee to resign as Trustee. A written declaration of incapacity by the Co-Trustee, if any, or, if none, by the party designated to succeed the incapacitated Trustee, if supported by a written opinion of incapacity by a physician who has examined the incapacitated Trustee, will terminate the trusteeship. If the Trustee designated in the written declaration refuses to sign the necessary medical releases needed to obtain the physician's written opinion of incapacity within 10 days of a request to do so, the trusteeship will be terminated.

The provisions of Section 12.05(i) of this agreement govern the determination of a Trustee's incapacity by a physician and the Trustee's obligations to submit to examination and provide necessary releases.

### Section 3.09 Appointment of Independent Special Trustee

If for any reason the Trustee of any trust created under this instrument is unwilling or unable to act with respect to any trust property or any provision of this instrument, the Trust Protector shall appoint, in writing, a corporate fiduciary or an individual to serve as an Independent Special Trustee with respect to this property or provision. The appointed Independent Special Trustee must not be related or subordinate to any trust beneficiary within the meaning of Internal Revenue Code Section 672(c). No excluded person may serve as a Trustee under any circumstances. Any Trust Protector then serving may revoke this appointment at any time.

An Independent Special Trustee shall exercise all fiduciary powers granted by this trust unless expressly limited elsewhere in this instrument or by the Trust Protector in the instrument appointing the Independent Special Trustee. An Independent Special Trustee may resign at any time by delivering written notice to the Trust Protector. Notice of resignation will be effective in accordance with the terms of the notice.

### Section 3.10 Rights and Obligations of Successor Trustees

Each successor Trustee serving under this agreement, whether corporate or individual, will have all of the title, rights, powers and privileges granted to the initial Trustee named under this agreement. In addition, each successor Trustee is subject to all of the restrictions imposed upon, as well as all obligations and duties, both discretionary and ministerial, given to the initial Trustee named under this agreement.

# Article Four
# Trust Protector Provisions

## Section 4.01 Provisions for Trust Protector

The Trust Protector's purpose is to direct the Trustee in matters concerning the trust, and to assist in achieving my objectives as expressed by the other provisions of my estate plan if needed. Furthermore, no person or entity named in this instrument or appointed to serve under the provisions of this instrument will qualify to serve as a Trust Protector if that person or entity is an *excluded person*. If a person or entity becomes an excluded person after its service as Trust Protector has commenced, that person or entity will immediately cease to serve as Trust Protector, and the vacancy will be filled as otherwise provided in this Article.

## Section 4.02 Designation of Trust Protector

I appoint Margaret Sciara to serve as Trust Protector of this trust and each trust created under this instrument.

For each power and authority granted to a Trust Protector in this instrument, unless the capacity is otherwise specifically stated, the Trust Protector's authority is conferred in a nonfiduciary capacity.

## Section 4.03 Nomination of Successor Trust Protectors

If the designated Trust Protector is removed, or is unable or unwilling to serve as Trust Protector, I appoint Jason Sciara to serve as successor Trust Protector.

If Jason Sciara is removed, or unwilling or unable to serve for any reason, then the successor Trust Protector will be appointed according to the remaining provisions of this Article.

## Section 4.04 Removal and Replacement of a Trust Protector

Any Trust Protector may be removed for cause only as determined by a court of competent jurisdiction on the petition of any Trustee or beneficiary not acting under compulsion or any kind of duress. The Trustee or beneficiary's initiation of the petition must be a free and voluntary act of the beneficiary or Legal Representative, and not initiated under an act of duress exerted by any person or entity. The court removing a Trust Protector may appoint one or more successor Trust Protectors to immediately replace the removed Trust Protector. The court acting to remove and replace a Trust Protector will acquire jurisdiction or authority over the trust only to the extent necessary for the removal and replacement of the Trust Protector. No excluded person may be appointed to serve as a Trust Protector under any circumstances.


PRIVATE WEALTH LAW INC., 400 S. 4TH STREET, SUITE 540, LAS VEGAS, NEVADA 89101 | (702) 852-6601

### Section 4.05 Resignation of a Trust Protector

A Trust Protector may resign by giving written notice to me. If I am deceased, a Trust Protector may resign by giving written notice to the Income Beneficiaries of the trust and to the then-serving Trustee.

Resignation will take effect on the date set forth in the notice, but not earlier than 30 days after the delivery date of the notice of resignation, unless an earlier effective date is agreed to by me or by the trust's Primary Beneficiary. A resigning Trust Protector is not liable or responsible for the act of any successor Trust Protector.

### Section 4.06 Incapacity of a Trust Protector

If any individual Trust Protector becomes incapacitated, the incapacitated Trust Protector need not resign as Trust Protector. Any then-serving Trust Protector or the immediately eligible successor Trust Protector may provide a written declaration that a Trust Protector is incapacitated.

The written declaration of the Trust Protector's incapacity, if supported by a written opinion of incapacity by a physician who has examined the incapacitated Trust Protector, will terminate the Trust Protector's service. If the Trust Protector designated in the written declaration refuses to sign the necessary medical releases needed to obtain the physician's written opinion within 10 days of a request to do so, the Trust Protector's service will be terminated.

The provisions of Section 12.05(i) of this instrument govern the determination of a Trust Protector's incapacity, except that a single physician may make the determination of incapacity instead of two physicians. Further, Section 12.05(i) governs the Trust Protector's obligations to submit to examination and provide necessary releases.

### Section 4.07 Vacancy in the Office of Trust Protector

If the office of Trust Protector is vacant and there is no effectively named successor Trust Protector, Glenn H. Truitt may appoint a successor Trust Protector. If Glenn H. Truitt is unable or unwilling to make the appointment, any beneficiary may petition a court of competent jurisdiction to appoint a successor Trust Protector to fill any vacancy remaining unfilled after a period of 30 days. By making this appointment, the court will acquire jurisdiction over the trust only to the extent necessary to make the appointment.

If a beneficiary is a minor or is incapacitated, that beneficiary's parent or Legal Representative may act on that beneficiary's behalf.

### Section 4.08 Authority of Successor Trust Protectors

Any successor Trust Protector has all the authority of any predecessor Trust Protector, but is not responsible for the predecessor's acts, omissions, or forbearances.

### Section 4.09 Trust Protector Standard of Conduct

The Trust Protector is not liable for any action, omission, or forbearance in the absence of an affirmative showing by clear and convincing evidence of bad faith by the Trust Protector to any of the beneficiaries.

### Section 4.10 Indemnification of Trust Protector

I recognize that some persons or institutions may be reluctant to serve as Trust Protector without indemnification by the trust for potential liability. Therefore, I direct that the Trustee may expend the trust assets to defend any claim brought against any Trust Protector, unless the Trust Protector is shown by clear and convincing evidence to have acted in bad faith, even if the cost of the Trust Protector's defense would exhaust the trust's value. If any claim brought against a Trust Protector is successful and the Trust Protector is shown to have acted in bad faith, the Trustee may seek reimbursement from that Trust Protector using any legal or equitable means available to the Trustee for the value of any trust assets used to defend the Trust Protector.

Any Trust Protector is entitled to reimbursement from the trust estate for any expenses, including reimbursement for attorney's fees and costs of litigation reasonably incurred to defend any claim brought against the Trust Protector, unless the Trust Protector is shown by clear and convincing evidence to have acted in bad faith. This must be done even if the cost of the Trust Protector's defense would exhaust the trust's value.

This Section applies to any currently serving Trust Protector and for claims brought against any former Trust Protector in connection with his or her acts, omissions, or forbearances in regard to the trust while serving as Trust Protector.

### Section 4.11 Trust Protector Powers

Any Trust Protector named or appointed under the provisions of this instrument has the following powers and authorities.

#### (a) Power to Amend or Modify the Instrument

The Trust Protector may amend or modify this instrument as it applies to any trust over which the Trust Protector is serving as Trust Protector.

Notwithstanding any other provision of this instrument, the Trust Protector may not amend or modify any power or provision of the trust so as to expand the Trust Protector's existing powers, authorities, or discretions. But the previous provision does not prevent the Trust Protector from making amendments to correct scrivener's errors as to the Trust Protector's powers, authorities, and discretions, or to amend the trust in any manner required for the sole purpose of ensuring that the powers, authorities, and discretions of the Trust Protector remain legally binding and valid under state and federal law.

Any amendment made by the Trust Protector will be binding and conclusive on all persons interested in the trust, unless the amendment is shown by clear and convincing evidence to have been made in bad faith by the Trust Protector. The Trust Protector may not be liable for any consequences of amending or not amending the trust. Any amendment must be made in writing and signed by the Trust Protector. The Trust Protector must deliver a copy of the amendment to the Primary Beneficiaries and Trustees of the amended trust.

Specifically, and not in limitation of the Trust Protector's general authority of modification or amendment, the Trust Protector may amend or modify this instrument as it applies to any trust over which the Trust Protector is serving as Trust Protector to grant any trust beneficiary of any trust created under this instrument the unlimited and unrestricted testamentary general power to appoint all or any portion of the principal and undistributed income of the beneficiary's trust or trust share to the creditors of the beneficiary's estate. The Trust Protector may require the beneficiary to first obtain the Trust Protector's consent as a condition to exercising this power. Any testamentary power of appointment granted by the Trust Protector may only be exercised personally by the beneficiary, must be exercised in writing, and may be revoked by the Trust Protector throughout that beneficiary's lifetime. I suggest that the Trust Protector exercise this authority to subject trust property to estate tax instead of the generation-skipping transfer tax or when it appears that it may reduce overall taxes.

Any testamentary power of appointment granted by the Trust Protector may only be exercised personally by the beneficiary, must be exercised in writing, and may be revoked by any then serving Trust Protector during the life of the beneficiary to whom the power was granted.

Specifically, and not in limitation of the Trust Protector's general authority of modification or amendment, the Trust Protector may amend or modify this instrument as it applies to any trust over which the Trust Protector is serving as Trust Protector to add or modify terms of any trust created under this instrument so that the trust will protect the financial resources governed by this instrument and comply with the Settlor's intent that the trust assets not be considered income or resources for all entitlement benefits from any government agency, such as Social Security Disability payments, Medicare, Supplemental Security Income (SSI), In-Home Support Service (IHSS), and any other special-purpose benefits for which the beneficiary is eligible.

### (b) Power to Change the Governing Law and Situs of Administration

The Trust Protector may change the governing law of the trust, remove all or any part of the property, or change the situs of administration of the trust from one

jurisdiction to another as more specifically set forth in Section 12.04 of this instrument.

### (c) Power to Terminate a Trust

The Trust Protector may terminate this trust or any trust created under this instrument at any time as more specifically set forth in Section 10.20 of this instrument.

### (d) Power to Decant a Trust

The Trust Protector may appoint the property subject to the Trustee's power of distribution in trust for the benefit of one or more beneficiaries of any trust created under this instrument under the terms established by the Trust Protector, and as more specifically set forth in Section 10.02 of this instrument.

### (e) Power to Remove and Appoint Trustees

The Trust Protector may remove any Trustee (other than my wife) of any trust created under this instrument at any time, with or without cause. If the office of Trustee of a trust is vacant and no successor Trustee is effectively named, the Trust Protector may appoint an individual or a corporate fiduciary to serve as Trustee. A Trust Protector may not appoint any then-serving Trust Protector as a Trustee. No excluded person may serve as a Trustee under any circumstances.

If the Trust Protector removes a Trustee, notice of removal must be made in writing and delivered to the Trustee being removed and any other then-serving Trustees. The removal of the Trustee will be effective in accordance with the terms of the notice of removal.

If one or more beneficiaries also hold the power to remove, replace, or remove and replace Trustees, the Trust Protector may veto any removal, appointment, or both made by any beneficiary.

### (f) Power to Refuse a Contribution in Whole or in Part

Concurrent with the Trustee's acceptance of any contribution to the trust, the Trustee must notify the Trust Protector in writing that a contribution has been made, and must notify the donor that the Trust Protector may direct the Trustee to refuse the contribution in whole or in part. The Trust Protector may direct the Trustee to refuse or reject any contribution made to the trust in whole or in part in the Trust Protector's sole and absolute discretion. The Trust Protector must make the direction to refuse or reject a contribution in writing. If the Trust Protector fails to act in writing within 10 days of the date on which the Trust Protector received written notice of the contribution, the Trust Protector will be considered to have approved the contribution *in toto*. If the Trust Protector directs the Trustee to refuse

the contribution, the Trustee must return any refused property to the donor who contributed the property under the authority of this Subsection.

### (g) Power to Add and Remove Me as a Discretionary Beneficiary

The Trust Protector may add me as a lifetime beneficiary of this trust on a purely discretionary basis and not with any mandatory or ascertainable distribution right. The Trust Protector may only exercise this power if the Trust Protector determines, after consultation with legal counsel, that the law governing the trust (including any changes or amendments to the law after this instrument's execution) will not cause the trust assets to become subject to the claims of any of my creditors. Likewise, the Trust Protector has this authority, if the Trustee or the Trust Protector changes the situs of the trust to a state whose law, in the opinion of legal counsel, permits me to be a trust beneficiary, but will not cause the trust assets to become subject to the claims of any of my creditors.

The Trust Protector may further modify this instrument in any manner necessary to ensure that these requirements are met before adding me as a discretionary trust beneficiary. If the Trust Protector adds me as a trust beneficiary, the Trust Protector may later remove me as beneficiary or otherwise modify any beneficial interest granted to me under the trust.

### (h) Power to Direct Investments

The Trust Protector may veto any decisions made by me under my retained investment authority or the Trustee concerning the investment of trust property, or may otherwise specifically direct the Trustee in investment decisions concerning trust property.

The Trust Protector may direct the Trustee in decisions concerning the investment of the trust assets including the purchase, retention, or sale of any assets held in any trust created under this instrument.

Further, the Trust Protector may direct the Trustee in all matters concerning the investment powers granted to the Trustee under Section 11.03.

#### (1) General Investments

The Trust Protector may direct the Trustee to purchase or otherwise acquire, and to retain any of the following types of property:

common or preferred stocks, bonds, notes, or other securities;

real or personal property in any jurisdiction;

insurance on my life;

securities of a corporation in which one or more of the Trustees is a director, officer, employee, or shareholder;

securities of any corporate fiduciary;

interests in any incorporated or unincorporated business venture;

interests in entities formed principally for commingling assets for investment, including common trust funds, investment companies, mutual funds, real estate, and other investment trusts; and

interests in any partnership, limited liability company, or other entity.

**(2) Dealing with Trust Property**

The Trust Protector may direct the Trustee to sell, lease, pledge, mortgage, transfer, exchange, convert, grant options with respect to, or otherwise dispose of any interest in real or personal property owned by the trust. The Trust Protector may dictate the price, terms, and conditions of any disposition of trust property, and may direct the Trustee to enter into leases, mortgages, or options that extend beyond the period fixed by law for leases and options made by fiduciaries or beyond the trust term.

**(3) Borrowing**

The Trust Protector may direct the Trustee to borrow money from any lender for any purpose related to the preservation or improvement of any trust estate, and to mortgage or pledge as security any real or personal property held by the trust. The Trust Protector is specifically authorized to direct the Trustee in any debt obligation to any individual or corporate fiduciary or any member of the Grantor's family, or any trust, corporation, or association in which any of the previous may be interested.

**(4) Settlement of Obligations**

The Trust Protector may direct the Trustee to complete, extend, modify, or renew loans, notes, bonds, mortgages, contracts, or other

obligations that may form part of any trust estate or may be liens or charges against any trust property.

The Trust Protector may direct the Trustee:

> to pay, compromise, compound, adjust, submit to arbitration, sell, or release any claims or demands of any trust estate against others or of others against any trust estate upon any terms and conditions, including the acceptance of deeds to real property in satisfaction of bonds and mortgages; and
>
> to make any payments resulting from the Trustee's action.

### (5) Voting and General Business Matters

The Trust Protector may direct the Trustee:

> to vote in person or by proxy;
>
> to abstain from voting with respect to any interest in any corporation, partnership, company, or other business, directly or through a committee or other agent;
>
> to oppose or consent to the reorganization, consolidation, merger, dissolution, or liquidation of any business, or to the sale, lease, pledge, or mortgage of any property by or to any business; and
>
> to make any payments and take any steps necessary to obtain the benefits of any transaction.

### (6) Business Formation

The Trust Protector may direct the Trustee to form any corporations, partnerships, limited liability companies, or other business interests organized under any state or country's laws. The Trustee may transfer any trust assets in exchange for interests in the business as the Trust Protector directs.

### (7) Business Operations and Management

The Trust Protector may direct the Trustee to continue the operation of any business held by the Trustee, whether incorporated or unincorporated, and any successor businesses.

The Trust Protector may direct the Trustee:

> to purchase or otherwise acquire any business or interest in any business;
>
> to take part in the management of any business held by the trust; and
>
> to delegate duties necessary for the management of any business.

In addition, the Trust Protector may direct the Trustee to:

> reduce, expand, or modify the operation or policy of any business, and act with respect to any other matter in connection with this business;
>
> subject the trust to the risks of any business to the extent determined in the Trust Protector's sole and absolute discretion;
>
> advance money or other property to any business;
>
> make loans to any business held by the trust, and guarantee loans made by anyone other than a Settlor;
>
> borrow money on behalf of any business, either alone or with other interested persons, and secure any loan with trust assets;
>
> select or vote for directors, partners, members, managers, associates, or officers of any business;
>
> act as director, partner (whether general or limited), member, manager, associate, or officer of any business either individually or through a delegate selected by the Trustee;
>
> enter into agreements with other interest holders (including other shareholders, partners, or members)

of any businesses in which the trust has an interest; and

exercise any powers the Trustee considers necessary for the continuation, management, sale, dissolution, or liquidation of any business interest held by the trust.

### (8) Nominee and Custodian Matters

The Trust Protector may direct the Trustee to:

register any security or business interest in the name of a nominee, with or without any formal indication that the interest is held in a fiduciary capacity;

hold any security in bearer or noncertificated form;

use a central depository for securities;

employ a broker-dealer as custodian of the interest when held by any trust; and

register any interest in the name of the broker-dealer.

### (9) Depositing Trust Funds with Corporate Fiduciaries

During any time that no corporate fiduciary is acting as Trustee, the Trust Protector may direct the Trustee to place and leave all or any part of the trust property in the custody of any bank or trust company, with no obligation to inspect or verify the funds, and with no responsibility for any loss or misapplication by the bank, trust company, or its nominee.

If directed by the Trust Protector, the Trustee will appoint one or more banks or trust companies selected by the Trust Protector as the agent and attorney of the Trustee to collect, receive, account for, and distribute any income, and to perform any duties necessary for a custodian account. The Trustee may allocate any charges and expenses of the bank or trust company to income, to principal, or partially to both.


PRIVATE WEALTH LAW INC., 400 S. 4TH STREET, SUITE 540, LAS VEGAS, NEVADA 89101 | (702) 852-6601

#### (10) Real Estate Powers

The Trust Protector may direct the Trustee to manage, insure against loss, subdivide, partition, develop, improve, mortgage, lease, or otherwise deal with any real property interest held by the trust.

Specifically, the Trust Protector may direct the Trustee to:

satisfy, discharge, or extend the term of any mortgage;

demolish, rebuild, improve, repair, or modify any structures on any real property;

plat into lots and prepare any real property for building purposes;

construct and equip buildings or other structures on any real property, and make any improvements for the property's development and improvement; and

execute any documents or covenants to effect these powers.

### (i) Powers to Direct the Trustee

The Trust Protector may direct the Trustee in administering the trust and trust property as authorized under this instrument. In the event of any conflict in direction between the Trust Protector and an Advisor, the Trustee is directed to follow the direction of the Trust Protector, and is indemnified and held harmless for any action taken under the Trust Protector's direction.

#### (1) Managing and Relocating Assets

The Trust Protector may direct the Trustee to keep any trust assets or any evidence of asset ownership in any state or country, and to relocate any assets, records, or other evidence of asset ownership to any other state or country as determined by the Trustee.

#### (2) Consolidating and Diversifying Asset Management

The Trust Protector may direct the Trustee to:


PRIVATE WEALTH LAW INC., 400 S. 4TH STREET, SUITE 540, LAS VEGAS, NEVADA 89101 | (702) 852-6601

consolidate management of any trust's assets with any other trust that has similar terms, conditions, and beneficiaries; or

sever or otherwise diversify the management of any trust's assets.

### (3) Delegating Trustee's Authority

The Trust Protector may direct the Trustee to delegate any discretionary or mandatory duties or powers to another fiduciary, to any person other than the Settlor, or to any other person who is not prohibited from exercising the delegated power. The delegation of power will be effective for the duration and scope as specified in writing by the delegating Trustee.

If any duties or powers are delegated to another fiduciary, the delegating fiduciary will have no further responsibility with respect to the exercise of the delegated duties or powers as long as the delegation remains in effect.

The delegating Trustee may revoke any delegation of duties or powers under this provision at any time. Revocation will be effective on the date the written notice of revocation is delivered to the designee.

### (4) Employing Professionals, Agents, and Employees

The Trust Protector may direct the Trustee to retain, appoint, employ, or remove any accountants, attorneys, investment or other advisors, agents, clerks, and employees at will. The Trustee may enter into compensation agreements, pay compensation or fees of individuals or corporate service providers, and delegate authority to employed individuals or other service providers.

### (5) Life Insurance Powers

The Trust Protector may direct the Trustee in all matters concerning life insurance payable to the trust. Specifically, the Trust Protector may direct the Trustee to:

enter into any form of split-dollar arrangement with respect to insurance, including any split-dollar arrangement with another trust of which any Trustee of this trust is acting as a Trustee, even if the arrangement constitutes an act of self-dealing;

pay premiums on any life insurance policy held by the trust;

exercise all options, rights, elections, and privileges under any life insurance policies, including collecting any proceeds payable to the Trustee;

designate and change the beneficiaries of life insurance, but the Settlor may never be designated as beneficiary of any life insurance policy held by the trust;

modify, exchange, surrender, or cancel any insurance policies;

borrow from and pledge any life insurance policy in connection with a loan;

assign and distribute any rights under any life insurance policy to or for the benefit of any trust beneficiary;

direct the disposition of dividends or surplus;

convert any life insurance policies into different forms of insurance; and

elect any methods of settlement of life insurance proceeds.

### (j) Power to Add or Remove Beneficiaries and to Modify Distribution Rights

Except as otherwise specifically provided in this instrument, the Trust Protector may add or remove beneficiaries, or amend the dispositive provisions for any beneficiary of any trust created under this instrument, except the withdrawal rights created under Article Five (the so-called *Crummey* withdrawal rights)

The Trust Protector may not appoint or add any excluded person as a beneficiary of any trust created under this instrument.

In addition, the Trust Protector may direct the Trustee to:

modify the distribution rights of any beneficiary or class of beneficiaries created by this instrument; or

make, withhold, or amend the terms of any distribution for any beneficiary or class of beneficiaries of a trust created under this instrument.

The Trust Protector may veto any power held by the Trustee to appoint any beneficiary's interest in further trust as provided under the law of the governing situs or jurisdiction of trust administration, or as provided by Section 10.02 of this instrument.

### (k) Power to Grant, Revoke, or Modify Withdrawal Rights

The Trust Protector may direct the Trustee to revoke or modify the withdrawal rights of any beneficiary created under Article Five (the so-called *Crummey* withdrawal rights), or grant those rights to any beneficiary who did not previously have them. But the Trust Protector may not direct the Trustee to revoke or modify any presently exercisable Crummey withdrawal right for contributions made prior to the time the Trust Protector seeks to exercise any power conferred under this Subsection.

### (l) Power to Compel, Approve, or Reject Trustee Accountings

The Trust Protector may demand from time to time a written accounting from the Trustee, but not more often than quarter-annually. If the Trustee fails to account to the Trust Protector within 30 days of a written demand, the Trust Protector may institute appropriate legal actions on behalf of my beneficiaries to compel a full accounting and for other appropriate relief.

The Trust Protector must either approve or reject any accountings provided by any Trustee within 60 days after the Trustee provides the accounting. Failure to act by the Trust Protector within the 60-day period will be treated as approval of the accounting by the Trust Protector. If the Trust Protector approves an accounting, the approval will be binding on all other parties to the fullest extent allowable under the law. If the Trust Protector rejects a Trustee's accounting, the Trust Protector must provide the Trustee with an explanation that adequately enables the Trustee to revise its accounting. The Trustee will then present the revised accounting to the Trust Protector for approval or further revision, as necessary.

### (m) Power to Construe the Terms of This Instrument

The Trust Protector may settle any disputes concerning the interpretation of any provision contained in this instrument that arise as a result of any perceived ambiguity. In doing so, the role of the Trust Protector is to ensure that the instrument is construed in a manner consistent with my estate planning objectives.

### (n) Executing Documents Denoting Authority

The Trust Protector may execute and deliver, and may direct any Trustee to execute and deliver, any documents necessary to carry out any power granted to the Trust Protector or the Trustee. All parties dealing with the Trust Protector and the Trustee may rely on statements and documents made by the Trust Protector and by any Trustee. No party is required to inquire into any statement or document's validity. If any conflict exists between assertions of authority made by the Trust Protector and the Trustee, assertions made by the Trust Protector will control, and any assertion made by the Trustee will be disregarded to the extent of the conflict.

## Section 4.12 Limitation on Trust Protector Powers

A Trust Protector may not exercise any power or discretion in favor of the Trust Protector, for the Trust Protector's benefit, or for the benefit of any person to whom the Trust Protector is related or subordinate within the meaning of Internal Revenue Code Section 672(c). My intent is that nothing in this instrument be construed in any manner that would cause the Trust Protector to possess a general power of appointment within the meaning of Internal Revenue Code Sections 2041 and 2514. This provision, however, does not prohibit the Trust Protector or any related party from receiving reasonable fees for services rendered to the Trust.

If the Trust Protector exercises any one of the powers granted in Section 4.11(b), Section 4.11(c), or Section 4.11(d), the Trust Protector must direct that an amount of assets will be left with the Trustee, sufficient in the Trustee's discretion to cover an estimate of the reasonable claims, expenses and taxes that the Trustee may incur in defending any anticipated claims or winding up the trust.

In exercising and considering whether to exercise any power granted to a Trust Protector under this agreement, the Trust Protector should make reasonable inquiry into any matter or seek any information that reasonably bear upon the Trust Protector's decision to exercise the power.

## Section 4.13 Trust Protector May Release Powers

Acting on behalf of itself and all successor Trust Protectors, a Trust Protector may irrevocably release, renounce, suspend, or limit any power or discretion held by the Trust Protector at any time.

## Section 4.14 Trust Protector Considered to Have Consented

If any provision of this Article requires the consent or approval of a Trust Protector before a Trustee can act and the Trust Protector does not affirmatively deny consent to the proposed action in writing within 10 days of being notified in writing that approval or consent is sought for the particular act, the Trust Protector will be considered to have given consent or approval for the Trustee's proposed action.

### Section 4.15 Trust Protector Compensation

Any Trust Protector serving under this instrument is entitled to receive reasonable compensation for services rendered, taking into consideration:

> the market rate for similar services in the jurisdiction in which the Trust Protector serves;
>
> the breadth and nature of the powers, authorities, and discretions granted to the Trust Protector;
>
> the amount of time the Trust Protector will likely devote to overseeing the trust and the Trustee; and
>
> the trust property's current value and the projected amount of appreciation.

The Trust Protector is entitled to reimbursement for all expenses incurred in the performance of its duties as Trust Protector, including reasonable travel expenses.

Serving in the capacity of Trust Protector does not prevent the Trust Protector from also providing legal, investment, or accounting services on behalf of the trust or the trust beneficiaries. If the Trust Protector is providing professional services, the Trust Protector is entitled to charge its normal and customary fees for services provided or to be provided, in addition to the Trust Protector's ordinary compensation as Trust Protector.

### Section 4.16 Right to Examine Trust Records

The books and records of each trust created under this instrument, including all documentation, inventories, and accountings, must be open and available for inspection by the Trust Protector at all reasonable times.

### Section 4.17 Employment of Professionals

Any Trust Protector may appoint, employ, and remove investment advisors, accountants, auditors, depositories, custodians, brokers, consultants, attorneys, advisors, agents, and employees to advise or assist in the performance of the Trust Protector's duties. The Trust Protector may act on the recommendations of the persons or entities employed, with or without independent investigation.

The Trust Protector may reasonably compensate an individual or entity employed to assist or advise the Trust Protector, regardless of any other relationship existing between the individual or entity and the Trust Protector.

The Trust Protector may direct and the Trustee will pay the usual compensation for services contracted for under this Section out of trust income or principal as the Trust Protector deems advisable. The Trust Protector may direct payment of compensation to an individual or entity

employed to assist or advise the Trust Protector without diminishing the compensation to which the Trust Protector is entitled under this instrument. A Trust Protector who is a partner, stockholder, officer, director, or corporate affiliate in any entity employed to assist or advise the Trust Protector may nonetheless receive the Trust Protector's share of the compensation paid to the entity.

# Article Five
# Administration During My Lifetime

### Section 5.01 My Wife's Right to Withdraw Contributions

Immediately following a contribution to the trust, my wife will have the absolute present right to withdraw the least of:

> The total amount of the contribution; or
>
> The amount of the federal gift tax annual exclusion under Section 2503(b) of the Internal Revenue Code less the amount of prior annual exclusion gifts to my wife by the same donor during the same calendar year; or
>
> The maximum amount under Section 2514(e) of the Internal Revenue Code to which the lapse of the power to withdraw is not considered a release of the power to withdraw.

The withdrawal right will be subject to the limitations and qualifications as provided in subsequent provisions of this Article.

### Section 5.02 Non-spouse Beneficiaries' Right to Withdraw Contributions

For each contribution to the trust, the "Non-spousal Contribution Amount" equals the amount of the contribution less the amount of the contribution over which my wife has a right of withdrawal. Immediately following a contribution to the trust, each living non-spouse lifetime beneficiary not excluded under Section 5.03 (referred to in this Article as a "demand right beneficiary") will have the absolute present right to withdraw the lesser of:

> A proportionate share of the Non-spousal Contribution Amount, determined by dividing the Non-spousal Contribution Amount by the number of demand right beneficiaries; or
>
> The amount of the federal gift tax annual exclusion under Section 2503(b) of the Internal Revenue Code less the amount of prior annual exclusion gifts to the demand right beneficiary by the same donor during the same calendar year.

The withdrawal right will be subject to the limitations and qualifications as provided in subsequent provisions of this Article.

### Section 5.03 Power to Limit or Exclude Beneficiaries' Withdrawal Rights

Prior to or concurrent with the making of a contribution to the trust, a donor may, by a written instrument delivered to the Trustee, limit or exclude one or more non-spouse lifetime beneficiaries from having withdrawal rights over all or any portion of the contribution or any future contribution or both. A donor may not, however, limit or alter any rights resulting from prior contributions.

### Section 5.04 Exercise of Right to Withdraw by Lifetime Beneficiaries

A beneficiary holding a withdrawal right may exercise that right by a written request delivered to the Trustee. If a demand right beneficiary is unable to exercise a right to withdraw because of minority or incapacity, the demand right beneficiary's parent or Legal Representative may exercise the right to withdraw. If there is no Legal Representative, the Trustee shall designate an appropriate adult individual who may exercise the demand right beneficiary's right to withdraw. Under no circumstances may a person who has contributed property to the trust or may I exercise any demand right beneficiary's right to withdraw.

Any property distributed to the Legal Representative of a minor or incapacitated demand right beneficiary or individual designated to make the withdrawal on behalf of the demand right beneficiary must be held for the use and benefit of the demand right beneficiary and may not be used by the person who exercised the withdrawal right on behalf of the demand right beneficiary to discharge that person's legal obligation of support. The Trustee may pay any money or property distributed to a minor pursuant to the exercise of a right to withdraw to a custodian for the minor under the Uniform Transfers to Minors Act or Uniform Gifts to Minors Act of any state.

### Section 5.05 Notice by the Trustee of the Right to Withdraw

Following any contribution to the trust, the Trustee shall promptly notify each demand right beneficiary, or the person authorized to exercise the demand right beneficiary's right to withdraw, of the existence of the right to withdraw and the conditions under which the right may be exercised.

### Section 5.06 Lapse of Right to Withdraw

My wife's right to withdraw any contribution to the trust is noncumulative and will lapse 30 calendar days following the notice by the Trustee of the contribution to which it relates.

Every other demand right beneficiary's right to withdraw a contribution to the trust lapses 30 calendar days following the notice by the Trustee of the contribution to which it relates, whether or not the lapse occurs within the same calendar year in which the contribution was made. The amount of withdrawal rights held by a demand right beneficiary that lapses in any calendar year, however, must not exceed the maximum amount under Section 2514(e) of the Internal Revenue

Code to which the lapse of the power to withdraw is not considered a release of the power to withdraw.

That portion of a withdrawal power held by a demand right beneficiary, the lapse of which would exceed this limitation, will continue to be exercisable, and lapses to the greatest extent possible within this limitation on February 1 of each year in which it remains exercisable.

A demand right beneficiary's vested withdrawal right will not terminate by reason of the demand right beneficiary's death. The personal representative of the demand right beneficiary's estate will have the right to exercise the vested withdrawal right on behalf of the demand right beneficiary's estate.

If the personal representative of a deceased demand right beneficiary's estate does not exercise the withdrawal right, the Trustee may distribute to that personal representative cash or other property in an amount equal to the deceased demand right beneficiary's unlapsed vested withdrawal amount.

Following my death, a demand right beneficiary's right of withdrawal will continue against any subsequent trust shares established after my death as to which the demand right beneficiary is a beneficiary and to whom the Trustee may pay income or principal, until the withdrawal right is exercised or lapses in accordance with the terms of this Article.

### Section 5.07 Satisfaction of Demand Right by the Trustee

The Trustee may satisfy a demand right beneficiary's exercise of a withdrawal right by distributing cash, other assets or fractional interests in other assets, as the Trustee may determine to be appropriate. Unless the Trustee has actual knowledge of other annual exclusion gifts prior to making distributions to satisfy a demand right beneficiary's exercise of the demand right, the Trustee may assume that no other gifts have been made to the demand right beneficiary.

The Trustee shall retain sufficient cash or other assets or a line of credit against which to borrow, or a combination thereof in order to satisfy the withdrawal rights that are then outstanding. I grant a line of credit to the Trustee to borrow from me, at the applicable federal rate, for a period of up to one day less than three years, such amounts as may be necessary to satisfy withdrawal rights that are exercised to the extent that other property is not available to satisfy the withdrawal rights.

### Section 5.08 Definition of Contribution

For purposes of this Article, "contribution" means any cash or other assets transferred to the Trustee to be held as part of the trust funds. The amount of a contribution is its Federal gift tax value.


PRIVATE WEALTH LAW INC., 400 S. 4TH STREET, SUITE 540, LAS VEGAS, NEVADA 89101 | (702) 852-6601

## Section 5.09 Discharge of the Trustee Upon a Distribution

The receipt of a distribution by a demand right beneficiary, or the demand right beneficiary's Legal Representative, to whom the Trustee makes a distribution in satisfaction of the exercise of a demand right is a sufficient discharge of the Trustee to the extent of the payment or distribution. The Trustee has no duty to see to the actual application of amounts paid or distributed for the benefit of the demand right beneficiary.

## Section 5.10 Distribution of Income and Principal

During my lifetime, the Trustee shall retain all property held under this agreement in a single trust for the benefit of the trust beneficiaries. Subject to the limitation that the Trustee at all times retain sufficient property in the trust to satisfy a pending right to withdraw set forth in Section 5.07, the Trustee shall administer the trust as follows:

### (a) Distribution of Income and Principal

During the Settlor's lifetime, at least 30 days prior to paying or applying income or principal to any beneficiary other than the Settlor, the Trustee shall advise the Settlor in writing of the Trustee's intention to pay over or apply income or principal to a beneficiary other than the Settlor. The Settlor may veto the intended payment or application by directing the Trustee in writing not to make the payment or application. If the Settlor exercises this veto, the Trustee must not make the intended payment or application to a beneficiary other than the Settlor.

Except as otherwise prohibited by the Settlor, the Trustee may distribute income or principal of the trust to the beneficiaries, as follows:

#### (1) Distribution of Income and Principal to Me

The Trustee may distribute any portion of trust property to me or for my benefit as the Trustee determines advisable for any purpose. In making distributions, the Trustee may distribute net income, principal, or both.

In determining the advisability or necessity of making distributions, the Trustee may consider other income or resources that are available to me outside of the trust and are known to the Trustee.

I do not intend to limit the sole and absolute discretion of the Trustee in any way, and I do not impose any fiduciary duty other than as expressly stated in this agreement. I ask, but do not require, that the Trustee make distributions to or for my benefit during my lifetime to allow me to maintain my lifestyle as it existed at the time I created the trust.

### (2) Distribution of Income and Principal to the Other Trust Beneficiaries

The Trustee may distribute any portion of trust property to or for the benefit of any beneficiary as the Trustee determines advisable for any purpose. In making distributions, the Trustee may distribute net income, principal, or both.

In determining the advisability or necessity of making distributions, the Trustee may consider other income or resources that are available to the beneficiaries outside of the trust and are known to the Trustee.

### (3) Unequal Distributions Authorized

The Trustee may make distributions to or for the benefit of one or more trust beneficiaries to the complete exclusion of the other beneficiaries. The Trustee may make distributions to beneficiaries in equal or unequal amounts according to their respective needs.

Before making any distribution or allocation of income or principal to a beneficiary, the Trustee may require a refunding agreement or may withhold any portion of the distribution or allocation until final determination or release of any claim or lien against the beneficiary.

### (b) Allocation of Distributions to Lifetime Beneficiaries

If any distribution is made to or for the benefit of a beneficiary, the amount of the distribution will be charged against the trust as a whole, and not against any individual benefit the beneficiary may ultimately receive. But if a distribution of principal is made to a lifetime beneficiary who holds a presently-exercisable power of withdrawal, the distribution will be deemed to be an exercise of the beneficiary's power to withdraw to the extent of the distribution. The beneficiary's remaining power to withdraw, if any, will be reduced by the amount of the distribution.

Any net income not distributed is to be accumulated and added to the principal of the trust.

### (c) Renouncing Veto Power, Power of Appointment, and Beneficial Rights

The Settlor retains the right to renounce the following powers over the trust:

the power to veto distributions set forth in this article;

any power of appointment – whether limited or general – reserved by the Settlor in this trust instrument; and

Settlor's designation as a beneficiary of the trust.

Any renunciation must be made by written instrument and delivered to the Trustee to be effective.

### (d) No Discharge of a Legal Obligation

Under no circumstances may the Trustee make any distribution to any beneficiary in a manner that would discharge any of my legal obligations. Further, no distribution may be made that would discharge any of my wife's legal obligations.

## Section 5.11 Provisions as to Excluded Persons

Despite anything in this instrument, expressed or implied, no excluded person may take any benefit of any kind by virtue of, or in consequence of, this agreement and in particular, but without prejudice to the generality of the foregoing provisions of this Article:

the trust property and its income will from now on be possessed and enjoyed to the entire exclusion of any excluded person and of any benefit to any excluded person by contract, tort law, or otherwise;

no part of the trust property's principal or income may be paid, loaned to, or applied for the benefit, either directly or indirectly, of any excluded person in any manner or in any circumstances whatsoever;

no power or discretion (nor other exercise of any powers) granted or appointed under this instrument or conferred by law upon the Trustee or Trust Protector may be exercised in such manner that any excluded person will or may become entitled, either directly or indirectly, to any benefit in any manner or in any circumstances whatsoever; and

the Trustee may, by deed, with power of revocation, declare that one or more of the lifetime beneficiaries, other than the Settlor, will from now on be excluded from the class of beneficiaries and upon written amendment, these persons will no longer have any interest in the trust property, whether as to income, principle, or otherwise, but without prejudice to any payment or transfer made before this declaration.

### Section 5.12 Administration Upon My Death

Upon my death, the Trustee shall administer the remaining trust property as provided in the Articles that follow.

# Article Six
# The Bypass Trust

If my wife survives me, then upon my death, the remaining trust property will be held in a trust referred to as the "Bypass Trust." The Trustee shall hold and administer the Bypass Trust as provided in this Article. If my wife predeceases me, the Trustee shall administer the remaining trust property as provided in Article Seven.

### Section 6.01 Bypass Trust Beneficiaries

My wife and my descendants will be the beneficiaries of the Bypass Trust during my wife's lifetime.

### Section 6.02 Distributions of Income and Principal

The Independent Trustee may distribute to the Bypass Trust beneficiaries as much of the income and principal of the Bypass Trust as the Independent Trustee may determine advisable for any purpose. If there is no Independent Trustee, the Trustee shall distribute to the Bypass Trust beneficiaries as much income and principal as the Trustee determines is necessary or advisable for their health, education, maintenance, and support.

Any undistributed net income is to be accumulated and added to principal.

### Section 6.03 Guidelines for Discretionary Distributions to Jennifer Sciara

I desire, but do not direct, that the Trustee not pay any trust income, principal, or both from this Bypass Trust to Jennifer Sciara for as long as Jennifer Sciara has other income and resources available for her financial support and maintenance. Accordingly, the Trustee shall always consider the other known resources available to Jennifer Sciara before making discretionary distributions. The Trustee may seek information from Jennifer Sciara or Jennifer Sciara's Legal Representative regarding other financial resources available to Jennifer Sciara before making discretionary distributions, and the Trustee should not make any distributions of trust income, principal, or both to Jennifer Sciara if Jennifer Sciara or Jennifer Sciara's Legal Representative fails or refuses to provide the requested information. Although it is my desire to provide for Jennifer Sciara's legitimate financial needs using the assets of this trust, I also desire to preserve as much of the trust assets as possible for the future trust beneficiaries I have named in this instrument. Therefore, in deciding whether to make distributions of trust principal to Jennifer

Sciara, the Trustee must take into consideration the interests of the future trust beneficiaries I have named in this instrument.

### Section 6.04 My Wife's Right to Withdraw Principal

My wife has the right, exercisable by written request to the Trustee before the close of each calendar year, to withdraw either in cash or in kind:

> an amount from the principal of the Bypass Trust not exceeding the amount referred to in Section 2514(e)(1) of the Internal Revenue Code; and
>
> if my wife is living on the last day of the calendar year, that percentage referred to in Section 2514(e)(2) of the current fair market value of the principal of the Bypass Trust, reduced by any amounts previously withdrawn by my wife during the calendar year under this paragraph.

The amount referenced by Section 2514(e)(2) will be determined by taking into account all other powers of withdrawal exercised by my wife that must be aggregated under Section 2514(e)(2) in determining the largest lapse that can occur without being treated as a release. This right of withdrawal will lapse if not exercised during the calendar year.

The Trustee shall distribute the requested property to my wife outright, free from trust.

### Section 6.05 Guidelines to the Trustee

The Trustee may make distributions to or for the benefit of one or more of my beneficiaries under this Article. I request, but do not require, that the Trustee consider the respective needs of my beneficiaries as well as other income and resources available to my beneficiaries. When making distributions from the Bypass Trust, the Trustee may exclude any of the beneficiaries or may make unequal distributions among them.

A distribution made to a beneficiary under this Article is not to be considered an advance and will not be charged against the share to which the beneficiary may be entitled under other provisions of this agreement.

### Section 6.06 Lifetime Limited Power of Appointment

During my wife's lifetime, the Trustee shall distribute as much of the principal to or among one or more of my descendants, their spouses and charities qualified under Section 2055 of the Internal Revenue Code as my wife from time to time directs in writing. My wife may not exercise this power for the purpose of discharging my wife's legal obligations or otherwise for my wife's pecuniary benefit.

My wife may not exercise this lifetime limited power of appointment to appoint to herself, her estate, her creditors, or the creditors of her estate. My wife may not exercise this lifetime limited

power of appointment to create another power of appointment that, under the applicable local law, can be validly exercised so as to postpone the vesting of any estate or interest in such property; furthermore, my wife is prohibited from exercising the power to suspend the absolute ownership or power of alienation of the property, for a period ascertainable without regard to the date of the creation of the first power.

I intend that this lifetime power of appointment be a limited power of appointment and not a general power of appointment as defined in Section 2041 of the Internal Revenue Code.

### Section 6.07 Effect of My wife's Remarriage on Bypass Trust Distributions

If my wife remarries, the Bypass Trust will terminate unless my wife and my wife's new spouse execute a valid pre-nuptial agreement that complies with the terms set forth below. Remarriage, for purposes of this agreement, means any marriage including a common law marriage entered into by my wife after my death that is valid in the jurisdiction where the marriage took place.

If my wife should choose to remarry after my death and executes a valid pre-nuptial agreement not less than thirty (30) days prior to the time of the remarriage which is executed with the following terms, then in my judgment, there will be sufficient protection for the other beneficiaries named in this trust agreement, and the distributions under this Article will not be restricted by reason of such remarriage. The pre-nuptial agreement must be in writing and signed by my wife and my wife's new spouse with each having been represented by independent legal counsel. Prior to the execution of the agreement each party must make a full disclosure of their assets as they exist at that time. The pre-nuptial agreement must provide that my wife's new spouse waives any right to any portion of my wife's share of my wife's premarital assets and my wife's interest in any trust created under this agreement in the event of dissolution of the marriage, or in the event of the death of my wife with the new spouse surviving my wife.

### Section 6.08 Termination of the Bypass Trust

The Bypass Trust will terminate upon the death of my wife. The Trustee shall administer the balance or remainder of the Bypass Trust as provided in Article Seven.

## Article Seven
## Administration of Remaining Trust Property

After the death of my wife, the Trustee shall administer the remaining trust property as provided in this Article.

### Section 7.01 Division of Remaining Trust Property

The Trustee shall divide the remaining trust property into separate shares for my descendants, *per stirpes*.

The Trustee shall administer the share for each descendant in a separate trust for the benefit of the descendant as provided below.

## Section 7.02 Administration of the Separate Trusts

The Trustee shall administer the trust for each descendant as provided in this Section:

### (a) Distributions of Income and Principal

The Trustee, other than an Interested Trustee, may distribute to the beneficiary or the beneficiary's descendants, or both, as much of the income and principal of the beneficiary's trust as such Trustee may determine advisable for any purpose. If there is no Trustee that is not an Interested Trustee, the Trustee shall distribute to the beneficiary or the beneficiary's descendants, or both, as much income and principal of the beneficiary's trust as the Trustee determines is necessary or advisable for their health, education, maintenance, and support.

In determining whether or not to make distributions the Trustee will give principal consideration to the needs of the beneficiary for whom the trust is created and only thereafter to the needs of the beneficiary's descendants.

Any undistributed net income shall be accumulated and added to principal.

### (b) Right to Withdraw Principal

The beneficiary shall have the right, exercisable by written request to the Trustee before the close of each calendar year, to withdraw either in cash or in kind:

> an amount from the principal of the beneficiary's trust not exceeding the amount referred to in Section 2514(e)(1) of the Internal Revenue Code; and
>
> if the beneficiary is living on the last day of the calendar year, that percentage referred to in Section 2514(e)(2) of the current fair market value of the principal of the beneficiary's trust, reduced by any amounts previously withdrawn by the beneficiary during the calendar year under this paragraph.

The amount referenced by Section 2514(e)(2) must be determined by taking into account all other powers of withdrawal exercised by the beneficiary that must be aggregated under Section 2514(e)(2) in determining the largest lapse that can occur without being treated as a release. This right of withdrawal will lapse if not exercised during the calendar year.

The Trustee shall distribute the requested property to the beneficiary outright, free from trust.

### (c) Distribution Upon the Death of the Beneficiary

If the beneficiary should die after the establishment of the beneficiary's trust, but before the complete distribution of the beneficiary's trust, the Trustee shall distribute the remaining trust property *per stirpes* in trusts to the descendants of the beneficiary. If the beneficiary has no living descendants, the Trustee shall distribute the balance of the trust property *per stirpes* in trusts to the descendants of the beneficiary's nearest lineal ancestor who was a descendant of mine or, if no such descendant is then living, *per stirpes* in trusts to my descendants. The Trustee shall administer the trusts under the same terms as the beneficiary's trust.

If I have no living descendants, the Trustee shall distribute the balance of the trust property as provided in Article Eight.

### Section 7.03 General Power of Appointment Over Property Subject to Taxable Generation-Skipping Transfers

Notwithstanding any provision to the contrary, any beneficiary of any separate trust, other than me, created in this agreement has the unlimited and unrestricted testamentary general power to appoint to the creditors of his estate any property remaining in the trust the distribution of which, in the absence of the power of appointment, would cause a taxable generation-skipping transfer in excess of any available generation-skipping transfer tax exemption. The beneficiary has the sole and exclusive right to exercise this general power of appointment.

The Trustee shall distribute any property in the trust that is not distributed under the exercise of the general power of appointment or is not subject to such power because it is not taxable as a generation-skipping transfer under the provisions of the beneficiary's trust.

This provision applies to all trusts created for a beneficiary under this agreement and supersedes any contrary provisions unless the provisions of a separate trust, by reference to this provision, provide otherwise.

## Article Eight
## Remote Contingent Distribution

If at any time no person or entity is qualified to receive final distribution of any part of the trust estate, this portion of the trust estate must be distributed one-half to those persons who would inherit it had I then died intestate owning this property, and one-half to those persons who would inherit it had my wife then died intestate owning this property. This distribution will be as determined and proportioned under the laws of Nevada then in effect.

# Article Nine
# Distributions to Underage and Incapacitated Beneficiaries

If the Trustee is authorized or directed under any provision of this trust to distribute net income or principal to a person who has not yet reached 18 years of age or who is incapacitated as defined in Section 12.05(i), the Trustee may make the distribution by any one or more of the methods described in Section 9.01. Alternatively, the Trustee may retain the trust property in a separate trust to be administered by the Trustee under Section 9.02.

I request that before making a distribution to a beneficiary, the Trustee consider, to the extent reasonable, the ability the beneficiary has demonstrated in managing prior distributions of trust property.

## Section 9.01 Methods of Distribution

The Trustee may distribute trust property for any beneficiary's benefit, subject to the provisions of this Article in any one or more of the following methods:

The Trustee may distribute trust property directly to the beneficiary.

The Trustee may distribute trust property to the beneficiary's guardian, conservator, parent, other family member, or any person who has assumed the responsibility of caring for the beneficiary.

The Trustee may distribute trust property to any person or entity, including the Trustee, as custodian for the beneficiary under the Uniform Transfers to Minors Act or similar statute.

The Trustee may distribute trust property to other persons and entities for the beneficiary's use and benefit.

The Trustee may distribute trust property to an agent or attorney in fact authorized to act for the beneficiary under a valid durable power of attorney executed by the beneficiary before becoming incapacitated.

## Section 9.02 Retention in Trust

The Trustee may retain and administer trust property in a separate trust for any beneficiary's benefit, subject to the provisions of this Article as follows.

### (a) Distribution of Net Income and Principal

The Trustee, other than an Interested Trustee, may distribute to the beneficiary as much of the net income and principal of any trust created under this Section as the Trustee may determine advisable for any purpose. If there is no then-serving Trustee that is not an Interested Trustee, the Trustee shall distribute to the beneficiary as much of the net income and principal of the trust created under this Section as the Trustee determines is necessary or advisable for the beneficiary's health, education, maintenance, and support. Any undistributed net income will be accumulated and added to principal.

### (b) Right of Withdrawal

When the beneficiary whose trust is created under this Section either reaches 18 years of age or is no longer incapacitated, the beneficiary may withdraw all or any portion of the accumulated net income and principal from the trust.

### (c) Distribution upon the Death of the Beneficiary

Subject to the terms of the next paragraph, the beneficiary whose trust is created under this Section may appoint all or any portion of the principal and undistributed net income remaining in the beneficiary's trust at the beneficiary's death among one or more persons or entities, and the creditors of the beneficiary's estate. The beneficiary has the exclusive right to exercise this general power of appointment.

The beneficiary may not exercise this power of appointment to appoint to the beneficiary, the beneficiary's estate, the beneficiary's creditors, or creditors of the beneficiary's estate from the *limited share* of the beneficiary's trust. For purposes of this power of appointment, the *limited share* of the beneficiary's trust is that portion of the beneficiary's trust that has an inclusion ratio for generation-skipping transfer tax purposes of zero or that without the exercise of the power of appointment, would not constitute a taxable generation-skipping transfer at the beneficiary's death. If the generation-skipping tax does not then apply, the limited share will be the beneficiary's entire trust.

If any part of the beneficiary's trust is not effectively appointed, the Trustee shall distribute the remaining unappointed balance *per stirpes* to the beneficiary's descendants. If the beneficiary has no then-living descendants, the Trustee shall distribute the unappointed balance *per stirpes* to the then-living descendants of the beneficiary's nearest lineal ancestor who was a descendant of mine or, if there is no then-living descendant, *per stirpes* to my descendants.

If I have no then-living descendants, the Trustee shall distribute the balance of the trust property as provided in Article Eight.

### Section 9.03 Application of Article

Any decision made by the Trustee under this Article is final, controlling, and binding upon all beneficiaries subject to the provisions of this Article.

## Article Ten
## Trust Administration

### Section 10.01 Distributions to Beneficiaries

Whenever this trust authorizes or directs the Trustee to make a net income or principal distribution to a beneficiary, the Trustee may apply any property that otherwise could be distributed directly to the beneficiary for his or her benefit. The Trustee is not required to inquire into the beneficiary's ultimate disposition of the distributed property unless specifically directed otherwise by this trust.

The Trustee may make cash distributions, in-kind distributions, or distributions partly in each, in proportions and at values determined by the Trustee. The Trustee may allocate undivided interests in specific assets to a beneficiary or trust in any proportion or manner that the Trustee determines, even though the property allocated to one beneficiary may be different from that allocated to another beneficiary.

The Trustee may make these determinations without regard to the income tax attributes of the property and without the consent of any beneficiary.

### Section 10.02 Trust Decanting; Power to Appoint in Further Trust

The Trust Protector may appoint the property subject to the Trustee's power of distribution in trust for the benefit of one or more beneficiaries of any trust created under this instrument under the terms established by the Trust Protector. Any trust established by the Trust Protector and funded by the exercise of the power granted under this Section must meet these requirements:

> the trust must not reduce any fixed income, annuity, or unitrust right provided by this trust instrument to any beneficiary;
>
> the trust must provide for one or more of the beneficiaries of a trust created under this instrument; and
>
> the interests of remainder beneficiaries of the trust created under this instrument must not be accelerated under the terms of the new trust.

Any trust created under this provision must not contain any provision that, if applicable, would cause the trust to fail to qualify for the marital deduction or charitable deduction, fail to qualify any gift to the trust for any gift, estate, or generation-skipping transfer annual exclusion, or disqualify the trust as a qualified subchapter S corporation shareholder.

If any beneficiary holds a presently exercisable right to withdraw property from this trust, that right may not be defeated by the exercise of the Trust Protector's powers granted under this Section.

### Section 10.03 Beneficiary's Status

Until the Trustee receives notice of the incapacity, birth, marriage, death, or other event upon which a beneficiary's right to receive payments may depend, the Trustee will not be held liable for acting or not acting with respect to the event, or for disbursements made in good faith to persons whose interest may have been affected by the event. Unless otherwise provided in this trust, a parent or Legal Representative may act on behalf of a minor or incapacitated beneficiary.

The Trustee may rely on any information provided by a beneficiary with respect to the beneficiary's assets and income. The Trustee will have no independent duty to investigate the status of any beneficiary and will not incur any liability for not doing so.

### Section 10.04 No Court Proceedings

The Trustee shall administer this trust with efficiency, with attention to the provisions of this trust, and with freedom from judicial intervention. If the Trustee or another interested party institutes a legal proceeding, the court will acquire jurisdiction only to the extent necessary for that proceeding. Any proceeding to seek instructions or a court determination may only be initiated in the court with original jurisdiction over matters relating to the construction and administration of trusts. Seeking instructions or a court determination is not to be construed as subjecting this trust to the court's continuing jurisdiction.

I request that any questions or disputes that arise during the administration of this trust be resolved by mediation and, if necessary, arbitration in accordance with the Uniform Arbitration Act. Each interested party involved in the dispute, including any Trustee involved, may select an arbiter and, if necessary to establish a majority decision, these arbiters may select an additional arbiter. The decision of a majority of the arbiters selected will control with respect to the matter.

The foregoing provisions are not applicable to any beneficiary who seeks to enforce the annual withdrawal rights granted to him or her under Article Five of this instrument (the so-called *Crummey* withdrawal rights). A beneficiary who seeks to enforce his or her annual withdrawal rights will have the right to seek full redress for those rights in any state court of law or equity having jurisdiction over the matter.

### Section 10.05 No Bond

The Trustee is not required to furnish any bond for the faithful performance of the Trustee's duties unless required by a court of competent jurisdiction, and only if the court finds that a bond is needed to protect the beneficiaries' interests. No surety will be required on any bond required by any law or court rule, unless the court specifies its necessity.

### Section 10.06 Exoneration of the Trustee

No successor Trustee is obligated to examine the accounts, records, or actions of any previous Trustee. No successor Trustee may be held responsible for any act, omission, or forbearance by any previous Trustee. Absent clear and convincing evidence of willful bad faith on the part of the Trustee, the Trustee is exonerated from any liability for the acts, omissions, or forbearances of any Trust Protector and from any liability for the Trustee's own acts, omissions, or forbearances directed by the Trust Protector.

Any Trustee may obtain written agreements from the beneficiaries or their Legal Representatives releasing and indemnifying the Trustee from any liability that may have arisen from the Trustee's acts, omissions, or forbearances. If acquired from all the trust's living beneficiaries or their Legal Representatives, any agreement is conclusive and binding on all parties, born or unborn, who may have or who may later acquire an interest in the trust.

The Trustee may require a refunding agreement before making any distribution or allocation of trust income or principal, and may withhold distribution or allocation pending determination or release of a tax or other lien.

### Section 10.07 Limitations on Trustee Liability

I recognize that some individuals and institutions may be reluctant to serve as Trustee because of a concern about potential liability. Therefore, I direct that any individual or corporate fiduciary that serves as the Trustee will not incur any liability by reason of any error of judgment, mistake of law, or action or inaction of any kind in connection with the administration of any trust created under this trust, unless the Trustee's decision is shown by clear and convincing evidence to have been made in bad faith.

Any individual or corporate fiduciary currently serving as the Trustee may expend any portion of the trust assets to defend any claim brought against the Trustee, even if the Trustee's defense costs would exhaust the trust's value, unless the Trustee is shown to have acted in bad faith by clear and convincing evidence.

Any individual or corporate fiduciary that formerly served as the Trustee is entitled to reimbursement from the trust estate for any expenses, including attorney's fees and litigation costs reasonably incurred to defend any claim brought against the Trustee even if the Trustee's defense costs would exhaust the trust's value, unless the Trustee is shown to have acted in bad faith by clear and convincing evidence.

I direct that any individual or corporate fiduciary that serves as the Trustee will not incur any liability for any action, omission, or forbearance made in good faith reliance on information, consent, or directions received from a Trust Protector or from me as to my retained authority over trust investments, except for cases of willful misconduct, reckless indifference, or gross negligence on the Trustee's part.

Any individual or corporate fiduciary currently serving as a Trustee may expend any portion of the trust assets to defend any claim brought against the Trustee as a result of his or her good faith reliance on any information, consent, or directions received from a Trust Protector or from me as to my retained authority over trust investments, even if the Trustee's defense costs would exhaust the trust's value. Any individual or corporate fiduciary that formerly served as a Trustee is entitled to reimbursement from the trust estate for any expenses, including reimbursement for attorney's fees and litigation costs reasonably incurred as a result of the Trustee's good faith reliance on information, consent, or directions received from a Trust Protector or from me as to my retained authority over trust investments.

Except for cases of willful misconduct, reckless indifference, or gross negligence on the Trustee's part, any action, omission, or forbearance made in good faith reliance on information, consent, or directions received from a Trust Protector or from me as to my retained authority over trust investments will be considered to have been made in good faith for this Section's purposes.

### Section 10.08 Trustee Compensation

An individual serving as Trustee is entitled to fair and reasonable compensation for the services provided as a fiduciary. A corporate fiduciary serving as Trustee will be compensated by agreement between an individual serving as Trustee and the corporate fiduciary. In the absence of an individual Trustee or an agreement, a corporate fiduciary will be compensated in accordance with the corporate fiduciary's current published fee schedule. Any Trustee serving as a Trustee under this agreement may from time to time waive all or any amount of compensation in that Trustee's discretion.

A Trustee may charge additional fees for services provided that are beyond the ordinary scope of duties, such as fees for legal services, tax return preparation, and corporate finance or investment banking services.

In addition to receiving compensation, a Trustee may be reimbursed for reasonable costs and expenses incurred in carrying out the Trustee's duties under this trust.

### Section 10.09 Employment of Professionals

The Trustee may appoint, employ, and remove investment advisors, accountants, auditors, depositories, custodians, brokers, consultants, attorneys, advisors, agents, and employees to advise or assist in the performance of the Trustee's duties. The Trustee may act on the recommendations of the persons or entities employed, with or without independent investigation.

The Trustee may reasonably compensate an individual or entity employed to assist or advise the Trustee, regardless of any other relationship existing between the individual or entity and the Trustee.

The Trustee may compensate providers of contracted services at the usual rate out of the trust's income or principal, as the Trustee deems advisable. The Trustee may compensate an individual

or entity employed to assist or advise the Trustee without diminishing the compensation the Trustee is entitled to under this trust. A Trustee who is a partner, stockholder, officer, director, or corporate affiliate in any entity employed to assist or advise the Trustee may still receive the Trustee's share of the compensation paid to the entity.

### Section 10.10 Collection of Proceeds after the Death of an Insured

After the death of an insured under any policy of life insurance forming a part of the trust principal, the Trustee shall make a reasonable effort to collect all amounts payable directly to the Trustee or the trust. The Trustee may exercise any of the settlement options available to the Trustee under the policy's terms. The Trustee will not be liable to any beneficiary for the settlement option ultimately selected.

The Trustee may refuse to enter into or maintain any proceeding, administrative or otherwise, with respect to any life insurance policy, until the Trustee has been satisfactorily indemnified against all expenses and liabilities that the Trustee believes may be involved in the proceeding.

The Trustee may compromise and adjust claims arising out of any insurance policy upon the terms and conditions as the Trustee determines prudent. The Trustee's decisions are conclusive on all persons.

### Section 10.11 Insurance Carrier Protected in Dealing With The Trustee

An insurance carrier may presume that the Trustee is properly exercising its powers as Trustee under this trust at all times. The insurance provider and its agents are not required to examine any of the provisions of this trust to determine if the Trustee has the power to act or is properly exercising its power, or to verify the Trustee's management of any proceeds paid to the Trustee.

The Trustee's receipt of the insurance proceeds will relieve the insurance carrier of any further liability with respect to payment of the proceeds.

### Section 10.12 Exercise of Testamentary Power of Appointment

A testamentary power of appointment granted under this trust may be exercised by a will, living trust or other written instrument specifically referring to the power of appointment. The holder of a testamentary power of appointment may exercise the power to appoint property among the permissible appointees in equal or unequal proportions, and may designate the terms and conditions, whether outright or in trust. The holder of a testamentary power of appointment may grant further powers of appointment to any person to whom principal may be appointed, including a presently exercisable limited or general power of appointment.

The Trustee may conclusively presume that any power of appointment granted to any beneficiary of a trust created under this trust has not been exercised by the beneficiary if the Trustee has no

knowledge of the existence of a will, living trust or other written instrument exercising the power within three months after the beneficiary's death.

### Section 10.13 Determination of Principal and Income

The rights among beneficiaries in matters concerning principal and income are to be determined in accordance with Nevada Uniform Principal and Income Act. If Nevada Uniform Principal and Income Act does not contain a provision concerning a particular item, the Trustee shall determine what will be credited, charged, and apportioned between principal and income in a fair, equitable, and practical manner with respect to that item.

### Section 10.14 Trust Accounting

Except to the extent required by law, the Trustee is not required to file accountings in any jurisdiction. The annual accounting must include the receipts, expenditures, and distributions of income and principal and the assets on hand for the accounting period. A copy of the federal fiduciary tax return filed for a trust during the accounting will satisfy this reporting requirement.

In the absence of fraud or obvious error, assent by all Income Beneficiaries to a Trustee's accounting will make the matters disclosed in the accounting binding and conclusive upon all persons, including those living on this date and those born in the future who have or will have a vested or contingent interest in the trust property. In the case of an Income Beneficiary who is a minor or incapacitated, the beneficiary's natural guardian or Legal Representative may give the assent required under this Section.

A beneficiary may object to an accounting provided by the Trustee only by giving written notice to the Trustee within 60 days after the Trustee provides the accounting. Any beneficiary who does not submit a timely written objection is considered to assent to the accounting.

The Trustee must make the trust's financial records and documents available to beneficiaries at reasonable times and upon reasonable notice for inspection. The Trustee is not required to furnish any information regarding the trust to anyone other than a beneficiary. The Trustee may exclude any information the Trustee determines is not directly applicable to the beneficiary receiving the information. This in no way limits the right of the Trust Protector to compel an accounting.

In all events, a beneficiary's Legal Representative may receive any notices and take any action on behalf of the beneficiary as to an accounting. If any beneficiary's Legal Representative fails to object to any accounting in writing within 60 days after the Trustee provides the accounting, the beneficiary's Legal Representative will be considered to assent to the accounting.

### Section 10.15 Action of Trustees and Delegation of Trustee Authority

If two Trustees are eligible to act with respect to a given matter, they must agree unanimously for action to be taken unless the express terms of the Trustees' appointment provide otherwise. If

more than two Trustees are eligible to act with respect to a given matter, the Trustees must agree by majority for action to be taken.

If the Trustees are unable to agree on a matter for which they have joint powers, I request that the matter be settled by mediation and then by arbitration, if necessary, in accordance with the Uniform Arbitration Act. Each of the Trustees may select an arbiter, and these arbiters may select an additional arbiter if necessary to establish a majority decision. The decision of a majority of the arbiters will control with respect to the matter.

A nonconcurring Trustee may dissent or abstain from a decision of the majority. A Trustee will be absolved from personal liability by registering the dissent or abstention in the trust records. After doing so, the dissenting Trustee must then act with the other Trustees in any way necessary or appropriate to effect the majority decision.

Notwithstanding the limitations set forth in this Section, unless a Trustee elects otherwise in a written instrument delivered to the other Trustees, if two or more Trustees are then serving, any one Trustee may sign any checks, agreements, or other documents on behalf of the trust with the same effect as if all Trustees had signed. Persons dealing with the signing Trustee in good faith may rely upon the signing Trustee's authority to act on behalf of the trust without inquiry as to the other Trustees' agreement.

Subject to the limitations set forth in Section 11.24, any Trustee may, by written instrument, delegate to any other Trustee the right to exercise any power, including a discretionary power, granted to the Trustee in this trust. During the time a delegation under this Section is in effect, the Trustee to whom the delegation is made may exercise the power to the same extent as if the delegating Trustee has personally joined in the exercise of the power. The delegating Trustee may revoke the delegation at any time by giving written notice to the Trustee to whom the power was delegated.

### Section 10.16 Trustee May Disclaim or Release Any Power

Notwithstanding any provision of this trust to the contrary, any Trustee may relinquish any Trustee power in whole or in part, irrevocably or for any specified period of time, by a written instrument. The Trustee may relinquish a power personally or may relinquish the power for all subsequent Trustees.

### Section 10.17 Trustee May Execute a Power of Attorney

The Trustee may appoint any individual or entity to serve as the Trustee's agent under a power of attorney to transact any business on behalf of the trust or any other trust created under this trust.

### Section 10.18 Additions to Separate Trusts

If upon the termination of any trust created under this trust, a final distribution is to be made to a person who is the Primary Beneficiary of another trust established under this trust, and there is no specific indication whether the distribution is to be made in trust or outright, the Trustee shall make the distribution to the second trust instead of distributing the property to the beneficiary outright. For purposes of administration, the distribution will be treated as though it had been an original part of the second trust.

### Section 10.19 Authority to Merge or Sever Trusts

The Trustee may merge a trust created under this trust with any other trust, if the two trusts contain substantially the same terms for the same beneficiaries and have at least one Trustee in common. The Trustee may administer the merged trust under the provisions of the instrument governing the other trust, and this trust will no longer exist if it merges into another trust. Accordingly, in the event another trust is merged into this trust or a trust created under the provisions of this trust document, the Trustee may shorten the period during which this trust subsists to comply with any applicable rule against perpetuities, if necessary, to effect the merger. But if a merger does not appear feasible, the Trustee may consolidate the trusts' assets for purposes of investment and trust administration while retaining separate records and accounts for each respective trust.

The Trustee may sever any trust on a fractional basis into two or more separate and identical trusts, or may segregate a specific amount or asset from the trust property by allocating it to a separate account or trust. The separate trusts may be funded on a *non pro rata* basis, but the funding must be based on the assets' total fair market value on the funding date. After the segregation, income earned on a segregated amount or specific asset passes with the amount or asset segregated. The Trustee shall hold and administer each severed trust upon terms and conditions identical to those of the original trust.

Subject to the trust's terms, the Trustee may consider differences in federal tax attributes and other pertinent factors in administering the trust property of any separate account or trust, in making applicable tax elections and in making distributions. A separate trust created by severance must be treated as a separate trust for all purposes from the effective severance date; however, the effective severance date may be retroactive to a date before the Trustee exercises the power.

### Section 10.20 Authority to Terminate Trusts

The Trust Protector may terminate any trust created under this trust at any time, if the Trust Protector determines that administering a trust created under this trust is no longer economical. Once distributed, the Trustee will have no further responsibility with respect to that trust property. The Trustee will distribute the trust property from a terminated trust in this order:

> to the beneficiaries then entitled to mandatory distributions of the trust's net income, in the same proportions; and then

if none of the beneficiaries are entitled to mandatory distributions of net income, to the beneficiaries then eligible to receive discretionary distributions of the trust's net income, in the amounts and shares the Trust Protector determines.

### Section 10.21 Merger of Corporate Fiduciary

If any corporate fiduciary acting as the Trustee under this trust is merged with or transfers substantially all of its trust assets to another corporation, or if a corporate fiduciary changes its name, the successor will automatically succeed to the trusteeship as if that successor had been originally named a Trustee. No document of acceptance of trusteeship will be required.

### Section 10.22 Funeral and Other Expenses of Beneficiary

Upon the death of an Income Beneficiary, the Trustee may pay the funeral expenses, burial or cremation expenses, enforceable debts, or other expenses incurred due to the death of the beneficiary from trust property. This Section only applies to the extent the Income Beneficiary has not exercised any testamentary power of appointment granted to the beneficiary under this trust.

The Trustee may rely upon any request by the deceased beneficiary's Legal Representative or family members for payment without verifying the validity or the amounts and without being required to see to the application of the payment. The Trustee may make decisions under this Section without regard to any limitation on payment of expenses imposed by statute or court rule and without obtaining the approval of any court having jurisdiction over the administration of the deceased beneficiary's estate.

### Section 10.23 Generation-Skipping Transfer Tax Provisions

If any trust created under this trust would be partially exempt from generation-skipping transfer tax after the intended allocation of Available GST Exemption to the trust, then the Trustee may divide the partially exempt trust so that the allocation of Available GST Exemption can be made to a trust that will be entirely exempt from generation-skipping transfer tax. If the Trustee chooses to divide a trust that would otherwise be a partially exempt trust, the Trustee must create and administer the separate trusts as provided in this Section.

#### (a) Division into Exempt and Non-Exempt Trusts

The Trustee shall divide the property of the otherwise partially-exempt trust into two separate trusts, the *exempt trust* and the *nonexempt trust*. The exempt trust will consist of the largest fractional share of the otherwise partially exempt trust's total assets that will permit the exempt trust to be entirely exempt from generation-skipping transfer tax. The *nonexempt trust* will consist of the balance of the otherwise partially exempt trust's total assets.

To compute the fractional share, the Trustee will use asset values as finally determined for transfer tax purposes. The Trustee must then apply the fraction to the assets at their actual value on the effective date or dates of distribution so that the actual value of the fractional share resulting from the application of the fraction will include fluctuations in the trust property's value.

### (b) Administration of the Trusts

The Trustee shall administer the exempt and nonexempt trusts created under this Section as separate and independent trusts, but under the same terms as the original trust. To the extent possible, the Trustee should make distributions to a non-skip person as defined by Internal Revenue Code Section 2613 from the nonexempt trust and distributions to a skip person as defined by Section 2613 from an exempt trust. The Trustee may designate names for the exempt and nonexempt trusts.

If an exempt trust and a nonexempt trust are further divided under the terms of this trust, the Trustee may allocate property from the exempt trust first to the trust from which a generation-skipping transfer is more likely to occur.

### (c) Expression of My Intent

My intent is to minimize the application of the generation-skipping transfer tax to the trust property, but not to affect the total amount of trust property to which any beneficiary may be entitled under this trust. This trust must be construed and interpreted to give effect to this intent.

### (d) Additions of Property to Exempt and Non-Exempt Trusts

If at any time any property that has an inclusion ratio greater than zero for generation-skipping transfer tax purposes would be added to a trust with property that has an inclusion ratio of zero, then the Trustee will instead hold the property in a separate trust on the same terms and conditions as the original trust.

### (e) Re-Allocation

If the Trustee's determination of whether a trust in this trust is partially, entirely, or not exempt from GST taxes is later incorrect (for example, if the Congress by law or the Service by regulation or ruling applies the generation-skipping transfer tax retroactively to the trust), the Trustee may re-allocate the assets as of the initial division date, as provided in this Section.

### Section 10.24 Independent Trustee May Confer Testamentary Power of Appointment

During the Primary Beneficiary's lifetime, the Independent Trustee may grant the Primary Beneficiary a testamentary power to appoint all or part of the Primary Beneficiary's trust or trust share to the creditors of the Primary Beneficiary's estate. The Independent Trustee may require that the Primary Beneficiary obtain the consent of the Independent Trustee granting the power, as a condition for the exercise of the power. Any testamentary power of appointment granted by the Independent Trustee may only be exercised personally by the beneficiary, must be exercised in writing and may be revoked at any time during the lifetime of the Primary Beneficiary to whom the power was given. I suggest that the Independent Trustee exercise this authority to subject trust property to estate tax instead of the generation-skipping transfer tax or when it may reduce overall taxes.

## Article Eleven
## The Trustee's Powers

### Section 11.01 Introduction to Trustee's Powers

Except as otherwise specifically provided in this trust, the Trustee may exercise the powers granted by this trust without prior approval from any court, including those powers set forth under the laws of the State of Nevada or any other jurisdiction whose law applies to this trust. The powers set forth in Nevada Uniform Trusts Act are specifically incorporated into this trust.

The Trustee shall exercise the Trustee powers in the manner the Trustee determines to be in the beneficiaries' best interests. The Trustee must not exercise any power inconsistent with the beneficiaries' right to the enjoyment of the trust property in accordance with the general principles of trust law. I expressly waive any duty of impartiality for the Trustee as to the beneficiaries.

The Trustee may have duties and responsibilities in addition to those described in this trust. I encourage any individual or corporate fiduciary serving as Trustee to obtain appropriate legal advice if the Trustee has any questions concerning the duties and responsibilities as Trustee.

### Section 11.02 Execution of Documents by the Trustee

The Trustee may execute and deliver any written instruments that the Trustee considers necessary to carry out any powers granted in this trust.

### Section 11.03 Investment Powers in General

I have reserved the power and authority to direct all trust investments as provided in Nev. Rev. Stat. § 166.040.3. If I have retained the power to direct investments, the Trustee shall follow my direction in all respects in managing trust investments.

Without limiting my investment authority, the Trustee may invest in any type of investment whether inside or outside the geographic borders of the United States of America and its possessions or territories.

The Trustee may acquire and retain investments not regarded as traditional or suitable assets for trusts, including investments that would be forbidden or regarded as imprudent, improper, or unlawful by the *prudent person* rule, *prudent investor* rule, or any other rule or law that restricts a fiduciary's investment flexibility. The Trustee may invest in any type of property, wherever located, including any type of security or option, improved or unimproved real property, and tangible or intangible personal property. The investment may be in any manner, including direct purchase, joint ventures, partnerships, limited partnerships, limited liability companies, corporations, mutual funds, business trusts, or any other form of participation or ownership. In making investments, the Trustee may disregard:

> whether a particular investment or the collective trust investments will produce a reasonable rate of return or result in the preservation of principal;
>
> whether the acquisition or retention of a particular investment or the collective trust investments are consistent with any duty of impartiality as to the different beneficiaries;
>
> whether the trust is diversified; and
>
> whether any trust investment would traditionally be classified as too risky or speculative for trusts.

I expressly waive any duty to diversify trust assets. I intend to grant sole and absolute discretion to the Trustee and my Investment Adviser, if one is serving, in determining acceptable risk and proper investment strategy.

I intend to modify the *prudent person* rule, *prudent investor* rule, or any other rule or law which restricts a fiduciary's ability to invest, to the extent the rule or law would prohibit an investment because of at least one of the factors listed above or any other factor relating to the nature of the investment itself. I believe that it is in the beneficiaries' best interests to give the Trustee the broadest possible discretion in managing trust assets.

The Trustee may delegate his or her discretion to manage trust investments to any registered investment advisor or corporate fiduciary.

## Section 11.04 Banking Powers

The Trustee may establish any type of bank account in any banking institutions that the Trustee chooses. If the Trustee makes frequent disbursements from an account, the account does not need to be interest bearing. The Trustee may authorize withdrawals from an account in any manner.

The Trustee may open accounts in the name of the Trustee, with or without disclosing fiduciary capacity, and may open accounts in the name of the trust. When an account is in the name of the trust, checks on that account and authorized signatures need not disclose the account's fiduciary nature or refer to any trust or Trustee.

## Section 11.05 Business Powers

If the trust owns or acquires an interest in a business entity, whether as a shareholder, partner, general partner, sole proprietor, member, participant in a joint venture, or otherwise, the Trustee may exercise the powers and authority provided for in this Section. The powers granted in this Section are in addition to all other powers granted to the Trustee in this trust.

### (a) No Duty to Diversify

Notwithstanding any duty to diversify imposed by state law or any other provision of this trust, the Trustee may acquire or indefinitely retain any ownership interest in or indebtedness of Funded, LLC, a Nevada limited liability company (including any subsidiary or successor), and any closely held or nonpublicly traded entity in which the trust, I, my spouse, my descendants, and the spouses of my descendants have an ownership interest (the *business interests*), and even though any business interest may constitute all or a substantial portion of the trust property. I specifically authorize the Trustee to invest or indefinitely retain all or any part of the trust property in these business interests, regardless of any resulting risk, lack of income, diversification, or marketability. I waive any applicable prudent investor rule, as well as the Trustee's standard of care and duty to diversify with respect to the acquisition or retention of these business interests.

I recognize that the value of a noncontrolling interest in a business entity may be less than the underlying value of the entity's net assets. Nevertheless, I authorize the Trustee to acquire or retain any noncontrolling business interests.

### (b) Specific Management Powers

The Trustee has all power and authority necessary to manage and operate any business owned by the trust, whether directly or indirectly, including the express powers set forth in this Subsection. The Trustee may participate directly in the conduct of the business, by serving as a general partner of a limited partnership, a member, manager or managing member of a limited liability company, or a shareholder of a corporation, or may employ others to serve in that capacity.

The Trustee may participate in the management of the business and delegate management duties and powers to any employee, manager, partner, or associate of the business, without incurring any liability for the delegation. To the extent that the business interest held by the trust is not one that includes management powers (such as a minority stock interest, limited partnership interest, or a membership


PRIVATE WEALTH LAW INC., 400 S. 4TH STREET, SUITE 540, LAS VEGAS, NEVADA 89101 | (702) 852-6601

interest in a limited liability company), the Trustee has no obligation to supervise the management of the underlying assets, and no liability for the actions of those who do manage the business.

The Trustee may enter into management trusts and nominee trusts in which the Trustee and the trust may serve as the exclusive manager or nominee of property or property interests on behalf of any limited partnership, limited liability company, or corporation.

The Trustee, individually, or if the Trustee is a corporate fiduciary, then an employee of the Trustee, may act as a director, general or limited partner, associate, or officer of the business.

The Trustee may participate with any other person or entity in the formation or continuation of a partnership either as a general or limited partner, or in any joint venture. The Trustee may exercise all the powers of management necessary and incidental to a membership in the partnership, limited partnership, or joint venture, including making charitable contributions.

The Trustee may reduce, expand, limit, or otherwise adjust the operation or policy of the business. The Trustee may subject the trust's principal and income to the risks of the business for any term or period, as the Trustee determines.

For any business in which the trust has an interest, the Trustee may advance money or other property, make loans (subordinated or otherwise) of cash or securities, and guarantee the loans of others made to the business. The Trustee may borrow money for the business, either alone or with other persons interested in the business, and may secure the loan or loans by a pledge or mortgage of any part of any trust property.

The Trustee may select and vote for directors, partners, associates, and officers of the business. The Trustee may enter into owners' agreements with a business in which the trust has an interest or with the other owners of the business.

The Trustee may execute agreements and amendments to agreements as may be necessary to the operation of the business, including stockholder agreements, partnership agreements, buy-sell agreements, and operating agreements for limited liability companies.

The Trustee may generally exercise any powers necessary for the continuation, management, sale, or dissolution of the business.

The Trustee may participate in the sale, reorganization, merger, consolidation, recapitalization, or liquidation of the business. The Trustee may sell or liquidate the business or business interest on terms the Trustee deems advisable and in the best interests of the trust and the beneficiaries. The Trustee may sell any business

interest held by the trust to one or more of the beneficiaries of this trust or to any trust in which a majority of the beneficiaries are beneficiaries of this trust. The Trustee may make the sale in exchange for cash, a private annuity, an installment note, or any combination of those.

The Trustee may exercise all of the business powers granted in this trust even though the Trustee may be personally invested in or otherwise involved with the business.

#### (c) Business Liabilities

If any tort or contract liability arises in connection with the business, and if the trust is liable, the Trustee will first satisfy the liability from the assets of the business, and only then from other trust property as determined by the Trustee.

#### (d) Trustee Compensation

In addition to the compensation set forth in Section 10.08, the Trustee may receive additional reasonable compensation for services in connection with the operation of the business. The Trustee may receive this compensation directly from the business, the trust or both.

#### (e) Conflicts of Interest

The Trustee may exercise all of the powers granted in this trust even though the Trustee may be involved with or have a personal interest in the business.

### Section 11.06 Contract Powers

The Trustee may sell at public or private sale, transfer, exchange for other property, and otherwise dispose of trust property for consideration and upon terms and conditions that the Trustee deems advisable. The Trustee may grant options of any duration for any sales, exchanges, or transfers of trust property.

The Trustee may enter into contracts, and may deliver deeds or other instruments, that the Trustee considers appropriate.

### Section 11.07 Common Investments

For purposes of convenience with regard to the trust property's administration and investment, the Trustee may invest part or all of the trust property jointly with property of other trusts for which the Trustee is also serving as a Trustee. A corporate fiduciary acting as the Trustee may use common funds for investment. When trust property is managed and invested in this manner, the Trustee will maintain records that sufficiently identify this trust's portion of the jointly invested assets.

## Section 11.08 Digital Assets

The Trustee has the authority to access, modify, control, archive, transfer, and delete my digital assets.

Digital assets include my sent and received emails, email accounts, digital music, digital photographs, digital videos, gaming accounts, software licenses, social-network accounts, file-sharing accounts, financial accounts, domain registrations, Domain Name System (DNS) service accounts, blogs, listservs, web-hosting accounts, tax-preparation service accounts, online stores and auction sites, online accounts, and any similar digital asset that currently exists or may be developed as technology advances.

My digital assets may be stored in the cloud or on my own digital devices. The Trustee may access, use, and control my digital devices in order to access, modify, control, archive, transfer, and delete my digital assets—this power is essential for access to my digital assets that are only accessible through my digital devices. Digital devices include desktops, laptops, tablets, peripherals, storage devices, mobile telephones, smartphones, and any similar hardware that currently exists or may be developed as technology advances.

## Section 11.09 Environmental Powers

The Trustee may inspect trust property to determine compliance with or to respond to any environmental law affecting the property. For purposes of this trust, *environmental law* means any federal, state, or local law, rule, regulation, or ordinance protecting the environment or human health.

The Trustee may refuse to accept property if the Trustee determines that the property is or may be contaminated by any hazardous substance or is or was used for any purpose involving hazardous substances that could create liability to the trust or to any Trustee.

The Trustee may use trust property to:

> conduct environmental assessments, audits, or site monitoring;
>
> take remedial action to contain, clean up, or remove any hazardous substance including a spill, discharge, or contamination;
>
> institute, contest, or settle legal proceedings brought by a private litigant or any local, state, or federal agency concerned with environmental compliance;
>
> comply with any order issued by any court or by any local, state, or federal agency directing an assessment, abatement, or cleanup of any hazardous substance; and
>
> employ agents, consultants, and legal counsel to assist the Trustee in these actions.

The Trustee is not liable for any loss or reduction in value sustained by the trust as a result of the Trustee's decision to retain property on which hazardous materials or substances requiring remedial action are discovered, unless the Trustee contributed to that loss through willful misconduct or gross negligence.

The Trustee is not liable to any beneficiary or to any other party for any decrease in the value of property as a result of the Trustee's actions to comply with any environmental law, including any reporting requirement.

The Trustee may release, relinquish, or disclaim any power held by the Trustee that the Trustee determines may cause the Trustee to incur individual liability under any environmental law.

### Section 11.10 Farm, Ranch, and Other Agricultural Powers

The Trustee may retain, acquire, and sell any farm or ranching operation, whether as a sole proprietorship, partnership, or corporation.

The Trustee may engage in the production, harvesting, and marketing of farm and ranch products, either by operating directly or indirectly with management agencies, hired labor, tenants, or sharecroppers.

The Trustee may engage and participate in any government farm program, whether state or federally sponsored.

The Trustee may purchase or rent machinery, equipment, livestock, poultry, feed, and seed.

The Trustee may improve and repair all farm and ranch properties; construct buildings, fences, and drainage facilities; and acquire, retain, improve, and dispose of wells, water rights, ditch rights, and priorities of any nature.

The Trustee may do all things customary or desirable to operate a farm or ranch operation for the benefit of the beneficiaries.

### Section 11.11 Insurance Powers

The Trustee may purchase disability, medical, liability, longterm health care, and other insurance on behalf of and for the benefit of any beneficiary. The Trustee may purchase annuities and similar investments for any beneficiary.

The Trustee may purchase, accept, hold, and deal with as owner, life insurance policies on my life, any beneficiary's life, or on any person's life in whom any beneficiary has an insurable interest. My intent is that life insurance policies be considered proper investments of trust income and principal.

The provisions of this Section supersede the principles of general trust law with respect to the Trustee's duties and obligations relating to any life insurance policies owned or acquired by the trust.

The Trustee is specifically authorized to invest any or none of the trust income and principal in policies of life insurance on my life or on any other person's life for which an insurable interest exists. The Trustee shall use this trust's income to pay the premiums on any life insurance policies insuring my life. If this trust's income is insufficient to pay the premiums, the Trustee is authorized to use other trust assets to pay the premiums.

The Trustee is under no obligation to continue in force any insurance policy forming a part of the trust principal or to pay premiums or other charges that may become due and payable under any insurance policy's provisions at any time.

Except as otherwise provided in this trust, the Trustee will have all of the incidents of ownership and all possible powers with respect to any life insurance policy forming a part of the trust principal. Some examples of these powers are listed below.

**(a) Automatic Premium Loans**

The Trustee may execute or cancel any automatic premium loan agreement and the power to elect or cancel any automatic loan provision.

**(b) Borrow for Premium Payments**

The Trustee may borrow the money to pay premiums due on a policy either from the issuing company or from any other source. The Trustee may use the policy as security for the loan to the extent the policy permits.

**(c) Policy Loans**

The Trustee may borrow from the issuing life insurance carrier and may use the policy as security for the loan to the extent the policy permits.

**(d) Exercise Option on a Policy**

The Trustee may exercise any option contained in a policy with regard to any dividend or share of surplus apportioned to the policy.

**(e) Reduce or Convert a Policy**

The Trustee may reduce the amount of, convert, or exchange the policy.

### (f) Surrender a Policy

The Trustee may surrender a policy at any time for its cash value or withdraw a portion of its cash value.

### (g) Elect Paid-Up Insurance

The Trustee may elect any paid-up insurance or any extended-term insurance nonforfeiture option contained in a life insurance policy.

### (h) Sell Policies

The Trustee may sell a life insurance policy at its fair market value to anyone, including the insured.

### (i) Split-Dollar Arrangements

The Trustee may enter into a split-dollar arrangement with respect to a policy with a beneficiary, a beneficiary's employer, or with another trust. The split-dollar arrangement may constitute an act of self-dealing but must not be for the benefit of the Trustee, the Trustee's spouse, any of their ancestors or descendants, or the spouses of their ancestors or descendants.

### (j) Distribution of Policies

The Trustee may transfer and assign a policy to a beneficiary as a distribution of trust property.

The Trustee shall make every effort to transfer any policy insuring a beneficiary's life to the insured beneficiary as part of the beneficiary's distributive share, unless the Trustee determines, in its sole and absolute discretion, that distribution in another manner would have better tax consequences for the beneficiary.

### (k) Exercise All Other Rights, Options, or Benefits

The Trustee may exercise any other right, option, or benefit contained in a policy or permitted by the issuing insurance company.

### (l) Standard of Care with Respect to Acquisition and Retention of Life Insurance Policies

The Trustee does not have a duty to diversify with respect to policies, or to inquire into the suitability of an insurance policy or the financial condition of an insurer during the term of this trust or any trust created under this trust.


PRIVATE WEALTH LAW INC., 400 S. 4TH STREET, SUITE 540, LAS VEGAS, NEVADA 89101 | (702) 852-6601

The Trustee may use all or any part of the trust principal and income to purchase and continue in force a policy, without any duty to diversify the investments of the trust in assets other than life insurance. The Trustee may purchase all insurance from one or more insurers, without a duty to diversify the types of policies or to purchase policies from more than one insurer.

The Trustee may not be held liable for purchasing or retaining a policy of life insurance as authorized in this Section, even if the investment in the policy does not satisfy applicable standards of prudence or diversification, or if the policy is inferior to another investment, including another life insurance policy that the Trustee could have acquired. The Trustee may not be held liable for any loss resulting from any failure of an insurer to pay claims under a policy or for the exercise or non-exercise of any benefit, option or privilege under the policy, including the right to borrow or withdraw cash values in order to invest for a higher effective yield than under the policy.

The Trustee may, without incurring any liability to any person, purchase a policy upon the recommendation of an experienced insurance advisor or the Trust Protector, if one is then serving. The Trustee may not be held liable to any person for any loss suffered as a result of the financial condition, including insolvency, of any insurer.

I consider life insurance policies issued by offshore and domestic insurers as proper investments of the trust principal and income. If the assets that represent the cash values of the policy are held in a segregated asset account that is not subject to claims by the insurer's creditors, the Trustee does not have a duty to inquire into the financial strength of the insurer.

The Trustee may invest in or retain indefinitely a policy that holds or acquires an interest in any entity or asset held by me, members of my family, or trusts created by any of us. The Trustee does not have a duty to monitor the investments or the investment performance of a policy owned by this trust.

The Trustee may not be held liable for a loss, decrease in value, or the economic consequences sustained as a result of the Trustee acquiring or retaining a policy, absent the Trustee's willful misconduct. The sole duty of the Trustee with respect to a policy will be to hold the policy and pay the premiums.

### Section 11.12 Loans and Borrowing Powers

The Trustee may make loans to, or guarantee the borrowing of, any person including a beneficiary, as well as an entity, trust, or estate, for any term or payable on demand, and secured or unsecured. But the Trustee may only make loans to me with adequate interest and security.

The Trustee may encumber any trust property by mortgages, pledges, or otherwise, and may negotiate, refinance, or enter into any mortgage or other secured or unsecured financial arrangement, whether as a mortgagee or mortgagor. The term may extend beyond the trust's termination and beyond the period required for an interest created under this trust to vest in order to be valid under the rule against perpetuities.

The Trustee may borrow money at interest rates and on other terms that the Trustee deems advisable from any person, institution, or other source including, in the case of a corporate fiduciary, its own banking or commercial lending department.

The Trustee may purchase, sell at public or private sale, trade, renew, modify, and extend mortgages. The Trustee may accept deeds instead of foreclosing.

### Section 11.13 Nominee Powers

The Trustee may hold real estate, securities, and any other property in the name of a nominee or in any other form, without disclosing the existence of any trust or fiduciary capacity.

### Section 11.14 Oil, Gas and Mineral Interests

The Trustee may acquire, maintain, develop, and exploit, either alone or jointly with others, any oil, gas, coal, mineral, or other natural resource rights or interests.

The Trustee may drill, test, explore, mine, develop, extract, remove, convert, manage, retain, store, sell, and exchange any of those rights and interests on terms and for a price that the Trustee deems advisable.

The Trustee may execute leases, pooling, unitization, and other types of agreements in connection with oil, gas, coal, mineral, and other natural resource rights and interests, even though the terms of those arrangements may extend beyond the trust's termination.

The Trustee may execute division orders, transfer orders, releases, assignments, farm outs, and any other instruments that it considers proper.

The Trustee may employ the services of consultants and outside specialists in connection with the evaluation, management, acquisition, disposition, and development of any mineral interest, and may pay the cost of the services from the trust's principal and income.

### Section 11.15 Payment of Property Taxes and Expenses

Except as otherwise provided in this trust, the Trustee may pay any property taxes, assessments, fees, charges, and other expenses incurred in the administration or protection of the trust. All payments will be a charge against the trust property and will be paid by the Trustee out of income. If the income is insufficient, then the Trustee may make any payments of property taxes or

expenses out of the trust property's principal. The Trustee's determination with respect to this payment will be conclusive on the beneficiaries.

### Section 11.16 Purchase of Assets from and Loans to My Probate Estate

Upon my death, the Trustee may purchase at fair market value and retain in the form received any property that is a part of my probate or trust estate as an addition to the trust. In addition, the Trustee may make secured and unsecured loans to my probate or trust estate. The Trustee may not be held liable for any loss suffered by the trust because of the exercise of the powers granted in this Section.

The Trustee may not use any trust property for the benefit of my estate as defined in Code of Federal Regulations Title 26 Section 20.2042-1(b), unless the property is included in my gross estate for federal estate tax purposes.

### Section 11.17 Qualified Tuition Programs

The Trustee may purchase tuition credits or certificates or make contributions to an account in one or more qualified tuition programs as defined under Internal Revenue Code Section 529 on a beneficiary's behalf for the purpose of meeting the beneficiary's qualified higher education expenses. With respect to an interest in any qualified tuition program, the Trustee may act as contributor, administering the interest by actions including:

> designating and changing the designated beneficiary of the interest in the qualified tuition program;
>
> requesting both qualified and nonqualified withdrawals;
>
> selecting among investment options and reallocating funds among different investment options;
>
> making rollovers to another qualified tuition program; and
>
> allocating any tax benefits or penalties to the beneficiaries of the trust.

Notwithstanding anything in this provision to the contrary, the designated beneficiary must always be a beneficiary of the trust from which the funds were distributed to establish the interest in the qualified tuition program. Investment in a qualified tuition program will not be considered a delegation of investment responsibility under any applicable statute or other law.

### Section 11.18 Real Estate Powers

The Trustee may sell at public or private sale, convey, purchase, exchange, lease for any period, mortgage, manage, alter, improve, and in general deal in and with real property in the manner and on the terms and conditions as the Trustee deems appropriate.


PRIVATE WEALTH LAW INC., 400 S. 4TH STREET, SUITE 540, LAS VEGAS, NEVADA 89101 | (702) 852-6601

The Trustee may grant or release easements in or over, subdivide, partition, develop, raze improvements to, and abandon any real property.

The Trustee may manage real estate in any manner considered best, and may exercise all other real estate powers necessary to effect this purpose.

The Trustee may enter into contracts to sell real estate. The Trustee may enter into leases and grant options to lease trust property, even though the term of the agreement extends beyond the termination of any trusts established under this trust and beyond the period that is required for an interest created under this trust to vest in order to be valid under the rule against perpetuities. The Trustee may enter into any contracts, covenants, and warranty agreements that the Trustee deems appropriate.

### Section 11.19 Residences and Tangible Personal Property

The Trustee may acquire, maintain, and invest in any residence for the beneficiaries' use and benefit, whether or not the residence is income producing and without regard to the proportion that the residence's value may bear to the trust property's total value, even if retaining the residence involves financial risks that Trustees would not ordinarily incur. The Trustee may pay or make arrangements for others to pay all carrying costs of any residence for the beneficiaries' use and benefit, including taxes, assessments, insurance, maintenance, and other related expenses.

The Trustee may acquire, maintain, and invest in articles of tangible personal property, whether or not the property produces income. The Trustee may pay for the repair and maintenance of the property.

The Trustee is not required to convert the property referred to in this Section to income-producing property, except as required by other provisions of this trust.

The Trustee may permit any Income Beneficiary of the trust to occupy any real property or use any personal property owned by the trust on terms or arrangements that the Trustee determines, including rent free or in consideration for the payment of taxes, insurance, maintenance, repairs, or other charges.

The Trustee is not liable for any depreciation or loss resulting from any decision to retain or acquire any property as authorized by this Section.

### Section 11.20 Retention and Abandonment of Trust Property

The Trustee may retain any property constituting the trust at the time of its creation, at the time of my death, or as the result of the exercise of a stock option, without liability for depreciation or loss resulting from retention. The Trustee may retain property, notwithstanding the fact that the property may not be of the character prescribed by law for the investment of assets held by a fiduciary, and notwithstanding the fact that retention may result in inadequate diversification under any applicable Prudent Investor Act or other applicable law.


PRIVATE WEALTH LAW INC., 400 S. 4TH STREET, SUITE 540, LAS VEGAS, NEVADA 89101 | (702) 852-6601

The Trustee may hold property that is not income producing or is otherwise nonproductive if holding the property is in the best interests of the beneficiaries in the sole and absolute discretion of the Trustee. On the other hand, the Trustee will invest contributions of cash and cash equivalents as soon as reasonably practicable after the assets have been acquired by the trust.

The Trustee may retain a reasonable amount in cash or money market accounts to pay anticipated expenses and other costs, and to provide for anticipated distributions to or for the benefit of a beneficiary.

The Trustee may abandon any property that the Trustee considers of insignificant value.

### Section 11.21 Securities, Brokerage and Margin Powers

The Trustee may buy, sell, trade, and otherwise deal in stocks, bonds, investment companies, mutual funds, common trust funds, commodities, and other securities of any kind and in any amount, including short sales. The Trustee may write and purchase call or put options, and other derivative securities. The Trustee may maintain margin accounts with brokerage firms, and may pledge securities to secure loans and advances made to the Trustee or to or for a beneficiary's benefit.

The Trustee may place all or any part of the securities held by the trust in the custody of a bank or trust company. The Trustee may have all securities registered in the name of the bank or trust company or in the name of the bank's nominee or trust company's nominee. The Trustee may appoint the bank or trust company as the agent or attorney in fact to collect, receive, receipt for, and disburse any income, and generally to perform the duties and services incident to a custodian of accounts.

The Trustee may employ a broker-dealer as a custodian for securities held by the trust, and may register the securities in the name of the broker-dealer or in the name of a nominee; words indicating that the securities are held in a fiduciary capacity are optional. The Trustee may hold securities in bearer or uncertificated form, and may use a central depository, clearing agency, or book-entry system, such as The Depository Trust Company, Euroclear, or the Federal Reserve Bank of New York.

The Trustee may participate in any reorganization, recapitalization, merger, or similar transaction. The Trustee may exercise or sell conversion or subscription rights for securities of all kinds and descriptions. The Trustee may give proxies or powers of attorney that may be discretionary and with or without powers of substitution, and may vote or refrain from voting on any matter.

### Section 11.22 Settlement Powers

The Trustee may settle any claims and demands in favor of or against the trust by compromise, adjustment, arbitration, or other means. The Trustee may release or abandon any claim in favor of the trust.

### Section 11.23 Subchapter S Corporation Stock Provisions

During any period the trust is not treated as a grantor trust for tax purposes under Internal Revenue Code Section 671, this trust or any trust created under this trust may hold any S corporation stock held as a separate *Electing Small Business Trust*, or as a separate *Qualified Subchapter S Trust*, as provided in this Section.

For purposes of this Section, *S corporation stock* means all capital stock issued by a corporation (or other entity taxable as a corporation for federal income tax purposes) that is treated or is intended to be treated under Section 1361(a) as an *S corporation* for federal income tax purposes.

#### (a) Electing Treatment as an Electing Small Business Trust

If the Trustee elects under Internal Revenue Code Section 1361(e)(3) to qualify any portion of the trust as an *Electing Small Business Trust*, the Trustee shall:

apportion a reasonable share of the unallocated expenses of all trusts created under this trust to the Electing Small Business Trust under the applicable provisions of the Internal Revenue Code and Treasury Regulations; and

administer the trust as an Electing Small Business Trust, under Internal Revenue Code Section 1361(e).

#### (b) Electing Treatment as a Qualified Subchapter S Trust

If the current Income Beneficiary of the trust makes an election under Section 1361(d)(2) to qualify the trust as a Qualified Subchapter S Trust within the meaning of Section 1361(d)(3), the Trustee shall:

refer to the Qualified Subchapter S Trust using the same name as the trust to which the stock was originally allocated, plus the name of the current Income Beneficiary of the trust, followed by the letters QSST;

administer the Qualified Subchapter S Trust in accordance with the same provisions contained in the trust to which the Trustee allocated the S corporation stock, as long as the provisions of this Subsection control the trust administration to the extent that they are inconsistent with the provisions of the original trust; and

maintain the Qualified Subchapter S Trust as a separate trust held for the benefit of only one beneficiary as required in Section 1361(d)(3).


PRIVATE WEALTH LAW INC., 400 S. 4TH STREET, SUITE 540, LAS VEGAS, NEVADA 89101 | (702) 852-6601

The Trustee shall recommend that the current Income Beneficiary of the trust make a timely election to cause federal tax treatment of the trust as a Qualified Subchapter S Trust.

### (1) Current Income Beneficiary

The *current Income Beneficiary* of a Qualified Subchapter S Trust is the person who has a present right to receive income distributions from the trust to which the Trustee has allocated the S corporation stock. A Qualified Subchapter S Trust may have only one current Income Beneficiary.

If, under the terms of the trust, more than one person has a present right to receive income distributions from the trust originally holding the S corporation stock, the Trustee shall segregate the S corporation stock into separate Qualified Subchapter S Trusts for each of these people.

### (2) Distributions

Until the earlier of the death of the current Income Beneficiary or the date on which the trust no longer holds any S corporation stock (the *QSST termination date*), the Trustee shall distribute at least annually all of the trust's *net income*, as defined in Internal Revenue Code Section 643(b) to the current Income Beneficiary.

The terms of the trust to which the S corporation stock was originally allocated govern distributions of principal from the Qualified Subchapter S Trust. But until the QSST termination date, the Trustee may distribute principal only to the current Income Beneficiary of the Qualified Subchapter S Trust and not to any other person or entity.

If the Qualified Subchapter S Trust terminates during the lifetime of the current Income Beneficiary, the Trustee shall distribute all assets of the Qualified Subchapter S Trust to the current Income Beneficiary outright and free of the trust.

### (3) Allocation of Income and Expenses

The Trustee shall characterize receipts and expenses of any Qualified Subchapter S Trust in a manner consistent with Internal Revenue Code Section 643(b).

#### (4) Trust Merger or Consolidation

Notwithstanding any other provision of this trust that may seem to the contrary, the Trustee may not merge any Qualified Subchapter S Trust with another trust's assets if doing so would jeopardize the qualification of either trust as a Qualified Subchapter S Trust.

### (c) Governance of the Trusts

The following additional provisions apply to any separate trust created under this Section.

#### (1) Protection of S Corporation Status

The Trustee must not administer a trust holding S corporation stock in a manner that would cause the termination of the S corporation status of the entity whose stock is held as part of the trust. Therefore, during any period that the trust holds S corporation stock, the Trustee must construe the terms and provisions of this trust in a manner that is consistent with the trust qualifying as an Electing Small Business Trust or as a Qualified Subchapter S Trust. The Trustee must disregard any provision of this trust that cannot be so construed or applied.

#### (2) Methods of Distribution

The Trustee may not make distributions in a manner that would jeopardize the trust's qualification as an Electing Small Business Trust or as a Qualified Subchapter S Trust.

#### (3) Disposition of S Corporation Stock

If the Trustee believes the continuation of any trust would result in the termination of the S corporation status of any entity whose stock is held as a part of the trust property, the Trustee, other than an Interested Trustee, in addition to the power to sell or otherwise dispose of the stock, has the power to distribute the stock to the person who is then entitled to receive the income from the trust.

## Section 11.24 Limitation on the Trustee's Powers

All powers granted to Trustees under this trust or by applicable law are limited as set forth in this Section, unless explicitly excluded by reference to this Section.

### (a) An Interested Trustee Limited to Ascertainable Standards

An Interested Trustee may only make discretionary decisions when they pertain to a beneficiary's health, education, maintenance, and support as described under Internal Revenue Code Sections 2041 and 2514.

### (b) Interested Trustee Prohibited from Acting

Whenever this trust specifically prohibits or limits an Interested Trustee from exercising discretion or performing an act, then any Interested Trustee serving as the Trustee is prohibited from participating in the exercise of that discretion or performance of that act. If there is no Trustee serving who is not an Interested Trustee, then an Independent Special Trustee may be appointed under the provisions of Section 3.09 to exercise the discretion or perform the act.

### (c) Exclusive Powers of The Independent Trustee

Whenever a power or discretion is granted exclusively to the Independent Trustee, then any Interested Trustee who is then serving as the Trustee is prohibited from participating in the exercise of the power or discretion. If there is no Independent Trustee then serving, then an Independent Special Trustee may be appointed under the provisions of Section 3.09 to exercise the power or discretion that is exercisable only by the Independent Trustee.

### (d) No Distributions in Discharge of Certain Legal Obligations

The Trustee may not exercise or participate in the exercise of discretion with respect to the distribution of income or principal that would in any manner discharge a legal obligation of the Trustee, including the obligation of support.

If a beneficiary or any other person has the power to remove a Trustee, that Trustee may not exercise or participate in the exercise of discretion with respect to the distribution of income or principal that would in any manner discharge a legal obligation of the person having the power to remove the Trustee, including that person's obligation of support.

### (e) Insurance Policy on the Life of the Trustee

If the trust holds a policy that insures the life of a Trustee, that Trustee may not exercise any powers or rights with respect to the policy. Instead, a Co-Trustee or an Independent Special Trustee must exercise the powers and rights with respect to the policy.

If any rule of law or court decision construes the ability of the insured Trustee to name an Independent Special Trustee as an incident of ownership of the policy,

then a majority of the then current Income Beneficiaries (excluding the insured Trustee if he or she is a beneficiary) will select the Independent Special Trustee.

**(f) Insurance Policy on a Beneficiary's Life**

If the trust holds a policy that insures a beneficiary's life, the beneficiary, individually or as Trustee, may not exercise any power over the policy, its cash value, or its proceeds. This denial of power is intended to prevent an insured beneficiary from holding any power that would constitute an incident of ownership of the policy.

The limitations of this Subsection do not apply if, upon the beneficiary's death, the policy's proceeds would otherwise be included in the beneficiary's gross estate for federal estate tax purposes.

# Article Twelve
# General Provisions

## Section 12.01 Spendthrift Provision

No beneficiary may assign, anticipate, encumber, alienate, or otherwise voluntarily transfer the income or principal of any trust created under this trust. In addition, neither the income nor the principal of any trust created under this trust is subject to attachment, bankruptcy proceedings, or any other legal process, the interference or control of creditors or others, or any involuntary transfer.

This provision is intended to restrict the transfer of any beneficial interest that may be enforceable under applicable non-bankruptcy law within the meaning of the Bankruptcy Code Section 541(c)(2).

This Section does not restrict a beneficiary's right to disclaim any interest or exercise of any power of appointment granted in this trust. In addition, this Section does not limit the ability of an Independent Trustee to appoint property in further trust for any beneficiary as provided in Section 10.02.

## Section 12.02 Contest Provision

The right of a person to take any interest given to him or her under this trust or any trust created under this trust instrument will be determined as if the person predeceased me without leaving any surviving descendants if that person, alone or in conjunction with any other person, engages in any of these actions:

contests by a claim of undue influence, fraud, menace, duress, or lack of testamentary capacity, or otherwise objects in any court to the validity of this trust, any trust created under the terms of this instrument, my Will, or any beneficiary designation of an annuity, retirement plan, IRA, Keogh, pension, profit-sharing plan, or insurance policy signed by me, (collectively referred to in this Section as *Document* or *Documents*) or any amendments or codicils to any Document;

seeks to obtain adjudication in any court proceeding that a Document or any of its provisions is void, or otherwise seeks to void, nullify, or set aside a Document or any of its provisions;

files suit on a creditor's claim filed against the trust estate, or any other Document, after rejection or lack of action by the respective fiduciary;

files a petition or other pleading to change the character (community, separate, joint tenancy, partnership, domestic partnership, real or personal, tangible or intangible) of property already characterized by a Document;

files a petition to impose a constructive trust or resulting trust on any assets of the trust estate; or

participates in any of the above actions in a manner adverse to the trust estate, such as conspiring with or assisting any person who takes any of these actions.

The Trustee may defend any violation of this Section at the expense of the trust estate. A *contest* includes any action described above in an arbitration proceeding, but does not include any action described above solely in a mediation not preceded by a filing of a contest with a court.

The foregoing provision is not applicable to any person who seeks to enforce the annual withdrawal rights granted to him or her under Article Five of this instrument (the so-called *Crummey* withdrawal rights). A person who seeks to enforce his or her annual withdrawal rights will have the right to seek full redress for those rights in any state court of law or equity having jurisdiction over the matter without any forfeiture of his or her rights or interest in any share of trust property.

### Section 12.03 Effect of Legal Separation or Dissolution of Marriage

If my wife or I file a petition for legal separation or dissolution of marriage and unless and until the petition is dismissed, my wife, her parents, all of her descendants who are not my descendants and all spouses of such persons who are not descendants of my parents will be deemed to have died intestate on the date of the filing for all purposes of this instrument. Any exercise or exercises of any power of appointment by any person identified in this paragraph that has not become effective prior to the filing date will be null and void. If, however, a court issues any order dismissing a petition described above, and I accept the dismissal of the petition by a written

acknowledgement, then the persons identified in this paragraph will no longer be deemed to have died intestate for purposes of this instrument.

### Section 12.04 Changing the Governing Law and Situs of Administration

At any time, the Trust Protector may change the governing law of the trust; change the situs of the administration of the trust; and remove all or any part of the property from one jurisdiction to another. The Trust Protector may elect, by filing an instrument with the trust records, that the trust will then be construed, regulated, and governed by the new jurisdiction's laws. The Trust Protector may take action under this Section for any purpose the Trust Protector considers appropriate, including the minimization of any taxes in respect of the trust or any trust beneficiary.

If considered necessary or advisable by the Trust Protector, the Trust Protector may appoint an Independent Trustee to serve as Trustee in the new situs.

If necessary and if the Trust Protector does not appoint an Independent Trustee within 30 days of the Trust Protector's action to change the governing law or situs of the trust, the beneficiaries entitled to receive distributions of the trust's net income may appoint a corporate fiduciary in the new situs by majority consent. If a beneficiary is a minor or is incapacitated, the beneficiary's parent or Legal Representative may act on the beneficiary's behalf.

### Section 12.05 Definitions

For purposes of this trust, the following terms have these meanings:

#### (a) Adopted and Afterborn Persons

A person in any generation who is legally adopted before reaching 18 years of age and his or her descendants, including adopted descendants, have the same rights and will be treated in the same manner under this trust as natural children of the adopting parent. A person is considered legally adopted if the adoption was legal at the time when and in the jurisdiction in which it occurred.

A fetus *in utero* later born alive will be considered a person in being during the period of gestation.

#### (b) Available GST Exemption

An individual's *Available GST Exemption* means the GST exemption provided in Internal Revenue Code Section 2631 in effect at the time; reduced by the aggregate of any amount of GST exemption allocated to lifetime transfers and any amount of allocations of GST exemption made or treated as made to transfers other than allocations to transfers under this trust.

If, at the time, the individual has made a gift with an inclusion ratio of greater than zero but has not filed a gift tax return and the due date for the gift tax return has not yet passed, that individual's GST exemption is considered to have been allocated to this gift to the extent necessary and possible to exempt the gift from generation-skipping transfer tax.

### (c) Conduit Trust

The term *conduit trust* means a see-through trust, the terms of which provide that, with respect to the deceased employee's interest in the plan, all distributions will, upon receipt by the trustee, be paid directly to, or for the benefit of, specified beneficiaries.

### (d) Descendants

The term *descendants* means persons who directly descend from a person, such as children, grandchildren, or great-grandchildren. The term *descendants* does not include collateral descendants, such as nieces and nephews.

### (e) Education

The term *education* is intended to be an ascertainable standard under Internal Revenue Code Sections 2041 and 2514 and includes:

> enrollment at private elementary, junior, and senior high school, including boarding school;
>
> undergraduate and graduate study in any field at a college or university;
>
> specialized, vocational, or professional training or instruction at any institution, as well as private instruction; and
>
> any other curriculum or activity that the Trustee considers useful for developing a beneficiary's abilities and interests including athletic training, musical instruction, theatrical training, the arts, and travel.

The term *education* also includes expenses such as tuition, room and board, fees, books, supplies, computers and other equipment, tutoring, transportation, and a reasonable allowance for living expenses.

### (f) Event of Duress

The term *Event of Duress* means the receipt or attempted service of any communication by a court, administrative, tribunal, or similar governmental or

quasi-governmental agency in any jurisdiction under which any person seeks relief or remedy for himself, herself, itself, or any other person by:

asserting a claim adverse to the Trustee over any trust property;

requesting an order or instruction to the Trustee in contravention to this instrument, including—without limitation—provisions granting discretion to the Trustee, the Trust Protector, or both; or

requesting information concerning the origin, receipt, management, administration, investment, distribution, or encumbrance of trust property with a view towards asserting a claim against or establishing a receivership or other like arrangement over trust property that is in any way materially adverse to exercising powers of management, administration, investment, and distribution granted to the fiduciaries under this instrument;

requiring the replacement of any Trustee or the Trust Protector or placing limitations on the Trustee's or Trust Protector's powers other than in accordance with this instrument;

threatening or actually suspending or abrogating this instrument in whole or in part;

threatening or actually compelling the Trustee to sell, transfer, or otherwise dispose of trust property in a manner inconsistent with this instrument; or

exercising or not exercising a right, power, or discretion vested in or reserved under this instrument:

> to any person that is under duress or influence by an outside force;
>
> by compulsion;
>
> that is not voluntary in nature; or
>
> by any legal or similar process such as an order or other direction, ruling, or like decree of any court, tribunal, or administrative body, or by a trustee in bankruptcy, official assignee, or any other similar appointee or person, having jurisdiction over the Settlor, Trust Protector, the Trustee, the lifetime beneficiaries, the beneficiaries of a separate trust, this instrument, or any trust property.

### (g) Excluded Person

The term *excluded person* includes:

> all courts and administrative or judicial bodies, except those organized and empowered under the law of the Trust;
>
> any creditors, judgment claimants, or obligees of any Settlor, of any Trustee, of any Beneficiary, or of any other Beneficiary under the instrument, and any nominee, assignee, agent, or party serving on behalf or in the place of a creditor, claimant, or obligee;
>
> the Settlor, if he ceases to be a Beneficiary at any time for any reason; and
>
> any person excluded as a Beneficiary under any provision of this instrument.

If, however, the Settlor is restored as a Beneficiary under this instrument, the Settlor will no longer be an excluded person during the period that he is a Beneficiary.

### (h) Good Faith

For the purposes of this trust, a Trustee has acted in good faith if:

> an action or inaction is not a result of intentional wrongdoing;
>
> the Trustee did not make the decision to act or not act with reckless indifference to the beneficiaries' interests; and
>
> an action or inaction does not result in an improper personal benefit to the Trustee.

Further, all parties subject to the provisions of this trust will treat any action or inaction made in reliance on information, consent, or directions received from the Personal Representative of my estate as made in good faith for the purposes of this Section, except for cases of willful misconduct or malfeasance on the Trustee's part.

### (i) Incapacity

Except as otherwise provided in this trust, a person is considered incapacitated in any of the following circumstances.

#### (1) The Opinion of Two Licensed Physicians

An individual is considered to be incapacitated whenever two licensed physicians give the opinion that the individual is unable to effectively manage his or her property or financial affairs, whether as a result of age; illness; use of prescription medications, drugs, or other substances; or any other cause. If an individual whose capacity is in question refuses to provide necessary documentation or otherwise submit to examination by licensed physicians, that individual will be considered incapacitated.

An individual is considered restored to capacity whenever the individual's personal or attending physician provides a written opinion that the individual is able to effectively manage his or her property and financial affairs.

#### (2) Court Determination

An individual is considered incapacitated if a court of competent jurisdiction has declared the individual to be disabled, incompetent, or legally incapacitated.

#### (3) Detention, Disappearance, or Absence

An individual is considered to be incapacitated whenever he or she cannot effectively manage his or her property or financial affairs due to the individual's unexplained disappearance or absence for more than 30 days, or whenever he or she is detained under duress.

An individual's disappearance, absence, or detention under duress may be established by an affidavit of the Trustee, or by the affidavit of any beneficiary if no Trustee is then serving. The affidavit must describe the circumstances of the individual's disappearance, absence, or detention, and may be relied upon by any third party dealing in good faith with the Trustee.

### (j) Include, Includes, Including

In this document, the words include, includes, and including mean include without limitation, includes without limitation and including without limitation, respectively. Include, includes, and including are words of illustration and enlargement, not words of limitation or exclusivity.

### (k) Income Beneficiary

The term *Income Beneficiary* means any beneficiary who is then entitled to receive distributions of the trust's net income, whether mandatory or discretionary.

Unless otherwise provided in this trust, the phrase *majority of the Income Beneficiaries* means any combination of Income Beneficiaries who would receive more than 50% of the accrued net income if that income were distributed on the day of a vote. For purposes of this calculation, beneficiaries who are eligible to receive discretionary distributions of net income receive the imputed income in equal shares.

References to a *majority* refer to a majority of the entire trust collectively until the Trustee allocates property to separate trusts or trust shares. After the Trustee allocates property to separate trusts or trust shares, references to a *majority* refer to a majority of each separate trust or trust share.

### (l) Independent Trustee

The term *Independent Trustee* means any Trustee who is not an Interested Trustee as defined in Subsection (n) and includes an Independent Special Trustee appointed under the provisions of Section 3.09.

### (m) Instrument

The term *this instrument* means this trust, and includes all trusts created under the terms of this trust.

### (n) Interested Trustee

The term *Interested Trustee* means a Trustee who:

> is a transferor or beneficiary;
>
> is related or subordinate to a transferor or beneficiary;
>
> can be removed and replaced by a transferor with either the transferor or a party who is related or subordinate to the transferor; or
>
> can be removed and replaced by a beneficiary with either the beneficiary or a party who is related or subordinate to the beneficiary.

For purposes of this Subsection, *transferor* means a person who transferred property to the trust during that person's lifetime, including a person whose

disclaimer resulted in property passing to the trust. A person is only a transferor during his or her lifetime. *Beneficiary* means a person who is or may become eligible to receive income or principal from the trust under the terms of the trust, even if this person has only a remote contingent remainder interest in the trust, but not if the person's only interest is as a potential appointee under a power of appointment. *Related or subordinate* is used as defined in Internal Revenue Code Section 672(c).

### (o) Internal Revenue Code and Treasury Regulations

References to the *Internal Revenue Code* or to its provisions are to the Internal Revenue Code of 1986, as amended, and any corresponding Treasury Regulations. References to the *Treasury Regulations*, are to the Treasury Regulations under the Internal Revenue Code in effect. If a particular provision of the Internal Revenue Code is renumbered or the Internal Revenue Code is superseded by a subsequent federal tax law, any reference is considered to be made to the renumbered provision or to the corresponding provision of the subsequent law, unless to do so would clearly be contrary to my intent as expressed in this trust. The same rule applies to references to the Treasury Regulations.

### (p) Investment Trustee

The term *Investment Trustee* refers to a person or a corporate fiduciary that is qualified to serve as an Independent Trustee and is appointed as Investment Trustee in one or more trusts under this trust. An Investment Trustee's authority is limited to investing, reinvesting, and managing any property held by the trust, and exercising any powers in this agreement relating to the investment, reinvestment, and management of the trust's assets, including all discretionary investment and management powers. The Investment Trustee has no authority or influence over any distributions made to a beneficiary or any other person. But if the Investment Trustee subsequently becomes the sole Trustee, the Investment Trustee may then perform all trustee powers of this agreement or allowed by law. The decisions of the Investment Trustee will be valid and incontestable by any person, except as specifically provided to the contrary in this agreement. No excluded person may serve as an Investment Trustee under any circumstances.

### (q) Legal Representative or Personal Representative

As used in this trust document, the term *Legal Representative* or *Personal Representative* means a person's guardian, conservator, executor, administrator, Trustee, attorney in fact under a Durable Power of Attorney, or any other person or entity representing a person or the person's estate. In the case of a minor beneficiary, the beneficiary's parent or another adult with custody of the beneficiary, except for any transferor to a trust created under this instrument, will be considered the beneficiary's Legal Representative for purposes of this trust.


PRIVATE WEALTH LAW INC., 400 S. 4TH STREET, SUITE 540, LAS VEGAS, NEVADA 89101 | (702) 852-6601

### (r) Per Stirpes

Whenever a distribution is to be made to a person's descendants *per stirpes*, the distribution will be divided into as many equal shares as there are then-living children and deceased children who left then-living descendants. Each then-living child will receive one share, and the share of each deceased child will be divided among the deceased child's then-living descendants in the same manner.

### (s) Primary Beneficiary

The *Primary Beneficiary* of a trust created under this trust is that trust's oldest Income Beneficiary, unless some other individual is specifically designated as the Primary Beneficiary of that separate trust.

### (t) See-Through Trust

The term *see-through trust* means a trust that is designated as the beneficiary of an employee under a qualified retirement plan and meets certain requirements of the Treasury Regulations, the effect of which is that certain beneficiaries of the trust that are not disregarded are treated as having been designated as beneficiaries of the employee under the qualified retirement plan.

### (u) Shall and May

Unless otherwise specifically provided in this trust or by the context in which used, I use the word *shall* in this trust to impose a duty, command, direct, or require, and the word *may* to allow or permit, but not require. In the context of the Trustee, when I use the word *shall* I intend to impose a fiduciary duty on the Trustee. When I use the word *may* I intend to empower the Trustee to act with the Trustee's sole and absolute discretion unless otherwise stated in this trust. When I use the words *may not* in reference to the Trustee, I specifically mean the Trustee *is not permitted to*.

### (v) Settlor

*Settlor* has the same legal meaning as *Grantor*, *Trustor* or any other term referring to the maker of a trust.

### (w) Trust

The terms *this trust, this document, instrument,* and *this trust document* refer to this trust and all trusts created under the terms of this trust.

#### (x) Trustee

The terms *the Trustee* and *Trustee* refer to the Initial Trustee named in Article One and to any successor, substitute, replacement, or additional person, corporation, or other entity that ever acts as the Trustee of any trust created under the terms of this trust. The term *Trustee* refers to singular or plural as the context may require.

#### (y) Trust Property

The term *trust property* means all property acquired from any source and held by a Trustee under this trust.

#### (z) Wife

The term *my wife* refers to the person to whom I am legally married at any time the identity of my spouse is relevant for any purpose under this trust.

### Section 12.06 General Provisions and Rules of Construction

The following general provisions and rules of construction apply to this trust.

#### (a) Multiple Originals; Validity of Paper or Electronic Copies

This trust may be executed in any number of counterparts, each of which will be considered an original.

Any person may rely on a paper or electronic copy of this trust that the Trustee certifies to be a true copy as if it were an original.

#### (b) Singular and Plural; Gender

Unless the context requires otherwise, singular words may be construed as plural, and plural words may be construed as singular. Words of one gender may be construed as denoting another gender as is appropriate within the context. The word *or,* when used in a list of more than two items, may function as both a conjunction and a disjunction as the context requires.

#### (c) Headings of Articles, Sections, and Subsections

The headings of Articles, Sections, and Subsections used within this trust are included solely for the convenience of the reader. They have no significance in the interpretation or construction of this trust.


PRIVATE WEALTH LAW INC., 400 S. 4TH STREET, SUITE 540, LAS VEGAS, NEVADA 89101 | (702) 852-6601

**(d) Governing State Law**

This trust is governed, construed, and administered according to the laws of Nevada, as amended except as to trust property required by law to be governed by the laws of another jurisdiction and unless the situs of administration is changed under Section 12.04.

**(e) Notices**

Unless otherwise stated, any notice required under this trust will be in writing. The notice may be personally delivered with proof of delivery to the party requiring notice and will be effective on the date personally delivered. Notice may also be mailed, postage prepaid, by certified mail with return receipt requested to the last known address of the party requiring notice. Mailed notice is effective on the date of the return receipt. If a party giving notice does not receive the return receipt but has proof that he or she mailed the notice, notice will be effective on the date it would normally have been received via certified mail. If the party requiring notice is a minor or incapacitated individual, notice will be given to the parent or Legal Representative.

**(f) Severability**

The invalidity or unenforceability of any provision of this trust does not affect the validity or enforceability of any other provision of this trust. If a court of competent jurisdiction determines that any provision is invalid, the remaining provisions of this trust are to be interpreted as if the invalid provision had never been included.

I have executed this trust on September 16, 2022. This Irrevocable Trust Agreement is effective when signed by me, whether or not now signed by a Trustee.

I certify that I have read and understand this Irrevocable Trust Agreement, and that it correctly states the provisions under which my trust property is to be administered and distributed by the Trustee.

________________________________
Brian Sciara, Settlor


PRIVATE WEALTH LAW INC., 400 S. 4TH STREET, SUITE 540, LAS VEGAS, NEVADA 89101 | (702) 852-6601

______________________________________
Glenn H. Truitt, Trustee

STATE OF NEVADA )
) ss.
COUNTY OF ________________________ )

This instrument was acknowledged before me on ______________________, 20____, by Brian Sciara, as Settlor.

(Seal, if any)

________________________________________
Notary Public

STATE OF NEVADA )
) ss.
COUNTY OF ________________________ )

This instrument was acknowledged before me on ______________________, 20____, by Glenn H. Truitt, as Trustee.

(Seal, if any)

________________________________________
Notary Public

STATE OF NEVADA )
) ss.
COUNTY OF ________________________ )

I, Brian Sciara, declare to the officer taking my acknowledgment of this instrument and to the subscribing witnesses that I signed this instrument as my trust.

______________________________________
Brian Sciara, Settlor

We, ____________________ and ____________________, have been sworn by the officer signing below, and declare to that officer on our oaths that the Settlor declared the instrument to be the Settlor's trust and signed it in our presence. We each signed the instrument as a witness in the presence of the Settlor and of each other.

______________________________________
Stephanie Stone, Witness

______________________________________
Jessica Jorbietzki, Witness

STATE OF NEVADA )
) ss.
COUNTY OF Clark )

This instrument was acknowledged before me on Sept. 16th, 2022, by Brian Sciara, as Settlor.

(Seal, if any)

CHRISTOFFER J. BALL
Notary Public - State of Nevada
County of Clark
APPT. NO. 19-2193-1
My App. Expires Apr. 22, 2023

______________________________________
Notary Public

____________________________________
Brian Sciara, Settlor

We, ____________________ and ____________________, have been sworn by the officer signing below, and declare to that officer on our oaths that the Settlor declared the instrument to be the Settlor's trust and signed it in our presence. We each signed the instrument as a witness in the presence of the Settlor and of each other.

____________________________________
___________________________, Witness

____________________________________
___________________________, Witness

STATE OF NEVADA )
) ss.
COUNTY OF _______________________ )

This instrument was acknowledged before me on _____________________, 20____, by Brian Sciara, as Settlor.

(Seal, if any)

________________________________________
Notary Public

# Schedule A

Ten Dollars Cash

Real Property located at 712 Pont Chartrain Dr. Las Vegas, Nevada 89145


PRIVATE WEALTH LAW INC., 400 S. 4TH STREET, SUITE 540, LAS VEGAS, NEVADA 89101 | (702) 852-6601

# CERTIFICATION OF TRUST

When you transact business on behalf of your trust, you will sometimes be asked to produce a copy of your trust document. Financial institutions and others who deal with you will want proof that your trust exists, that they are dealing with the true trustee, and that your trust gives your trustee the power to do what your trustee proposes to do.

If your trust includes personal or financial information that you want to keep private, most financial institutions will allow you to substitute a "Certification of Trust" that contains only the provisions that the financial institutions or others need to see.

In addition to a statement that your trust is valid, a Certification of Trust may include copies of key pages of your trust as attachments. Normally these pages will confirm the following:

- The identity of the current and successor trustees of your trust;
- The authority and powers that the trust grants to the trustees; and
- The signatures required by the trust agreement.

# Certification of Trust for the B.S.A.P. Irrevocable Trust

Under Nev. Rev. Stat. § 164.400 to § 164.440, this Certification of Trust is signed by all the currently acting Trustees of the B.S.A.P. Irrevocable Trust dated September 16, 2022, who declare as follows:

1. The Settlor of the trust is Brian Sciara. The trust is irrevocable and unamendable by the Settlor.

2. The Trustee of the trust is Glenn H. Truitt.

3. The tax identification number of the trust is 92-6053106.

4. Title to assets held in the trust shall be titled as:

   Glenn H. Truitt, Trustee of the B.S.A.P. Irrevocable Trust dated September 16, 2022.

5. Any alternative description shall be effective to title assets in the name of the trust or to designate the trust as a beneficiary if the description includes the name of at least one initial or successor trustee, any reference indicating that property is being held in a fiduciary capacity, and the date of the trust.

6. Excerpts from the trust agreement that establish the trust, designate the Trustee and set forth the powers of the Trustee will be provided upon request. The powers of the Trustee include the power to acquire, sell, assign, convey, pledge, encumber, lease, borrow, manage and deal with real and personal property interests.

7. The terms of the trust provide that a third party may rely upon this Certification of Trust as evidence of the existence of the trust and is specifically relieved of any obligation to inquire into the terms of this trust or the authority of my Trustee, or to see to the application that my Trustee makes of funds or other property received by my Trustee.

8. The trust has not been amended or judicially reformed in any way that would cause the representations in this Certification of Trust to be incorrect.

[*Signature on the following page*]



PRIVATE WEALTH LAW INC., 400 S. 4TH STREET, SUITE 540, LAS VEGAS, NEVADA 89101 | (702) 852-6601

Dated: ____________________

_________________________________________
Glenn H. Truitt, Trustee

STATE OF NEVADA )
) ss.
COUNTY OF ________________________ )

This instrument was acknowledged before me on ______________________, 20____, by Glenn H. Truitt.

(Seal, if any)

_____________________________________________
Notary Public


PRIVATE WEALTH LAW INC., 400 S. 4TH STREET, SUITE 540, LAS VEGAS, NEVADA 89101 | (702) 852-6601

# DEMAND RIGHT NOTIFICATIONS

This section contains sample demand right notifications that your Trustee should use to properly notify your irrevocable trust's lifetime beneficiaries of transfers to the trust.

Each year when the first transfer is made to the trust, a demand right notification should be hand-delivered or sent to each lifetime beneficiary. The Trustee should have each beneficiary sign and acknowledge receipt of the notification. The acknowledged notification should then be kept in this section.

We cannot overemphasize the importance of retaining acknowledgements from the beneficiaries. These notices will prove to IRS estate tax auditors that your contributions to the trust qualify for the annual gift tax exclusion. Without the notices, the IRS can include gifts in your taxable estate that would otherwise be exempt from inclusion due to the annual gift tax exclusion.

If a beneficiary is a minor, the legal guardian or other legal representative of the minor beneficiary may sign on the minor's behalf.

*We encourage you to call us if you or your Trustee has any questions with regard to the notification process.*

# Notification of Demand Right

This notice is to inform you that on ____________________________ a gift was made to the B.S.A.P. Irrevocable Trust, dated September 16, 2022 under which you are a beneficiary. As a beneficiary, you have the right to withdraw your share of this gift or any other subsequent gifts made to the trust during this calendar year. However, in no event can you withdraw more than the annual limit on withdrawals as set forth in the trust. No notice will be given to you of any additional gifts made to the trust this year. You may contact the Trustee to find out your share of this gift or of any other gifts made to the trust in which you have a right of withdrawal.

If you wish to exercise your withdrawal rights, you must file a written withdrawal request with the Trustee within 30 days of the date you received notice the gift was made. If you do not exercise your withdrawal right in time, your withdrawal right will lapse.

The lapse of a right to withdraw a contribution to the trust does not affect your right to withdraw future gifts to the trust.

If you need any additional information to assist you in making a decision regarding the exercise of your withdrawal rights, or if you wish to exercise your withdrawal rights, you must contact the Trustee in writing.

Date: ______________

Trustee Signature : _____________________

Trustee Name: _____________________

**ACKNOWLEDGMENT OF RECEIPT OF NOTICE**

I acknowledge receipt of this Notice of Withdrawal Right.

Date: ______________

__________________________________________

Jennifer Sciara, Beneficiary

# Notification of Demand Right

This notice is to inform you that on ____________________________ a gift was made to the B.S.A.P. Irrevocable Trust, dated September 16, 2022, under which you are a beneficiary. As a beneficiary, you have the right to withdraw your share of this gift or any other subsequent gifts made to the trust during this calendar year. However, in no event can you withdraw more than the annual limit on withdrawals as set forth in the trust. No notice will be given to you of any additional gifts made to the trust this year. You may contact the Trustee to find out your share of this gift or of any other gifts made to the trust in which you have a right of withdrawal.

If you wish to exercise your withdrawal rights, you must file a written withdrawal request with the Trustee within 30 days of the date you received notice the gift was made. If you do not exercise your withdrawal right in a timely fashion, your withdrawal right lapses, in whole or in part pursuant to the terms of the trust agreement. If your withdrawal right lapses only in part, the unlapsed portion of your withdrawal right will continue into next year and will lapse, in whole or in part, in future years pursuant to the terms of the trust agreement.

The lapse of a right to withdraw a contribution to the trust does not affect your right to withdraw future gifts to the trust.

If you need any additional information to assist you in making a decision regarding the exercise of your withdrawal rights, or if you wish to exercise your withdrawal rights, you must contact the Trustee in writing.

Date: ______________

Trustee Signature : _____________________

Trustee Name: _____________________

**ACKNOWLEDGMENT OF RECEIPT OF NOTICE**

I acknowledge receipt of this Notice of Withdrawal Right.

Date: __________

__________________________________________

Cipriani Brinn Sciara, Beneficiary

or by ______________________________________ as natural guardian for the beneficiary, a minor

# Notification of Demand Right

This notice is to inform you that on ____________________________ a gift was made to the B.S.A.P. Irrevocable Trust, dated September 16, 2022, under which you are a beneficiary. As a beneficiary, you have the right to withdraw your share of this gift or any other subsequent gifts made to the trust during this calendar year. However, in no event can you withdraw more than the annual limit on withdrawals as set forth in the trust. No notice will be given to you of any additional gifts made to the trust this year. You may contact the Trustee to find out your share of this gift or of any other gifts made to the trust in which you have a right of withdrawal.

If you wish to exercise your withdrawal rights, you must file a written withdrawal request with the Trustee within 30 days of the date you received notice the gift was made. If you do not exercise your withdrawal right in a timely fashion, your withdrawal right lapses, in whole or in part pursuant to the terms of the trust agreement. If your withdrawal right lapses only in part, the unlapsed portion of your withdrawal right will continue into next year and will lapse, in whole or in part, in future years pursuant to the terms of the trust agreement.

The lapse of a right to withdraw a contribution to the trust does not affect your right to withdraw future gifts to the trust.

If you need any additional information to assist you in making a decision regarding the exercise of your withdrawal rights, or if you wish to exercise your withdrawal rights, you must contact the Trustee in writing.

Date: ______________

Trustee Signature : _____________________

Trustee Name: _____________________

**ACKNOWLEDGMENT OF RECEIPT OF NOTICE**

I acknowledge receipt of this Notice of Withdrawal Right.

Date: ___________

__________________________________________

Sebastian Ford Sciara, Beneficiary

or by ______________________________________ as natural guardian for the beneficiary, a minor



PRIVATE WEALTH LAW INC., 400 S. 4TH STREET, SUITE 540, LAS VEGAS, NEVADA 89101 | (702) 852-6601

# Notice of Limitation on Withdrawal Rights

Until I notify the Trustee of the B.S.A.P. Irrevocable Trust dated September 16, 2022, (the "Trust"), I hereby limit each beneficiary of the Trust to the annual withdrawal right amount written beside his or her name in any contributions that I make to the Trust. If I am signing this Notice with my wife, the limit shall apply to our combined annual contributions. If no amount appears beside the name of a beneficiary, that beneficiary shall not have a withdrawal right.

| **Beneficiary** | **Maximum Annual Withdrawal Right Amount** |
|---|---|
| Jennifer Sciara | $ |
| Cipriani Brinn Sciara | $ |
| Sebastian Ford Sciara | $ |
| | $ |
| | $ |
| | $ |
| | $ |

These limits shall apply to all annual contributions that I make or that my wife and I make to this trust until the Trustee receives written notice that these limits no longer apply.

Date: _____________ ____________________________________
Brian Sciara

Date: _____________ ____________________________________
Jennifer Sciara



PRIVATE WEALTH LAW INC., 400 S. 4TH STREET, SUITE 540, LAS VEGAS, NEVADA 89101 | (702) 852-6601

# SOLVENCY AFFIDAVIT

A Solvency Affidavit may be required by the Trustee of the Trust and others for you to swear or attest, in a notarized document, as to your financial well-being as of the creation and funding of your Domestic Asset Protection Trust. In your Solvency Affidavit, you represent that there are no pending, threatened, or expected claims or outstanding judgments against you, and that you are not contemplating bankruptcy at the time you created and funded your trust.

STATE OF NEVADA )
) ss.
COUNTY OF ______________________ )

# Solvency Affidavit

I, Brian Sciara, of 712 Pont Chartrain Dr, Las Vegas, Nevada 89145, state the following under oath.

1. I am or soon will become the Settlor of one or more discretionary trusts created for my benefit, for the benefit of others, or for both my benefit and the benefit of others. I contemplate making asset transfers to one or more of these trusts in addition to my initial nominal contribution to each of them.

2. I have full right, title, and authority to any assets I transfer to the Trust.

3. No particular event or transaction has occurred that I reasonably anticipate will develop into a dispute with any creditor in the future.

4. As of this date, I know of no pending or threatened claims or lawsuits against me; I am not a named defendant in any lawsuit; and I am not involved in any administrative proceedings.

5. I will remain solvent and able to pay my reasonably anticipated debts as they become due after making any transfers to the above-referenced trusts.

6. I am not engaged in or soon to become engaged in a business or transaction for which the remaining assets would be inadequate to support.

7. I do not intend to incur or reasonably believe that I will incur any debts that I cannot pay as they become due, and I do not have the actual intent to hinder, delay, or defraud any creditor.

8. I am not contemplating filing for relief under the United States Bankruptcy Code, nor am I involved in any situation that I reasonably anticipate would cause me to file for relief under the United States Bankruptcy Code in the future.

9. As a resident of the jurisdiction listed above as my primary residence, I have taken appropriate tax advice and will comply with all my tax reporting and compliance requirements, including any reporting or compliance requirements created by the above-referenced trusts.

10. I have read and understand the attached description of the Money Laundering Control Act and represent that:

none of the assets that I may transfer was derived from any of the activities specified in this Act; and

none of the *financial misconduct* items is applicable to me.

[*Signature on the following page*]

AS THE AFFIANT, I HAVE NOTHING FURTHER TO STATE.

______________________________
Brian Sciara

STATE OF NEVADA )
) ss.
COUNTY OF Clark )

Signed and sworn to (or affirmed) before me on Sept 16th, 2022, by Brian Sciara.

(Seal, if any)

CHRISTOFFER J. BALL
Notary Public - State of Nevada
County of Clark
APPT. NO. 19-2193-1
My App. Expires Apr. 22, 2023

______________________________
Notary Public

AS THE AFFIANT, I HAVE NOTHING FURTHER TO STATE.

________________________________________
Brian Sciara

STATE OF NEVADA )
) ss.
COUNTY OF ________________________ )

Signed and sworn to (or affirmed) before me on ______________________, 20____, by Brian Sciara.

(Seal, if any)

________________________________________
Notary Public

# THE MONEY LAUNDERING CONTROL ACT

The Money Laundering Control Act (the *Act*) criminalizes conducting or attempting to conduct certain financial activities that involve the proceeds of unlawful activities. The transfer of assets into a limited partnership, trust, or other entity may constitute a financial activity within the scope of the Act; therefore, you must swear under oath that none of the assets you intend to transfer into these entities was derived from any of the criminal activities specified in the Act. The specified unlawful activities under the Act primarily comprise drug-trafficking offenses, financial misconduct, and environmental crimes.

Drug-trafficking offenses include manufacturing, importing, selling, or distributing controlled substances; committing acts that constitute a continuing criminal enterprise; illegally procuring essential or precursor chemicals to controlled substances; and transporting drug paraphernalia.

Covered financial misconduct includes:

> concealing assets from a receiver, custodian, trustee, marshal, or other officer of the court;
>
> concealing assets from creditors in a bankruptcy proceeding, the Federal Deposit Insurance Corporation, the Resolution Trust Corporation, or a similar agency or person;
>
> making a fraudulent conveyance in contemplation of a bankruptcy proceeding or with the intent to defeat the bankruptcy law;
>
> giving false oaths or claims in relation to a bankruptcy proceeding;
>
> committing bribery;
>
> giving commissions or gifts to procure loans;
>
> committing theft, embezzlement, or misapplication of bank funds or funds of other lending, credit, or insurance institutions;
>
> making fraudulent bank or credit institution entries on loan or credit applications;
>
> committing mail, wire, or bank fraud; and
>
> committing bank or postal robbery or theft.

Environmental crimes include violations of the Federal Water Pollution Control Act, the Ocean Dumping Act, the Safe Drinking Water Act, the Resources Conservation and Recovery Act, and similar federal statutes.

Other specified crimes include counterfeiting, espionage, kidnapping or hostage-taking, copyright infringement, entry of goods by means of false statements, smuggling goods into the United States, removing goods from the custody of the United States Customs Service, illegally exporting arms, and trading with enemies of the United States.


PRIVATE WEALTH LAW INC., 400 S. 4TH STREET, SUITE 540, LAS VEGAS, NEVADA 89101 | (702) 852-6601

# TRUST ASSETS

Use this section to keep copies of title documents, account statements or to list information about all of the assets owned by your irrevocable trust.

## TAX FILINGS

In this section you should keep copies of your irrevocable trust's income tax returns, any gift tax returns and any other filings with the Internal Revenue Service or State Department of Revenue. This section also has your trust's tax identification number.

IRS DEPARTMENT OF THE TREASURY
INTERNAL REVENUE SERVICE
CINCINNATI OH 45999-0023

Date of this notice: 09-15-2022

Employer Identification Number:
92-6053106

Form: SS-4

Number of this notice: CP 575 B

BSAP IRRV TR
GLENN H TRUITT TTEE
400 S 4TH ST STE 540
LAS VEGAS, NV 89101

For assistance you may call us at:
1-800-829-4933

IF YOU WRITE, ATTACH THE
STUB AT THE END OF THIS NOTICE.

WE ASSIGNED YOU AN EMPLOYER IDENTIFICATION NUMBER

Thank you for applying for an Employer Identification Number (EIN). We assigned you EIN 92-6053106. This EIN will identify your estate or trust. If you are not the applicant, please contact the individual who is handling the estate or trust for you. Please keep this notice in your permanent records.

Taxpayers request an EIN for their business. Some taxpayers receive CP575 notices when another person has stolen their identity and are opening a business using their information. If you did **not** apply for this EIN, please contact us at the phone number or address listed on the top of this notice.

When filing tax documents, making payments, or replying to any related correspondence, it is very important that you use your EIN and complete name and address exactly as shown above. Any variation may cause a delay in processing, result in incorrect information in your account, or even cause you to be assigned more than one EIN. If the information is not correct as shown above, please make the correction using the attached tear-off stub and return it to us.

Based on the information received from you or your representative, you must file the following forms by the dates shown.

| | |
|---|---|
| Form 1041 | 04/15/2023 |

If you have questions about the forms or the due dates shown, you can call us at the phone number or write to us at the address shown at the top of this notice. If you need help in determining your annual accounting period (tax year), see Publication 538, *Accounting Periods and Methods*.

We assigned you a tax classification (corporation, partnership, estate, trust, EPMF, etc.) based on information obtained from you or your representative. It is not a legal determination of your tax classification, and is not binding on the IRS. If you want a legal determination of your tax classification, you may request a private letter ruling from the IRS under the guidelines in Revenue Procedure 2020-1, 2020-1 I.R.B. 1 (or superseding Revenue Procedure for the year at issue). Note: Certain tax classification elections can be requested by filing Form 8832, *Entity Classification Election*. See Form 8832 and its instructions for additional information.

**IMPORTANT REMINDERS:**

* Keep a copy of this notice in your permanent records. This notice is issued only one time and the IRS will not be able to generate a duplicate copy for you. You may give a copy of this document to anyone asking for proof of your EIN.

* Use this EIN and your name exactly as they appear at the top of this notice on all your federal tax forms.

* Refer to this EIN on your tax-related correspondence and documents.

* Provide future officers of your organization with a copy of this notice.

Your name control associated with this EIN is BSAP. You will need to provide this information along with your EIN, if you file your returns electronically.

Safeguard your EIN by referring to Publication 4557, Safeguarding Taxpayer Data: A Guide for Your Business.

You can get any of the forms or publications mentioned in this letter by visiting our website at www.irs.gov/forms-pubs or by calling 800-TAX-FORM (800-829-3676).

If you have questions about your EIN, you can contact us at the phone number or address listed at the top of this notice. If you write, please tear off the stub at the bottom of this notice and include it with your letter.

Thank you for your cooperation.

Keep this part for your records. CP 575 B (Rev. 7-2007)

---

Return this part with any correspondence so we may identify your account. Please correct any errors in your name or address.

CP 575 B

9999999999

Your Telephone Number ( ) - ______

Best Time to Call ______

DATE OF THIS NOTICE: 09-15-2022
EMPLOYER IDENTIFICATION NUMBER: 92-6053106
FORM: SS-4 NOBOD

INTERNAL REVENUE SERVICE
CINCINNATI OH 45999-0023

BSAP IRRV TR
GLENN H TRUITT TTEE
400 S 4TH ST STE 540
LAS VEGAS, NV 89101

# FINANCIAL REPORTS

In this section you should keep copies of your irrevocable trust's regular financial report provided by your Trustee. You can also keep copies of any other reports pertaining to your irrevocable trust such as profit and loss statements and account statements.

You can also keep copies of any other reports pertaining to your irrevocable trust such as profit and loss statements and account statements.

# CORRESPONDENCE

Place all correspondence pertaining to your irrevocable trust in this section.

Your Trustee has to be very meticulous in maintaining the records of your irrevocable trust. Your Trustee should seek our advice and counsel and that of an accountant or financial planner whenever necessary.

Each time a transfer is made to the trust, a demand right notification should be hand delivered or sent to each lifetime beneficiary. The Trustee should have each demand right notification signed by the beneficiary acknowledging receipt of the notification. The acknowledged notifications should then be kept in this section.

# EXHIBIT 2

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

Fees: $42.00
RPTT: $0.00 Ex #: 007
10/13/2022 03:22:02 PM
Receipt #: 5133913
Requestor:
BRIAN SCIARA
Recorded By: ANI Pgs: 4
Debbie Conway
CLARK COUNTY RECORDER
Src: FRONT COUNTER
Ofc: MAIN OFFICE

**Prepared By:**
Private Wealth Law, Inc
400 South Fourth Street, Suite 540
Las Vegas, NV 89101

**After Recording Return To:** /mail tax statements too
Brian Sciara
712 Pont Chartrain Drive
Las Vegas, NV 89145

SPACE ABOVE THIS LINE FOR RECORDER'S USE

ASSESSOR'S COPY

**Date:** 10/7/2022

**Parcel ID.:** 138-31-812-021

# QUITCLAIM DEED

For valuable consideration of One U.S. Dollar ($1.00), and/or other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged,

Brian Sciara (hereinafter called the "Grantor") whose address is 712 Pont Chartrain Drive Las Vegas, Nevada 89145

hereby remises, releases, and quitclaims

unto "B.S.A.P. Irrevocable Trust" with Glenn H. Truitt acting as the Trustee (hereinafter called the "Grantee"), with a mailing address of 712 Pont Chartrain Drive Las Vegas, Nevada 89145.

ALL OF GRANTOR'S RIGHT, TITLE AND INTEREST, IF ANY, IN AND TO THAT CERTAIN REAL PROPERTY SITUATED IN the County of Clark, State of Nevada, known as:

**Parcel ID.:** 138-31-812-021

**Legal Description:** PARCEL ONE (1):

LOT 21 IN BLOCK C OF PECCOLE WEST LOT 9- PHASE 2, AS SHOWN BY MAP THEREOF ON FILE IN BOOK 79 OF PLATS, PAGE 14 IN THE OFFICE OF THE COUNTY RECORDER OF CLARK, COUNTY, NEVADA.

PARCEL TWO (2):

A NON-EXCLUSIVE EASEMENT OF USE AND ENJOYMENT IN, TO AND THROUGH THOSE AREAS DESIGNATED AS "COMMON AREA" WHICH EASEMENT IS APPURTENANT TO PARCEL ONE (1).

PARCEL THREE (3):

A NON-EXCLUSIVE EASEMENT OVER AREAS DEFINED AS SPECIAL BENEFITS AREAS AMENITIES IN THE MASTER DECLARATION OF COVENANTS, CONDITIONS AND RESTRICTIONS AND EASEMENTS FOR QUEENSRIDGE, AND KNOWN AS "SAN MICHELLE SPECIAL BENEFITS AREA", AS SET FORTH IN THE SUPPLEMENTAL DECLARATION FOR QUEENSRIDGE LOT 9-PHASE 1 RECORDED MAY 30, 1996 IN BOOK 960530 AS DOCUMENT NO. 00242, AND AMENDED AND RESTATED SUPPLEMENTAL DECLARATION FOR QUEENSRIDGE LOT 9, PHASE 1, RECORDED DECEMBER 27, 1996 IN BOOK 961227 AS DOCUMENT NO. 01086, OFFICIAL RECORDS.

**Referred to herein as the "Property".**

THE PROPERTY IS QUIT CLAIMED TO GRANTEE WITHOUT COVENANT, REPRESENTATION OR WARRANTY OF ANY KIND OR NATURE WHATSOEVER, WHETHER EXPRESS OR IMPLIED, WHETHER AS TO TITLE, HABITABILITY, FITNESS FOR A PARTICULAR PURPOSE OR OTHERWISE. ANY AND ALL WARRANTIES THAT MIGHT ARISE BY COMMON LAW OR BY STATUTE, AS THE SAME MAY BE HEREAFTER AMENDED FROM TIME TO TIME, ARE HEREBY EXPRESSLY EXCLUDED.

THE PROPERTY IS QUIT CLAIMED SUBJECT TO any and all easements, building and use restrictions, mineral rights, encumbrances, liens, covenants, and liabilities as may appear of record or as may otherwise exist, whether recorded or unrecorded. By its acceptance of delivery of this Quit Claim Deed, Grantee hereby assumes the payment of all ad valorem taxes, standby fees, general and special assessments of whatever kind or character affecting the Property which are due, or which may become due, for any tax year or assessment period prior to the date of this Quit Claim Deed, including, without limitation, taxes or assessments becoming due by reason of a change in usage or ownership of the Property, or both.

IN WITNESS WHEREOF, Grantor hereby executes this Quit Claim Deed as of the date set forth above.

**Grantor:**

By: ______________________________

Printed Name: Brian Sciara

Address: 712 Pont Chartrain Drive Las Vegas, Nevada 89145

ASSESSOR'S COPY

# ACKNOWLEDGEMENT

STATE OF NEVADA

COUNTY OF CLARK

On Oct. 7, 2022 (date) before me, Anna Veverka personally appeared Brian Sciara who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within Quitclaim Deed and acknowledged to me that they executed the same in their authorized capacities and that by their signatures on the instrument the persons, or the entity upon behalf of which the persons acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of Nevada that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature Anna Veverka (Seal)

ANNA VEVERKA
NOTARY PUBLIC
STATE OF NEVADA
My Commission Expires: 02-10-26
Certificate No: 22-9708-01

ASSESSOR'S COPY

**STATE OF NEVADA**
**DECLARATION OF VALUE**

1. Assessor Parcel Number(s)
   a. 138-31-812-021
   b. ____
   c. ____
   d. ____
2. Type of Property:
   a. ☐ Vacant Land b. ☒ Single Fam. Res.
   c. ☐ Condo/Twnhse d. ☐ 2-4 Plex
   e. ☐ Apt. Bldg f. ☐ Comm'l/Ind'l
   g. ☐ Agricultural h. ☐ Mobile Home
   ☐ Other

| FOR RECORDERS OPTIONAL USE ONLY |
|---|
| Book ____ Page: ____ |
| Date of Recording: ____ |
| Notes: |

3.a. Total Value/Sales Price of Property $ ____
b. Deed in Lieu of Foreclosure Only (value of property ( ____ )
c. Transfer Tax Value: $ ____
d. Real Property Transfer Tax Due $ ____

4. **If Exemption Claimed:**
   a. Transfer Tax Exemption per NRS 375.090, Section 7
   b. Explain Reason for Exemption: transfer into trust without consideration

5. Partial Interest: Percentage being transferred: 100 %

The undersigned declares and acknowledges, under penalty of perjury, pursuant to NRS 375.060 and NRS 375.110, that the information provided is correct to the best of their information and belief, and can be supported by documentation if called upon to substantiate the information provided herein. Furthermore, the parties agree that disallowance of any claimed exemption, or other determination of additional tax due, may result in a penalty of 10% of the tax due plus interest at 1% per month. Pursuant to NRS 375.030, the Buyer and Seller shall be jointly and severally liable for any additional amount owed.

Signature [signature] Glenn H Truitt, Esq. Capacity: Lawyer for Trust

Signature ____ Capacity: ____

| **SELLER (GRANTOR) INFORMATION (REQUIRED)** | **BUYER (GRANTEE) INFORMATION (REQUIRED)** |
|---|---|
| Print Name: Brian Sciara | Print Name: BSAP Irrevocable Trust |
| Address: 712 Pont Chartrain Dr | Address: 712 Pont Chartrain Dr |
| City: Las Vegas | City: Las Vegas |
| State: NV Zip: 89145 | State: NV Zip: 89145 |

**COMPANY/PERSON REQUESTING RECORDING (Required if not seller or buyer)**

| | |
|---|---|
| Print Name: Private Wealth Law Inc | Escrow # |
| Address: 400 S 4th #540 | |
| City: Las Vegas | State: NV Zip: 89101 |

AS A PUBLIC RECORD THIS FORM MAY BE RECORDED/MICROFILMED

ASSESSOR'S COPY