Jeanette E. McPherson, Esq., NV Bar No. 5423
FOX ROTHSCHILD LLP
1980 Festival Plaza Dr., Suite 700
Las Vegas, Nevada 89135
Telephone:     702.262.6899
Facsimile:     702.597.5503
Email: JMcPherson@FoxRothschild.com
*Attorneys for Shelley D. Krohn, Chapter 7 Trustee*

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In re | Case No.  BK-S-23-13265-ABL |
| BRIAN SEBASTIAN SCIARA, | Chapter 7 |
| Debtor. | **TRUSTEE'S OPPOSITION TO FIRST INTERIM FEE APPLICATION FOR ALLOWANCE OF ATTORNEY'S FEES AND COSTS FOR SERVICES RENDERED BY MARK W. PATTERSON** |
| | Hearing Date:  October 9, 2024 |
| | Hearing Time: 9:30 a.m. |

Shelley D. Krohn, the Chapter 7 Trustee (the "Trustee"), hereby files this Trustee's Opposition To First Interim Fee Application For Allowance Of Attorney's Fees And Costs For Services Rendered By Mark W. Patterson ("Opposition").  This Opposition is made and based upon 11 U.S.C. § 105(a), 327, and 330, the Points and Authorities set forth herein, the pleadings on file, and any argument made at the time of the hearing on this matter.

### POINTS AND AUTHORITIES

### Factual Background

1.      Brian Sebastian Sciara (the "Debtor") filed for relief under Chapter 11 of the Bankruptcy Code on August 4, 2023 (the "Petition Date").

2.      On January 16, 2024, an Application For Employment And Retention Of Mark Patterson As Attorney For Debtor-In-Possession ("Employment Application") pursuant to 11 U.S.C. § 327(a) and Fed.R.Bankr. P. 2014 was filed. In the Employment Application, Debtor's counsel ("Patterson") seeks to be employed as counsel for the Debtor and states that the Debtor paid $25,000 to Patterson as a retainer ("Retainer") and that the Debtor returned the retainer

- 1 -

162883195.2

agreement on or around August 3, 2023 ("Retainer Agreement").  In the Employment Application, Patterson states that it seeks to be employed on an hourly basis to perform legal services. Patterson further states that prior to the filing of the bankruptcy, it "drew down the retainer in the amount of $2,800 for pre-petition services," and that the remaining amount of the Retainer is $22,200.00 ("Remaining Retainer").  [ECF 40].  In the Employment Application itself, there was no further discussion regarding the nature of the Retainer.  However, attached to the Employment Application is the undated Retainer Agreement, which provides in relevant part as follows:

> For us to begin our representation, you agree to forward a retainer payment in the amount of $26,738.00 (fees of $25,000 plus estimated court costs of $1,738.00). The total of $26,738.00 is due prior to the Chapter 11 being filed. We may use these funds to pay our fees and costs incurred in this case, subject to court approval for any fees and costs rendered after your case is filed. You agree that the retainer fee paid by you shall be an "Advance Payment Retainer", which means that the retainer fee paid to the Firm by Client under this Agreement shall be deemed a present payment in exchange for the Firm's commitment to provide legal services to the Client in the future.

[ECF 40].

3.      The Employment Application was approved by an Order Granting Application For Employment Of Attorney For Debtor-In-Possession entered on March 12, 2024.

4.      On July 9, 2024, the Debtor filed a First Interim Fee Application For Allowance Of Attorney's Fees And Costs For Services Rendered By Mark W. Patterson ("Fee Application"). [ECF 84]. In the Fee Application Cover Sheet, Patterson states that it has incurred fees in the amount of $44,905.00 for the period of August 4, 2023 through July 9, 2024.  Patterson seeks authorization for the payment of $22,705 "for the unpaid balance of services rendered as of the present date."  Patterson further states on the Fee Application Cover Sheet that the "Total Amount Paid" is $22,200.00.  In the Fee Application itself, Patterson states that "a balance of $22,200 remained in **trust** at the time of filing of this case."  [ECF 84; emphasis added].

5.      On July 15, 2024, the Court entered an Order Granting Motion For Conversion of Small Business Case To Chapter 7 [ECF 96] ("Conversion Order").

6.      Shelley D. Krohn is the duly appointed and acting Chapter 7 Trustee in the Debtor's case.

- 2 -

162883195.2

**Memorandum of Law**

The Trustee opposes the Fee Application for the following reasons.

**A.      The Time Spent On Certain Tasks Is Not Reasonable And Some Entries Are Vague**

Patterson has listed the total hours for each task under the Statement Of Services Rendered in the Fee Application ("Task Total Hours"). Determining which time entries comprise the Task Total Hours is not readily discernable. The invoice attached to the Fee Application contains entries that are not organized by task, incorrectly added, and vague. In addition, certain Task Total Hours are not reasonable.

First, the "Applications to Employ" set forth in the Task Total Hours is in the amount of 24.4 hours. Given the nature of the employment applications (it appears there were three), this amount of time is not reasonable. By way of example, the Fee Application provides that on January 15, 2024, 5 hours were spent drafting the Patterson employment application, the declaration, and proposed order.  In addition, the Fee Application provides that on April 17, 2024, 5 hours were spent drafting the employment application of Mortenson and Rafie, the declaration, and proposed order.  In addition, another 1.1 hours were spent in connection with the UST's objection to this employment application. In addition, a time entry on January 16, 2024 for 4.4 hours is listed for time spent in connection with preparation of the employment of Davide Horwedel as accountant.

Second, the "Applications for Administrative Expenses, Fees and Costs" set forth in the Task Total Hours is in the amount of 10.7 hours. The entries that total the 10.7 hours have not been identified.  However, an invoice entry on July 7, 2024, provides as follows: "prepare application for fees and costs - Mark Patterson (2.0)."  In addition, on July 9, 2024, Patterson has an entry of 5 hours to "prepare application for approval of fees for Mark Patterson and supporting exhibits." Given the size and complexity of the fee application, and the failure to comply with the US Trustee Guidelines in the fee application, 7 hours is not reasonable.  Further, with regard to the entry on July 7, 2024, the entry of seven hours may not be correct. That is, the invoice entry on July 7, 2024 provides that 7 hours were incurred, but this amount is not the total of the individual entries as follows:

/ / /

- 3 -

162883195.2

prepare application for fees and costs - Mark Patterson (2.0)      $350 7  $2,450.00
prepare application for fees and costs - mortenson and rafie (.5)

The total of the entries is 2.5 hours, not 7 hours.

Third, the "341 Meeting, communications with creditors" set forth in the Total Task Hours is in the amount of 11.2 hours. It is unclear why these two topics have been combined, and given the failure to place entries in the invoices into task codes, the Trustee cannot determine the entries related to the 11.2 hours.  However, it appears that 5 hours relate to entries pertaining to the 341 Meeting.  It is unclear the source of the remaining 6.2 hours and such time should be identified.

Lastly, there are numerous entries that are vague and ambiguous. Vague and ambiguous entries are disallowed. *In re Ginji Corp.*, 117 B.R. 983, 989 (Bankr. D. Nev. 1990)("vague and ambiguous entries will be disallowed"). For instance, there are numerous entries that state "teleconf with client," "email to client," "sent email to client," or "receipt and review email from client," "receipt and review email from accountant," etc.  Such entries must be revised so that they provide adequate description of the services rendered, and if adequate description is not provided, such time should be disallowed.

**B.      The Remaining Retainer**

Patterson's fees total $44,905, but Patterson is only seeking authorization for payment of the unpaid balance ($22,705) and not of the Remaining Retainer ($22,200).  Patterson must obtain approval of all fees and their payment, including payment from the Remaining Retainer.  Patterson, however, appears to take the position that it has already earned the Remaining Retainer given the language in the Retainer Agreement. Thus, the critical question is whether the Remaining Retainer became Patterson's property upon payment or whether it was property of the debtor's estate on the petition date.

> There are several types of retainers used by attorneys in fee arrangements. For example, there is a " classic" retainer that is a retaining fee given to insure and secure an attorney's future services and induce him to act for the client. *Rus, Miliband & Smith, APC v. Yoo (In re Dick Cepek, Inc.),*339 B.R. 730, 736 n.5 (9th Cir. BAP 2006). An "advance payment retainer" is defined " as one in which the debtor pays for all or a portion of the services to be rendered by the attorney in advance, or in other words, a 'flat fee' arrangement." *In re Dearborn Constr., Inc.*, 2002 WL 31941458, *5 (Bankr. D. Idaho, Dec. 20, 2002); *In re GOCO*

- 4 -

162883195.2

*Realty Fund I,* 151 B.R. 241, 251 (Bankr. N.D. Cal. 1993); see also, *In re Dick Cepek, Inc.,*339 B.R. at 736 (advance payment retainer occurs when client pre-pays for expected services). Classic and advance payment retainers are considered to be earned-on-receipt entitling an attorney to the retainer at the time of payment. *In re Dick Cepek, Inc.,* 339 B.R. at 736. Thus, once the client pays the retainer, the client no longer has an interest in the money, and the retainer becomes property of the attorney.

A more common type of retainer is the security retainer. "A security retainer is generally held as security for payment of fees for future services to be rendered by the attorney." *Id*. A security retainer differs from an earned-on-receipt retainer because the money remains property of the client until the attorney applies it to charges for services actually rendered; any unearned funds are returned to the client. *Id*. citing 3 Collier on Bankruptcy ¶ 328.02[3][b][I] (15th ed. 2005). Because a security retainer remains the client's property until it is earned and applied to services rendered, it must be held in an attorney's client trust account. Thus, security retainers are routinely held to be property of the estate. *In re Blackburn,* 448 B.R. 28, 35 (Bankr. D. Idaho 2011).

*In re Danner*, BAP ID-11-1315-HJuMk, ID-11-1525-HJuMk, (BAP 9th Cir. Jul. 31, 2012)(footnote omitted).

Federal law determines whether a debtor's interest in a retainer is property of the estate. *McCarthy, Johnson & Miller v. N. Bay Plumbing, Inc. (In re Pettit),* 217 F.3d 1072, 1078 (9th Cir. 2000). However, "bankruptcy courts must look to state law to determine whether and to what extent the debtor has any legal or equitable interests in property as of the commencement of the case." *In re Pettit,* 217 F.3d at 1078, citing *Butner v. United States,* 440 U.S. 48, 55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979). Rule 1.15(c) of the Nevada Rules of Professional Conduct provides that "[a] lawyer shall deposit into a client trust account legal fees and expenses that have been paid in advance, to be withdrawn by the lawyer only as fees are earned or expenses incurred." Thus, for Patterson to have properly obtained an interest in the Remaining Retainer, he had to have earned the fees on receipt. And, as the court stated in *In re Dividend Dev. Corp.*, 145 B.R. 651, 656 (Bankr. C.D.Cal. 1992), the main feature of an "earned on receipt" retainer is that it is given in exchange for an attorney's commitment to represent a client, not to secure payment for services provided. Thus, the intention to deduct future fees as incurred excludes this type of retainer. *Id*. at 656.

/ / /

- 5 -

162883195.2

The Retainer Agreement attached to the Employment Application provides:

> Retainer Fee: For us to begin our representation, you agree to forward a retainer payment of $26,738 (fees of $25,000 plus estimated court costs of $1,738). The total of $26,738.00 is due prior to the Chapter 11 being filed. We may use these funds to pay our fees and costs incurred in this case, subject to court approval for any fees and costs rendered after your case is filed. You agree that the retainer fee paid by you shall be an "Advance Payment Retainer", which means that the retainer fee paid to the Firm by Client under this Agreement shall be deemed a present payment in exchange for the Firm's commitment to provide legal services to the Client in the future. The fees paid by Client shall be deposited into our firm's attorney business account, and are owned by the Firm immediately upon payment. If our representation of Client ends before the fees are exhausted, the remaining balance shall be subject to refund to Client.

The language regarding the nature of the Retainer is ambiguous. The Retainer Agreement declares that the Retainer is an "Advance Payment Retainer," and that the Retainer was a present payment owned by Patterson "immediately upon payment." However, at the same time, the Retainer Agreement provides that the Retainer may be used to pay fees and costs subject to court approval for any fees and costs incurred after the bankruptcy case was filed. Also, it is unclear where the Remaining Retainer is be being held. That is, the Retainer Agreement states that the Retainer will be deposited into the "attorney business account," while the Fee Application provides that the "balance of $22,200 remained in trust at the time of filing of this case." However, based upon Patterson's Fee Application, the Fee Application Coversheet, Patterson's conversation with Trustee's counsel, and Patterson's lack of request for authorization to pay the Remaining Retainer, counsel has taken the position that it has already received the $22,200 and it would then not be in a trust account.

Based upon the foregoing, regardless of the language used, it appears that the Retainer was not an advance payment retainer. The Retainer was used to secure payment by deducting future fees incurred. Thus, the Retainer is a security retainer, and the Remaining Retainer is property of the Debtor's bankruptcy estate that must be turned over to the Trustee.

Further, in Chapter 7 cases, the timing of distributions for administrative expense payments, other than at the close of the case, is within the discretion of the Court. *See Varsity Carpet Serv. v. Richardson (In re Colortex Indus., Inc.)*, 19 F.3d 1371, 1384 (11th Cir. 1994) (holding that due to

- 6 -

162883195.2

the existence of higher priority claims, it was within the discretion of the court to delay payment of administrative expenses). In a case like this one, where the Debtor may be administratively insolvent, the Court should exercise this discretion given the application of the priority of estate distributions under 11 U.S.C. § 726. Thus, since this Chapter 7 case has not been fully administered, and may be administratively insolvent, it is premature to approve the Fee Application or consider awarding compensation. Therefore, the Remaining Retainer should be turned over to the Trustee for the benefit of the Chapter 7 estate pending a final award of fees at the close of this Chapter 7 case, which, given that this estate is currently administratively insolvent, will give effect to the priority scheme under 11 U.S.C. § 726.

**CONCLUSION**

Based on the foregoing, the Trustee requests that the Court enter an order:

1)      Determining that the Retainer Balance is property of the Debtor's estate and must be turned over to the Trustee; and

2)      Deferring a ruling on this Fee Application until the close of this Chapter 7 case, and ordering that prior to such final determination that Patterson may amend its Fee Application to address the vague entries and categorize its invoices into the task categories set forth in the "Statement Of Services Rendered" in the Fee Application.

Dated September 25, 2024.          **FOX ROTHSCHILD LLP**


By: /s/ Jeanette E. McPherson
JEANETTE E. MCPHERSON, ESQ.
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135

*Counsel for Shelley D. Krohn, Chapter 7 Trustee*

- 7 -

162883195.2

## CERTIFICATE OF SERVICE

I caused to be served a copy of the foregoing *Trustee's Opposition To First Interim Fee Application For Allowance Of Attorney's Fees And Costs For Services Rendered By Mark W. Patterson* by the following means to the persons as listed below:

☒   a.   **By ECF System (On September 25, 2024):**

JENNIFER WILLIS ARLEDGE on behalf of Creditor Sgro & Roger
jarledge@sgroandroger.com, efile@sgroandroger.com

BRETT A. AXELROD on behalf of Trustee SHELLEY D KROHN
baxelrod@foxrothschild.com,
pchlum@foxrothschild.com;mwilson@foxrothschild.com;nv.dkt@foxrothschild.com

ROBERT M. CHARLES, JR. on behalf of Creditor MiCamp Holdings, LLC
rcharles@lewisroca.com, BankruptcyNotices@lewisroca.com,robert-charles-1072@ecf.pacerpro.com

ROBERT M. CHARLES, JR. on behalf of Creditor MiCamp Solutions, LLC
rcharles@lewisroca.com, BankruptcyNotices@lewisroca.com,robert-charles-1072@ecf.pacerpro.com

SHELLEY D KROHN shelley@trusteekrohn.com,
NV27@ecfcbis.com;becca@trusteekrohn.com;brenda@trusteekrohn.com

TIMOTHY A LUKAS on behalf of Creditor SPROUT FINANCIAL LLC
ecflukast@hollandhart.com

TIMOTHY A LUKAS on behalf of Creditor Stephen Campbell
ecflukast@hollandhart.com

TIMOTHY A LUKAS on behalf of Plaintiff SPROUT FINANCIAL LLC
ecflukast@hollandhart.com

EDWARD M. MCDONALD on behalf of U.S. Trustee U.S. TRUSTEE - LV - 7, 7
edward.m.mcdonald@usdoj.gov

JEANETTE E. MCPHERSON on behalf of Trustee SHELLEY D KROHN
JMcPherson@FoxRothschild.com, ahosey@foxrothschild.com,nv.dkt@foxrothschild.com

MARK W PATTERSON on behalf of Debtor BRIAN SEBASTIAN SCIARA
mpatterson@pattersonassociateslaw.com

U.S. TRUSTEE - LV - 7, 7  USTPRegion17.LV.ECF@usdoj.gov

☐   b.   **By United States First Class postage fully prepaid:**

- 8 -

162883195.2

☐   c.   **By United States Certified Mail postage fully prepaid**:

☐   d.   **By Personal Service**

☐   I personally delivered the document(s) to the persons at these addresses:

☐   For a party represented by an attorney, delivery was made by handing the document(s) to the attorney or by leaving the document(s) at the attorney's office with a clerk or other person in charge, or if no one is in charge by leaving the document(s) in a conspicuous place in the office.

☐   For a party, delivery was made by handing the document(s) to the party or by leaving the document(s) at the person's dwelling house or usual place of abode with someone of suitable age and discretion residing there.

☐   e.   **By direct email (as opposed to through the ECF System)**

Based upon the written agreement to accept service by email or a court order, I caused the document(s) to be sent to the persons at the email addresses listed below.  I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

☐   f.   **By fax transmission**

Based upon the written agreement of the parties to accept service by fax transmission or a court order, I faxed the document(s) to the persons at the fax numbers listed below.  No error was reported by the fax machine that I used.  A copy of the record of the fax transmission is attached.

☐   g.   **By messenger**

I served the document(s) by placing them in an envelope or package addressed to the persons at the addresses listed below and providing them to a messenger for service.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated:  September 25, 2024.

/s/ Angela Hosey
Angela Hosey

- 9 -

162883195.2